E-FILED
Friday, 30 April, 2021  03:16:39 PM
Clerk, U.S. District Court, ILCD

**U.S. DISTRICT COURT FOR THE**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| Hada Garcia; et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 3:20-cv-03322-STEM-TSH |
| | ) | |
| Pioneer Hi-Bred International, Inc.; | ) | Honorable Sue E. Myerscough |
| Corteva, Inc.; | ) | Magistrate Judge Tom Schanzle-Haskins |
| RAS Aviation, L.L.C.; | ) | |
| Farm Air, Inc.; and | ) | JURY DEMANDED |
| Curless Flying Service, Inc.; | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS, PIONEER HI-BRED INTERNATIONAL, INC. AND CORTEVA, INC.'S ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

NOW COME the Defendants, PIONEER HI-BRED INTERNATIONAL, INC. ("Pioneer") and CORTEVA, INC. ("Corteva"), by and through their attorneys, SANCHEZ DANIELS & HOFFMAN LLP, and for their Answer to Plaintiffs' Amended Complaint, state as follows:

### INTRODUCTORY STATEMENT

1.      In the summer of 2019, Defendants Pioneer Hi-Bred International, Inc. and Corteva, Inc. (collectively, "PHI") brought dozens of migrant workers from the Texas Rio Grande Valley to work detasseling corn in Illinois fields. In two separate incidents that summer, Defendants RAS Aviation, L.L.C., Farm Air Inc., and Curless Flying Service, Inc. (collectively, "Pesticide Applicators") sprayed the Plaintiff workers (the "Workers") with toxic pesticides as they worked, even though the Workers were plainly visible. After each incident, Defendant PHI (1) failed to provide adequate decontamination measures to the Workers to mitigate the toxicity, and (2) failed to provide truthful information and necessary medical attention to the injured

Workers. Moreover, after the second incident, Defendant PHI (1) immediately ordered Workers to return to work in the field, despite the still-ambient pesticides, where Defendants Farm Air, Inc. and Curless Flying Service, Inc. (collectively, the "Curless Defendants") then sprayed the Workers a second time; and then (2) lied to the Workers about what had occurred, claiming the spray had been smoke, and refusing to provide known information about the pesticides involved.

**ANSWER**:     Corteva and Pioneer admit that Pioneer employed certain workers from Texas to work detasseling corn in Illinois fields. Corteva and Pioneer deny the remaining allegations contained in this Paragraph.

2.      Moreover, Defendant PHI violated numerous other worker protections secured under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801-1872, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and similar state laws.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

3.      On July 23, 2019, Defendant RAS Aviation, L.L.C. intentionally, with callous indifference, negligently, and otherwise tortuously sprayed the Workers, who were plainly visible in bright neon protective clothing.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

4.      On August 5, 2019, the Curless Defendants intentionally, with callous and reckless indifference, negligently, and otherwise tortiously, sprayed the Workers, who were plainly visible in bright neon protective clothing.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

5.      Plaintiffs are the Workers and their non-worker family members (the "Children") who were harmed by pesticide exposure and other violations of law. They seek redress from Defendants jointly and severally, in the form of their actual damages, including medical expenses and compensation for emotional distress; punitive damages commensurate with the egregious

2

nature of the Defendants' conduct; all liquidated damages available to them under the AWPA and the FLSA; and attorneys' fees and reasonable costs.

**ANSWER**:    Corteva and Pioneer admit that Plaintiffs are workers and their family members who allege they were harmed by pesticide exposure and other alleged violations of law, and that they seek certain relief as alleged in their Complaint. Corteva and Pioneer deny that Plaintiffs are entitled to any requested relief and deny any remaining allegations contained in this Paragraph.

## JURISDICTION

6.    This Court has jurisdiction over the Workers' and the Children's claims arising under the AWPA and the FLSA under 28 U.S.C. § 1331 (conferring jurisdiction over civil actions arising under laws of the United States).

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

7.    This Court also has jurisdiction over the Workers' and the Children's claims under 28 U.S.C. § 1332(a), based on the following facts establishing complete diversity of citizenship and satisfaction of the amount-in-controversy requirement:

      a.      The Workers and Children are all citizens of Texas;

      b.      Defendant Pioneer Hi-Bred International, Inc. is incorporated in Iowa, where it maintains its principal place of business;

      c.      Defendant Corteva, Inc. is incorporated in Delaware, where it maintains its principal place of business;

      d.      Defendant RAS Aviation, L.L.C. is incorporated in Illinois, where it maintains its principal place of business;

      e.      Defendant Farm Air, Inc. is incorporated in Illinois, where it maintains its principal place of business;

      f.      Defendant Curless Flying Service, Inc. is incorporated in Illinois, where it maintains its principal place of business;

      g.      The amount in controversy for each Worker and Child exceeds $75,000.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

8.     This Court has supplemental jurisdiction over the Workers' and Children's state law claims under 28 U.S.C. § 1367, in that the claims are so related to the claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

9.     This Court is the appropriate venue under 28 U.S.C. § 1391(b), in that the Defendants are subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this District.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

10.     This action is brought in the Springfield Division, because the most significant events giving rise to the claims occurred in DeWitt County. *See* CDIL-LR 40.1(B), (F).

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

## PARTIES

### Plaintiffs

11.     In the spring and early summer of 2019, husband and wife farm labor contractors Fidencio Salinas ("FLC Fidencio") and Arminda Salinas ("FLC Arminda") (collectively, the "Salinases"), working on behalf of Defendant PHI in Texas, recruited the Workers identified below to perform roguing (weeding out inferior plants) and detasseling (removing corn tassels to prevent self-pollination) in Illinois that summer; arranged for their hire, accommodations, and other logistical details; and subsequently assisted PHI with supervising them in the fields.

4

**ANSWER**:    Corteva and Pioneer admit that Fidencio Salinas and Arminda Salinas were farm labor contractors for Pioneer in 2019, that they recruited certain workers who lived in Texas to perform certain work in Illinois by providing interested workers the information contained in Pioneer's Worker Disclosure and Information Statement, and that the Salinases assisted PHI with supervising the workers in the fields. Corteva and Pioneer deny any remaining allegations contained in this Paragraph.

12.    Plaintiff Hada Garcia is 41 years old and lives with her son, Plaintiff David Carreon Vazquez, in Rio Grande City, Texas.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

13.    Plaintiff Lidianelly Carreon Garcia is 22 years old and lives near her mother, Hada, and her brother, David, in Rio Grande City, Texas.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

14.    Plaintiff David Carreon Vazquez is 18 years old and lives with his mother, Hada, in Rio Grande City, Texas.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

15.    Plaintiff Mario H. Gonzalez is 60 years old and lives in Mission, Texas.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

16.    Plaintiff Ramon Hernandez Jr., is 56 years old and lives in Garciasville, Texas.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

17.    Plaintiff Alberto Montalvo Sr. is 40 years old and lives with his son, Plaintiff Alberto Montalvo Jr., in Rio Grande City, Texas.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

18.    Plaintiff Alberto Montalvo Jr. is 18 years old and lives in Rio Grande City, Texas, with his father, Alberto Sr.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

19.    Plaintiff Consuelo Diana Perez is 39 years old and lives in Alton, Texas, with her family, including her son, Plaintiff Adrian Perez; and her daughter, Plaintiff A.P.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

20.    Plaintiff Adrian Perez is 18 years old and lives in Alton, Texas, with his mother, Consuelo; his sister, A.P.; and other family members.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

21.    Plaintiff A.P. is 17 years old and lives in Alton, Texas with her mother and next friend, Consuelo; her brother, Adrian; and other family members.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

22.    Plaintiff Liliana Rodriguez is 41 years old and lives in Mission, Texas, with her daughters, Plaintiff E.R. and Plaintiff Patricia Rodriguez.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

23.    Plaintiff E.R. is 17 years old and lives with her mother and next friend, Liliana, and her sister, Patricia, in Mission, Texas.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

24.    Plaintiff Patricia Rodriguez is 18 years old and lives with her mother and next friend, Liliana, and her sister, E.R., in Mission, Texas.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

25.     Plaintiff V.A., Liliana's nephew, is 17 years old and lives with his family in Edinburg, Texas. He brings this suit through his older sister Diane Acuna as his next friend.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

26.      Plaintiff Vanessa Guzman, Liliana's niece, is 18 years old and lives with her family in Mission, Texas.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

27.     Plaintiff Gilbert Sanchez Jr. is 57 years old and lives in Weslaco, Texas.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

28.     Plaintiff Luis Alonzo Sifuentes is 60 years old and lives in Donna, Texas.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

29.     Plaintiff Miguel Sifuentes is 63 years old and lives in Donna, Texas.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

30.     Plaintiff Ediel Tanguma Trevino is 41 years old and lives in Rio Grande City, Texas.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

31.      Plaintiff Judith Valdez is 50 years old and lives in Rio Grande City, Texas, with her daughter, Plaintiff S.V.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

32.     Plaintiff S.V. is 17 years old and lives in Rio Grande City, Texas, with her mother and next friend, Judith.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

33.      Plaintiff Jesus Javier Zuniga Silva is 43 years old and lives in Mercedes, Texas, with his wife, Plaintiff Yadira Zuniga; their 12-month-old daughter, Plaintiff Ja.Z.; their 18-year-old son, Plaintiff Jesus Javier Zuniga Jr.; and other family members.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

34.     Plaintiff Yadira Zuniga is 38 years old and lives in Mercedes, Texas, with her husband, Jesus Javier Sr.; their daughter, Ja.Z.; their son, Jesus Jr.; and other family members.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

35.     Plaintiff Ja.Z. is twelve months old and lives in Mercedes, Texas, with her parents and next friends Jesus Javier Sr. and Yadira; her brother Jesus Jr.; and other family members.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

36.     Plaintiff Jesus Javier Zuniga Jr. is 18 years old and lives in Mercedes, Texas with his parents and next friends Jesus Javier Sr. and Yadira; his sister, Ja.Z.; and other family members.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

37.     Plaintiff Jose E. Zuniga is 18 years old and lives in Donna, Texas. Jose E. is Jesus Javier Sr. and Yadira's nephew.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

38.     Plaintiff Jennifer Zuniga is 20 years old and lives in Weslaco, Texas with her partner (not a party) and their children, including Plaintiff Ad.H., Plaintiff Ad.H., and Plaintiff Al.H. and Plaintiff An.H. (collectively, the "Hernandez Children"). Jennifer is Jesus Javier Sr. and Yadira's daughter.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

39.     Plaintiff Ad.H. is two years old and lives in Weslaco, Texas, with his mother and next friend, Jennifer; his father; and his siblings, including Al.H. and An.H.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

40.     Plaintiff Al.H. is about a year and a half old and lives in Weslaco, Texas, with her mother and next friend, Jennifer; her father; and her siblings, including Ad.H. and An.H.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

41.     Plaintiff An.H. is four years old and lives in Weslaco, Texas, with her mother and next friend, Jennifer; her father; and her siblings, including Ad.H. and Al.H.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

42.     Plaintiff Maria Abigail Zuniga is 22 years old and lives in Mercedes, Texas with her partner (not a party); two children, Plaintiff L.C. and Plaintiff Y.C. (the "Casarez Children"); and other non-party family members.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

43. Plaintiff L.C. is 22 months old and lives in Mercedes, Texas with his family, including his mother and next friend, Maria Abigail; his father (not a party); and his sister, Y.C.

**ANSWER**: Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

44. Plaintiff Y.C. is five years old and lives in Mercedes, Texas with her family, including her mother and next friend, Maria Abigail; her father (not a party); and her brother, L.C.

**ANSWER**: Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

### Defendants

45. Defendant Pioneer Hi-Bred International, Inc. is an Iowa corporation that uses migrant agricultural workers in its farm operations in Illinois, and which constituted the Workers' "agricultural employer" within the meaning of the AWPA, 29 U.S.C. § 1802(2).

**ANSWER**: Corteva and Pioneer admit the allegations contained in this Paragraph.

46. Defendant Corteva, Inc., d/b/a Corteva Agriscience ("Corteva"), is Defendant Pioneer Hi-Bred International's parent company. Defendant Corteva is a publicly traded agricultural chemical and seed company with its principal place of business in Wilmington, Delaware. Defendant Corteva was the Workers' "agricultural employer" within the meaning of the AWPA, 29 U.S.C. § 1802(2).

**ANSWER**: Corteva and Pioneer admit that Pioneer is a wholly-owned subsidiary of E.I. du Pont de Nemours and Company, which is a wholly-owned subsidiary of Corteva. Corteva and Pioneer admit that Corteva is a publicly traded agricultural company and that Corteva's principal place of business is in Wilmington, Delaware. Corteva and Pioneer deny that Corteva was the Workers' "agricultural employer" and deny any remaining allegations contained in this Paragraph.

47. Defendant RAS Aviation, L.L.C. ("RAS") owns and operates the helicopter involved in the July Event described in this Complaint, and employed the pilot of that helicopter.

10

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

48.    Defendant Farm Air, Inc. ("Farm Air") is an Illinois Corporation with its principal place of business in Astoria, Illinois, which provides and maintains aircraft used to apply pesticides to Illinois farms. Defendant Farm Air's president is Harley Joe Curless of Astoria, Illinois. Farm Air owned the plane involved in the August Event described in this Complaint.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

49.    Defendant Curless Flying Service, Inc. ("Curless") is an Illinois Corporation with its principal place of business in Astoria, Illinois, which employs licensed pesticide applicators to apply pesticides to Illinois farms. Defendant Curless's president is Harley Joe Curless of Astoria, Illinois. Defendant Curless operated the plane involved in the August Event described in this Complaint.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

## APPLICABLE LAW

### AWPA

50.    Congress passed the AWPA to address "activities detrimental to migrant and seasonal agricultural workers; to require farm labor contractors to register . . . ; and to assure necessary protections for migrant and seasonal agricultural workers, agricultural associations, and agricultural employers." 29 U.S.C. § 1801.

**ANSWER**:    Corteva and Pioneer admit the existence of the AWPA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

51.    Under the AWPA, every agricultural employer that recruits any migrant agricultural worker is required to "ascertain and disclose *in writing* to each such worker who is

11

recruited for employment the following information at the time *of the worker's recruitment*: (1) the place of employment; (2) the wage rates to be paid; (3) the crops and kinds of activities on which the worker may be employed; (4) the period of employment; (5) the transportation, housing, and any other employee benefit to be provided, if any, and any costs to be charged for each of them; (6) the existence of any strike or other concerted work stoppage, slowdown, or interruption of operations by employees at the place of employment; (7) the existence of any arrangements with any owner . . . of any establishment . . . to receive a commission or any other benefit resulting from any sales by such establishment to the workers; and (8) whether State workers' compensation insurance is provided, and, if so, the name of the State workers' compensation insurance carrier, the name of the policyholder of such insurance, the name and the telephone number of each person who must be notified of an injury or death, and the time period within which such notice must be given." 29 U.S.C. § 1821(a) (emphasis added); *see also* 29 C.F.R. § 500.76(b).

**ANSWER**:   Corteva and Pioneer admit the existence of the AWPA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

52.   In addition, every agricultural employer that employs any migrant agricultural worker "shall—(1) with respect to each such worker, make, keep, and preserve records for three years of the following information: (A) the basis on which wages are paid; (B) the number of piecework units earned, if paid on a piecework basis; (C) the number of hours worked; (D) the total pay period earnings; (E) the specific sums withheld and the purpose of each sum withheld; and (F) the net pay; and (2) provide to each such worker for each pay period, an itemized written statement of the information required by paragraph (1) of this subsection." *Id*. § 1821(d).

**ANSWER**:   Corteva and Pioneer admit the existence of the AWPA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

53.     In addition, no agricultural employer that employs any migrant agricultural worker shall "knowingly provide false or misleading information to any migrant agricultural worker concerning the terms, conditions, or existence of agricultural employment required to be disclosed by subsection (a), (b), (c), or (d)." *Id*. § 1821(f).

**ANSWER**:     Corteva and Pioneer admit the existence of the AWPA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

54.     The disclosures required by § 1821(a) through (c) "shall be provided in written form. Such information shall be provided in English or, as necessary and reasonable, in Spanish or other language common to migrant agricultural workers who are not fluent or literate in English." *Id*. § 1821(g).

**ANSWER**:     Corteva and Pioneer admit the existence of the AWPA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

55.     Every agricultural employer that employs any migrant agricultural worker shall pay the wages owed to such worker when due. *Id*. § 1822(a).

**ANSWER**:     Corteva and Pioneer admit the existence of the AWPA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

56.     In addition, no agricultural employer "shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any migrant agricultural worker." *Id*. § 1822(c).

**ANSWER**:     Corteva and Pioneer admit the existence of the AWPA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

### FIFRA Statute and Worker Protection Standards ("WPS")

57.    The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), administered and enforced by the U.S. Environmental Protection Agency ("USEPA"), governs the use of pesticides in the United States. 7 U.S.C. §§ 136-136y.

**ANSWER**:    Corteva and Pioneer admit the existence of FIFRA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof.

58.    Under the FIFRA, "pesticide" is defined to include (with some exceptions inapplicable here) "(1) any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest, (2) any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant, and (3) any nitrogen stabilizer." 7 U.S.C. § 136(u).

**ANSWER**:    Corteva and Pioneer admit the existence of FIFRA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof.

59.    Under the FIFRA, the USEPA created protections for agricultural workers through pesticide-specific restrictions and label requirements, called the Worker Protection Standards ("WPS"). 40 C.F.R. Part 170.

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

60.    The FIFRA makes it unlawful for anyone to use a pesticide in a manner inconsistent with its labeling. *Id*. § 136j(a)(2)(G).

**ANSWER**:    Corteva and Pioneer admit the existence of FIFRA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof.

61.    The WPS "contains a standard designed to reduce the risks of illness or injury resulting from workers' and handlers' occupational exposures to pesticides used in the production of agricultural plants on farms . . . and also from the accidental exposure of workers and other persons to such pesticides. It requires workplace practices designed to reduce or eliminate

14

exposure to pesticides and establishes procedures for responding to exposure-related emergencies." 40 C.F.R. § 170.1.

**ANSWER**:   Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

62.    The WPS defines "agricultural employer" to include an owner or responsible manager of an "agricultural establishment," which is includes, *inter alia*, a farm. 40 C.F.R. §§ 170.3; 170.305.

**ANSWER**:   Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

63.    "Employ" means "to obtain, directly or through a labor contractor, the services of a person in exchange for a salary or wages . . . without regard to who may pay or who may receive the salary or wages." *Id*. § 170.3.

**ANSWER**:   Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

64.    A "handler" is defined to include a person employed by an agricultural employer to apply pesticides. *Id*.

**ANSWER**:   Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

65.    "Handler employer" means anyone "self-employed as a handler or who employs any handler." *Id*.

**ANSWER**:   Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

66.    "Use, as in 'to use a pesticide'" includes application as well as "[p]ost-application activities intended to reduce the risks of illness and injury resulting from handlers' and workers' occupational exposures to pesticide residues during and after the restricted-entry interval, including responsibilities related to worker notification, training of workers or early-entry workers, providing decontamination supplies, providing pesticide safety information and pesticide application and hazard information, use and care of personal protective equipment, providing emergency assistance, and heat stress management." *Id*. § 170.305.

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

67.    "Early entry means entry by a worker into a treated area on the agricultural establishment after a pesticide application is complete, but before any restricted-entry interval for the pesticide has expired." *Id*.

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

68.    Under the WPS, the "agricultural employer" must assure that workers receive required protections. *Id*. §§ 170.7(a)(1); 170.309(b).

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

69.    The agricultural employer must assure that any covered pesticide is used in a manner consistent with the labeling of the pesticide; provide, to each person who supervises any worker or handler, information and directions sufficient to assure that each worker or handler receives the required protections; and "[r]equire each person who supervises any worker or handler to assure compliance by the worker or handler with the provisions of this part and to assure that

the worker or handler receives the protections required by this part." *Id*. § 170.7(a)(2)-(4); *see also id*. § 170.309(a).

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

70.     In addition, "[d]uring the application of any pesticide on a farm . . . , the agricultural employer shall not allow or direct any person, other than an appropriately trained and equipped handler, to enter or to remain in the treated area." *Id*. § 170.110; *see also id*. § 170.407(a).

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

71.     In addition, "after the application of any pesticide on an agricultural establishment, the agricultural employer shall not allow or direct any worker to enter or to remain in the treated area before the restricted-entry interval specified on the pesticide labeling has expired, except as provided in this section." *Id*. § 170.112(a); *see also id*. § 170.407(a).

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

72.     The WPS requires the employer to notify workers of pesticide applications on farms, which, depending on the labeling of the covered pesticide, may require *both* posting of treated areas *and* oral notification, or *either* posting *or* oral notice. *Id.* § 170.120(b); *see also id*. § 170.409(a)(1).

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

73.     Where posting is required, the agricultural employer must post signs stating DANGER and PESTICIDES in English and Spanish, with specific size and lettering requirements,

at least 24 hours before and throughout the duration of the application and restricted-entry interval, and it must remove the signs within three days after the end of the restricted-entry interval. See *Id*. § 170.120(c); *see also id.* § 170.409(b).

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

74.     Where oral warnings are permitted, the warning must state the location of the treated area, the time of restricted entry, and instructions not to enter until the restricted-entry interval is over. *Id*. § 170.120(c); *see also id.* § 170.409(c).

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

75.     In addition, when workers are on a farm that has had a covered pesticide applied within the last 30 days, the agricultural employer is required to display certain information about the pesticide, including the product name and active ingredient, the time and date of application, and the restricted-entry interval. *Id*. § 170.122.

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

76.     When workers are on a field that has had a covered pesticide applied within the last 30 days, the agricultural employer also must display safety information, including instructions stating what to do if exposed and the location of the nearest medical facilities. *Id*. §§ 170.135; 170.309(h); 170.311.

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

77.    The WPS also contains detailed provisions requiring decontamination, including requiring provision of supplies in an accessible location whenever a pesticide was applied within the past 30 days; enough water for washing and emergency eye flushing, and sufficient soap and single-use towels. 40 C.F.R. §§ 170.150; 170.411.

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

78.    Whenever there is reason to believe a worker

has been poisoned or injured by exposure to pesticides used on the agricultural establishment, including, but not limited to, exposures from application, splash, spill, drift, or pesticide residues, the agricultural employer shall:

(a)    Make available to that person prompt transportation from the agricultural establishment . . . to an appropriate emergency medical facility.

(b)    Provide to that person or to treating medical personnel, promptly upon request, any obtainable information on:

(1)    Product name, EPA registration number, and active ingredients of any product to which that person might have been exposed[;]

(2)    Antidote, first aid, and other medical information from the product labeling[;]

(3)    The circumstances of application or use of the pesticide on the agricultural establishment[;]

(4)    The circumstances of exposure of that person to the pesticide.

*Id.* § 170.160.

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

79.    If an agricultural employer directs a worker to perform activities in a treated area before expiration of the re-entry period, "[t]he agricultural employer must ensure that the worker is at least 18 years old." *Id.* § 170.605(a).

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

80.    In addition, before such entry, the agricultural employer must provide each worker certain information, including the pesticides applied, the time of the restricted-entry intervals, the basis for the early entry, what contact is permitted, the amount of time the worker is allowed in the restricted area, the personal protective equipment required by the labeling, and the location of safety information. *Id.* § 605(b).

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

81.    Before such entry, the employer must also ensure the worker has read the applicable labeling and has the proper protective equipment, on which the worker must be properly instructed, which the employer must properly maintain, and which the employer may not allow any worker to take home. *Id.* § 605(d)-(g).

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

82.    Finally, in the case of such entry, the employer must provide additional decontamination supplies, including portable eye-flushing containers and sufficient water for the workers to wash thoroughly. *Id.* § 605(h)-(j).

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

**OSHA Statute and the Field Sanitation Standards ("FSS")**

83.     The Occupational Safety and Health Act ("OSHA") requires the U.S. Department of Labor ("USDOL") to promulgate occupational safety and health standards where they would result in improved safety or health for designated employees. 29 U.S.C. § 655(a).

**ANSWER**:     Corteva and Pioneer admit the existence of OSHA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

84.     Pursuant to the OSHA, the USDOL created Field Sanitation Standards ("FSS") applicable to any agricultural establishment where 11 or more employees work in hand-labor field operations. *See* 29 C.F.R. § 1928.110(a).

**ANSWER**:     Corteva and Pioneer admit the existence of the FSS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

85.     The FSS requires agricultural employers to provide "drinking water . . . in sufficient amounts, taking into account the air temperature, humidity and the nature of the work performed, to meet the needs of all employees." *Id.* § 1928.110(c)(1).

**ANSWER**:     Corteva and Pioneer admit the existence of the FSS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

86.     The FSS requires employers to provide "toilet and handwashing facilities" and to maintain them "in clean and sanitary condition." *Id.* § 1928.110(c)(2),(3).

**ANSWER**:     Corteva and Pioneer admit the existence of the FSS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

87.     The FSS requires that handwashing facilities "be refilled with potable water as necessary to ensure an adequate supply." *Id.*

**ANSWER**:     Corteva and Pioneer admit the existence of the FSS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

88.    The FSS requires the employer to inform each employee of the importance of

drinking water frequently. *Id*. § 1928.110(c)(3),(4).

**ANSWER**:    Corteva and Pioneer admit the existence of the FSS but deny that plaintiffs are
entitled to any relief thereunder and deny any violation thereof. Any remaining
allegations are also denied.

## STATEMENT OF FACTS

### Generally Applicable Facts[1]

89.    In the spring of 2019, Defendant PHI, through its agents, FLC Fidencio and FLC

Arminda, recruited each of the Workers from Texas, where they lived, to work temporarily in

central Illinois that summer.

**ANSWER**:    Corteva and Pioneer admit that FLC Fidencio and FLC Arminda, as agents of
Pioneer, recruited certain workers who lived in Texas to perform certain
agricultural work in Illinois for the 2019 season. Corteva and Pioneer deny any
remaining allegations contained in this Paragraph.

90.    Most of the Workers[2] would perform the task of detasseling corn.[3]

**ANSWER**:    Corteva and Pioneer admit that certain workers were hired to perform the task of
detasseling corn. Corteva and Pioneer lack knowledge or information sufficient to
form a belief about the truth of the remaining allegations contained in this
Paragraph.

91.    Most of the Workers signed work-related documents in Texas as part of the

recruitment process. (For the Workers who were minors, an adult signed on their behalf).

**ANSWER**:    Corteva and Pioneer admit that there are signed Worker Disclosure and Information
Statements for certain workers. Corteva and Pioneer lack knowledge or information
sufficient to form a belief about the truth of the remaining allegations contained in
this Paragraph.

---

[1] The following facts apply to each of the Workers, with exceptions as noted.

[2] Plaintiff Alberto Montalvo Sr. did not perform detasseling work; Alberto Sr. was recruited to drive the other
workers to and from their motel and the fields in which they worked.

[3] Detasseling corn involves removing the tassels that hold the corn's staminate flowers, to prevent it from self-
pollinating.

92.     These documents included a "Worker Disclosure and Information Statement," which provided, *inter alia*, the following terms:

      a.    A rate of pay of $9.25[4] per hour;

      b.    A housing stipend of $22 per day, for each day worked;

      c.    Paid one-way travel to the fields;

      d.    Paid breaks of 29 minutes or less, and breaks of 30 minutes or more unpaid.

**ANSWER**:     Corteva and Pioneer admit that there are signed Worker Disclosure and Information Statements for certain workers that contain the provisions alleged herein. Corteva and Pioneer deny the allegations contained in this Paragraph to the extent they are inconsistent with the Worker Disclosure and Information Statements. Any remaining allegations are denied.

93.     The Worker Disclosure and Information Statement did not contain any information about workers' compensation insurance.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

94.     Each of the Workers arrived from Texas around the first week of July.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

95.     The Salinases arranged for the Workers to stay at either the Candlewood Suites ("Candlewood") or the WoodSpring Suites ("WoodSpring"), both located in Champaign, Illinois.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

96.     During the first week, the Workers only worked five days, but after the first week, they generally worked six or seven days per week, with only an occasional day off.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

---

[4] Defendant PHI promised a few of the Workers a different hourly wage, as follows: Alberto Sr. ($15 per hour); Jesus Javier Sr. ($13 per hour); Mario ($10 per hour); Ramon ($10 per hour).

97.     To get to the fields each day, the Workers rode on buses that Defendant PHI provided, except for Jesus Javier Sr. and his family, who rode in Jesus Javier Sr.'s truck.

**ANSWER**:     Corteva and Pioneer admit that there were buses provided by Pioneer. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

98.     The average workday at the field started around 5:00 a.m., which meant the Workers had to be ready to take their bus around 4:00 a.m. Most of the Workers therefore got up between 3:00 and 3:30 a.m.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

99.     Normally it took about 30 to 40 minutes for the Workers to get to the field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

100.    When the Workers arrived, they had about 15 minutes to change into their work clothes and put on their visibility safety gear, and then enter the field. Sometimes they had to wait for sufficient daylight to begin working.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

101.    The Workers' main task, detasseling, required the Workers to walk through each row of corn to remove the spiky tassel from the tops of the plants.

**ANSWER**:     Corteva and Pioneer admit the allegations contained in this Paragraph.

102.    The Workers all wore bright neon orange hats and backpacks as they worked so that they would be visible and therefore safer.

**ANSWER**:     Upon information and belief, Corteva and Pioneer admit the allegations contained in this Paragraph.

103.    The Workers received one 10- or 15-minute break each morning, then a 30-minute break for lunch, and then, occasionally, another 10- or 15-minute break in the afternoon.

**ANSWER**:    Corteva and Pioneer admit that workers generally received a 30-minute break for lunch and could receive other breaks throughout the day. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

104.    When the Workers took bathroom breaks, FLC Fidencio would tell them to hurry up and return to the field.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

105.    For all 100 or so workers, the fields had two to four portable toilets on each side of the field, sometimes designated by gender (although the designations were allowed to be ignored).

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

106.    The toilets were often extremely dirty and sometimes lacked toilet paper.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

107.    At times Defendant PHI would keep a supervisor outside the portable toilets to hand out toilet paper—he would address each Worker waiting in line, ask how much they needed, and then give it to the Worker.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

108.    There were also small sinks on each side of the field for handwashing, which sometimes ran out of soap; occasionally there was no water for handwashing.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

109.    Defendant PHI provided tap water (brought from the motel) for drinking, but it did not taste good.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

25

110.    PHI managers constantly reminded the Workers not to drink too much water.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

111.    Water ran out on more than one occasion.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

112.    The Workers always ate their lunches on the buses.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

113.    About once a week, they would eat on the bus while it was taking them to another field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

114.    Whether or not the bus was moving and transporting them to another field, the Workers were not paid for their lunch time.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

115.    Sometimes, when the Workers ate their lunches, and the trip between fields was shorter than 30 minutes, the Workers did not receive their full 30-minute lunch break, but it was still unpaid.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

116.    Defendant PHI had represented in its Worker Disclosure and Information Statement that breaks under 30 minutes would be paid.

**ANSWER**:    Corteva and Pioneer admit that Pioneer's Worker Disclosure and Information Statements indicate that breaks less than 30 minutes would be paid and deny any remaining allegations contained in this Paragraph.

117.    Most days, the workday ended in the field between about 4:00 and 5:00 p.m. and the Workers would arrive back at their motel between 5:00 and 6:00 p.m.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

*The July Event*

118.   In the afternoon of July 23, 2019, at around 4:00 p.m., most of the Workers had just entered the last field on which they were scheduled to work that day, when a helicopter flew overhead from an adjacent field, spraying a liquid that quickly dispersed across the field (the "July Event").

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

119.   Defendant RAS owned and operated the helicopter.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

120.   The experience of each of the individual Workers in the July Event is set forth in more detail below.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

121.   Defendant RAS, through its agent, the pilot, could plainly see the Workers, as it was a clear day, the corn was still shorter than most of the Workers, and the Workers were wearing their neon orange hats and backpacks.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

122.   Many of the Workers began to smell a strong, bad odor.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

123.   One of the Workers, Alberto Montalvo Sr., was on the bus at the time, preparing to drive the Workers back to their motel after the shift.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

27

124.    From where Alberto Sr. sat, he could see that a helicopter was spraying a field right next to the Workers.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

125.    He started honking the horn of the bus, a common way of summoning workers off the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

126.    Workers and others in the field started shouting that everyone should get out.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

127.    The Workers left the field as quickly as they could.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

128.    Many of the Workers rushing to get off the field emerged on the side opposite to where the buses were, and therefore needed to wait to be picked up.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

129.    Many of the Workers immediately began to feel symptoms of chemical exposure, such as eye, skin, and throat irritation; difficulty breathing; numbness of the lips, mouth, or face; and headache.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

130.    Once off the field, some of the Workers saw Defendant RAS's helicopter flying towards them and feared it would spray again, but it turned and flew over a neighboring field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

131.    After this incident, Defendant PHI and FLC Fidencio decided to end the work day and have everyone return to their motel.

**ANSWER**:    Corteva and Pioneer admit that Pioneer ended the work day after the alleged incident, but deny that Pioneer's field or any of its workers were sprayed. Any remaining allegations are denied.

132.    Defendant PHI provided no emergency medical assistance, decontamination measures, or instructions to the Workers about rinsing or washing themselves, and offered no transportation to a medical facility.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

133.    Instead, Defendant PHI, through its managers, instructed Workers to board the buses immediately.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

134.    The Workers did as instructed and immediately boarded the buses, and therefore most of them did not wash or rinse in any way after leaving the field, or receive any medical attention.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

135.    Defendant PHI failed to provide adequate facilities at the field for the Workers to decontaminate properly, such as showers or other sources of ample flowing water.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

136.    Defendant PHI did not provide any of the Workers with any information regarding what pesticide had been sprayed, did not ask them if they were experiencing symptoms resulting from exposure, and did not provide instructions on decontamination.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

137.    In fact, after ordering the Workers to board the buses, Defendant PHI managers did

not discuss or even mention the incident again.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

138.    The buses left the field to return the Workers to the motels where they were staying,

which took about 45 minutes.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

139.    The Workers were able to bathe only after they returned to the motel.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

140.    Even after returning to the motel, many of the Workers had to wait for the others

sharing their motel rooms to shower before they could do so.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

141.    In the coming days and weeks, many Workers and some of the Children

experienced worsening and new symptoms, including diarrhea, skin rash, headaches, loss of

appetite, vomiting, and eye irritation.[5]

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

142.    Most of the Workers returned to work the next day, despite their symptoms.

**ANSWER**:    Corteva and Pioneer admit that the workers worked the next day and deny the
remaining allegations contained in this Paragraph.

143.    Some could not return to work due to their symptoms.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

---

[5] The Workers describe their individual experiences below, under "Facts Relating To Specific Workers."

144.    After the July Event, no agent of Defendant PHI ever mentioned it to the Workers again.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

145.    Some of the Workers reported their physical symptoms to PHI managers, but no PHI employee provided information, advice or assistance in receiving medical attention.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

146.    Some of the Workers sought medical attention for themselves or the Children on their own at area healthcare facilities in the coming days and weeks.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The August Event*

147.    On August 5, 2019, in the mid-afternoon, the Workers were again working in a field, detasseling corn.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

148.    The Workers saw a plane suddenly fly in the direction of the field in which they were working, and then fly overhead, passing over the field they were working in several times, spraying as it went.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

149.    The Curless Defendants owned and operated this plane.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

150.    The experience of each of the individual Workers in what followed (collectively, the "August Event") is set forth below.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

151.     The Curless Defendants' plane flew so low that some of the Workers could read the numbers on it and could see the pilot.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

152.     The Curless Defendants' agent, piloting the plane, could plainly see the Workers, as it was a clear day, the corn was still shorter than most of the Workers, and the Workers wore bright neon orange hats and backpacks.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

153.     Many of the Workers saw a liquid spray come out of the plane, felt a mist, and smelled a strong, bad odor.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

154.     Many of the Workers immediately felt symptoms such as eye, skin, and throat irritation; numbness of their lips, mouth, or face; or difficulty breathing.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

155.     As the Workers realized what was happening, they ran out of the field as quickly as they could.

**ANSWER**:     Corteva and Pioneer admit that Pioneer instructed workers to leave the field. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

156.     Many Workers also yelled to each other or called each other on their phones to alert everyone to get off the field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

32

157.    The Workers felt fear and panic.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

158.    PHI Managers and FLC Fidencio were outside the field where some of the Workers got out, and additional PHI managers arrived shortly thereafter.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

159.    Many Workers received no instruction whatsoever regarding what to do about the exposure.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

160.    Several of the Workers were not able to rinse off at all, due to Defendant PHI's failure to provide adequate decontamination facilities or instruction.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

161.    Some of the PHI managers and FLC Fidencio asked some individual Workers whether they were OK.

**ANSWER**:    Corteva and Pioneer admit that Pioneer managers and FLC Fidencio asked workers whether they were OK. Any remaining allegations are denied.

162.    The PHI managers told some Workers who reported symptoms to wash off.

**ANSWER**:    Corteva and Pioneer admit that Pioneer managers told workers to wash off. Any remaining allegations are denied.

163.    Some of these Workers were able to use a hose with light pressure to rinse off.

**ANSWER**:    Corteva and Pioneer admit that certain workers rinsed off with soap and water. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

164.    These Workers waited their turn to use the hose to rinse off the upper portion of their bodies.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

165.     Initially, there was no soap.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

166.     FLC Arminda left to obtain some, later returning with dish soap.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

167.     Some Workers used small amounts of water intended for drinking or handwashing to try to rinse off.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

168.     Some used the scant water to rinse only where they had actually felt the mist hit them, like their faces and necks.

**ANSWER**:     Corteva and Pioneer admit that certain workers rinsed off with soap and water.  Any remaining allegations are denied.

169.     Some of the Workers removed outer layers of clothing to rinse off, but many did not remove any clothing.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

170.     There was no area to undress privately and rinse, so the Workers, particularly the women, could not remove most of their clothes.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

171.     PHI managers provided no additional instructions to the Workers about the exposure.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this paragraph.

34

172.    During this time, some of the Workers saw and heard the FLCs speaking in person or by two-way radio or phone with PHI managers regarding whether Workers could return to work in the field.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

173.    About 15 minutes after the plane first flew overhead, PHI managers ordered the Workers to go back into the same field to continue working.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

174.    PHI managers conveyed that order directly to the Workers and to the FLCs.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

175.    The FLCs, acting at the direction of these PHI managers, assured the Workers it was safe to return despite the lingering strong smell of pesticides.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

176.    Relying on this direction and assurance, many of the Workers returned to work in the field, although some who were still waiting to rinse off, or who felt too ill to return, remained off the field.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

177.    Within about 10 minutes, the Curless Defendants' plane passed overhead again and sprayed the field and the Workers on it a second time.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

178.    The plane flew overhead at least twice, spraying the area in which the Workers were working.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

179.    Workers in the field began yelling, and those outside the field began honking their horns, to alert everyone to flee once again.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

180.    Some of the Workers exited on the side of the field without buses, because that was closer to where they had been working.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

181.    PHI managers told FLC Fidencio that Workers who had fled to that side of the field should run back through the just-sprayed field once again to reach the buses.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

182.    FLC Fidencio conveyed PHI's order to the Workers.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

183.    Receiving this Order, the Workers ran back through the field to get to the side where the buses were, causing additional exposure.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this paragraph.

184.    The Workers, having fled the field again, gathered near the buses in a state of alarm, panic, anger and confusion.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

185.    Many were experiencing immediate symptoms of exposure, including eye, skin, and throat irritation; numbness of their lips, mouth, or face; difficulty breathing; and headache.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

186.    Some PHI managers asked the Workers how they felt.

**ANSWER**:    Corteva and Pioneer admit that Pioneer managers asked the workers how they felt and deny the remaining allegations contained in this Paragraph.

187.    The sickest of the Workers, Adrian Perez, had to be helped off the field by two other Workers, Luis and Miguel Sifuentes.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

188.    Defendant PHI did not call an ambulance and had no medical personnel at the field to examine or treat any of the Workers.

**ANSWER**:    Corteva and Pioneer admit that no ambulance or medical attention was requested at the field and therefore none was provided. Any remaining allegations are denied.

189.    Defendant PHI did not offer any other transportation to a hospital or medical facility to any Workers, or provide Workers with names and locations of health facilities or hospitals where they could receive care.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

190.    Defendant PHI did not provide adequate facilities for the Workers to decontaminate.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

191.    Some of the Workers washed their hands, faces, and chests with the scant available water, because there were no designated decontamination facilities.

**ANSWER**:    Corteva and Pioneer admit that certain workers washed themselves with water. The remaining allegations are denied.

192.    Many Workers, however, did not rinse off in any way after the spray, and PHI managers did not direct or instruct them to do so.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

193.   PHI managers and the Salinases took personal protective equipment, such as hats, gloves, and glasses, from Workers who reported they were sprayed.

**ANSWER**:   Corteva and Pioneer admit that a Pioneer manager took certain personal protective equipment from Fidencio Salinas. The remaining allegations are denied.

194.   PHI managers and the Salinases then told the Workers to board the buses to return to the motels where they were staying, which they did.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

195.   On the way back to the motels, many Workers were ill, with Adrian in particular showing severe signs of illness: red eyes, extreme weakness, gagging and retching.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

196.   A worker asked FLC Fidencio if the bus could take Adrian straight to the hospital instead of returning to the motel.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

197.   FLC Fidencio responded that the bus should just go back to the motel as quickly as possible because Defendant PHI would have medical staff there to treat sick Workers once they arrived.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

198.   However, when the Workers arrived back at the motel, Defendant PHI had no medical personnel there.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

199.   The Workers waited at the motel for about another 30 minutes for medical personnel that never arrived.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

200.    One of Adrian's family members called an ambulance, which took Adrian to a hospital.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

201.    Other Workers drove themselves or otherwise obtained rides to a hospital to obtain medical attention.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

202.    FLC Fidencio told some of the Workers to go to the hospital if they felt ill.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

203.    Some of the Workers showered at the motel before they went to the hospital.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*Medical Treatment Following the August Event*

204.    Some of the Workers received emergency medical care on August 5, 2019.[6]

**ANSWER**:     Corteva and Pioneer admit that certain workers received medical care on August 5, 2019 and that certain workers received care after August 5, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in the footnote to this Paragraph.

205.    The experience of the individual Workers and Children who sought medical assistance is set forth in more detail below.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

---

[6] Some of the Workers and family members also received care in the days that followed, or subsequent follow-up care, as stated below in the "Facts Relating To Specific Workers" Section.

206.    Those who sought emergency medical attention went to either Carle Foundation Hospital ("Carle") or OSF Heart of Mary Medical Center ("OSF"), both located in Urbana, Illinois, approximately three to five miles from the Workers' motels.

**ANSWER**:    Corteva and Pioneer admit that certain workers went to Carle or OSF. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

207.    Defendant PHI had managers at both hospitals who interfered with the Workers' attempts to communicate to medical personnel.

**ANSWER**:    Corteva and Pioneer admit that Pioneer managers were present at both hospitals. Corteva and Pioneer deny the remaining allegations contained in this Paragraph.

208.    Brandon Gillen, PHI's Field Operations Manager, went to Carle hospital at around 6:15 p.m.

**ANSWER**:    Corteva and Pioneer admit that Pioneer Field Operations Manager, Brandon Gillen, went to Carle Hospital at some time in the early evening. Any remaining allegations are denied.

209.    Dylan Haun, PHI's Safety Supervisor, also went to Carle around that time.

**ANSWER**:    Corteva and Pioneer admit that Pioneer Safety Supervisor Dylan Haun went to Carle in the evening of August 5, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

210.    Later that evening, Haun went to OSF as well.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

211.    At the hospitals, Gillen and Haun, acting as Defendant PHI's agents, falsely stated to medical personnel that the plane had not sprayed the Workers, and had turned around a quarter of a mile away from the Workers before spraying.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

212.    Gillen and Haun had a visual display on a computer tablet that they claimed showed that the plane had sprayed a different field.

**ANSWER**:    Corteva and Pioneer admit Gillen and/or Haun had a map on a tablet showing a different field was sprayed and deny any remaining allegations contained in this Paragraph.

213.    On information and belief, Gillen requested and received this information from Defendant Farm Air.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

214.    Gillen and Haun, acting as Defendant PHI's agents, falsely reported to medical personnel that the Workers had been decontaminated at the field, and some medical personnel therefore noted this incorrect information in their medical records.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

215.    Gillen and Haun made statements to hospital staff that falsely downplayed the level of exposure the Workers had experienced, and the Workers' resulting symptoms.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

216.    At OSF, Haun instructed the Workers to get letters from a doctor permitting them to return to work ("return-to-work letters"), regardless of whether they were well enough to do so.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

217.    Haun insisted that the Workers obtain such letters.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

218.    In Adrian's case, for example, Haun convinced a non-treating nurse to provide a return-to-work letter stating he could work the next day, and the treating doctor had to revise the letter the next day because Adrian was much too ill to work.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

219.    Most of the Workers received such return-to-work letters clearing them for work the following day regardless of whether they were in fact well enough to work.

**ANSWER**:    Corteva and Pioneer admit that most workers received letters clearing them to work the next day without restrictions. Corteva and Pioneer deny the remaining allegations contained in this Paragraph.

220.    Some of the treating medical staff gave the Workers forms intended to be used to secure workers' compensation for their injuries.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

221.    Haun argued with the staff, claiming that the Workers' injuries should not qualify for workers' compensation.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

*PHI's Subsequent Communication about the Exposures*

222.    Two days after the August Event, on August 7, 2019, Defendant PHI called the Workers together at a field in which they were working.

**ANSWER**:    Corteva and Pioneer admit that Pioneer addressed certain workers at a field on or about August 7, 2019 and deny the remaining allegations contained in this Paragraph.

223.    At that time, Dylan Haun, on behalf of Defendant PHI, made a number of false claims about the August Event to the Workers.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

224.    Defendant PHI claimed that spray seen coming from the plane was actually smoke.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

225.    Defendant PHI claimed there were no chemicals released over the field where the Workers had been working.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

42

226. Defendant PHI denied that the symptoms the Workers had experienced or continued to experience were related to chemical exposure during the August Event.

**ANSWER**: Corteva and Pioneer admit the allegations contained in this Paragraph.

227. Defendant PHI claimed that, after a thorough investigation, it had found that no one was sprayed with pesticides.

**ANSWER**: Corteva and Pioneer admit the allegations contained in this Paragraph.

228. Defendant PHI falsely claimed that all of those who had sought medical care were completely released to work with no restrictions and no symptoms.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

229. Defendant PHI claimed that if anyone sought medical attention, their symptoms were not related to the August Event, and that these non-work-related injuries would not be covered by workers' compensation.

**ANSWER**: Corteva and Pioneer admit the allegations contained in this Paragraph.

230. Defendant PHI also introduced its "field nurse," who had never before been available, and instructed the Workers to use her as a "resource" for any illness or injury that may occur.

**ANSWER**: Corteva and Pioneer admit that Pioneer introduced a field nurse for use by the workers and deny the remaining allegations contained in this Paragraph.

231. Workers at the meeting demanded to know what pesticides had been used by the plane they had seen.

**ANSWER**: Corteva and Pioneer admit that one worker asked a question about what was sprayed. Any remaining allegations are denied.

232. Haun stated he could show them "SDSs" (meaning Safety Data Sheets) for the pesticides on that plane, and briefly returned to his vehicle.

43

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

233.     However, when he came back, he said that under further guidance, since the pesticides were not sprayed on the Workers, he did not have to show them the SDSs after all.

**ANSWER**:     Corteva and Pioneer admit that Haun did not show the SDSs and deny the remaining allegations contained in this Paragraph.

234.     Weeks after the event, the Workers made a formal request to Defendant PHI for pertinent information about the pesticides sprayed during the July Event and the August Event.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

235.     The Workers sought the information in order to seek appropriate medical attention.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

236.     Defendant PHI refused to provide the requested information.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

*Chemical Safety Information*

237.     The Workers independently learned that the chemicals sprayed in the July Event included (but may not have been limited to) Priaxor Xemium Brand Fungicide, USEPA Registration No. 7969-311 ("Priaxor"); Tilt, USEPA Registration No. 100-617; Warrior II, USEPA Registration No. 100-1295 ("Warrior"); and FS Talyx ("Talyx"), an adjuvant.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

238.     The Workers independently learned that the chemicals sprayed in the August Event included (but may not have been limited to) Avaris Fungicide 2XS, USEPA Registration No. 100-1324-5905 ("Avaris"); Coron 25-0-0 Fertilizer ("Coron"); and Sultrus Insecticide, USEPA Registration No. 5905-599 ("Sultrus").

44

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

239.    Priaxor, Tilt, Warrior, Avaris, and Sultrus all meet the definition of pesticide in the

FIFRA and are subject to its labeling and other requirements.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

240.    Tilt, Warrior, and Avaris's labels all provide the following first aid measures:

If in Eyes: Hold eye open and rinse slowly and gently with water for 15-20 minutes. Remove contact lenses, if present, after the first 5 minutes, then continue rinsing. Call a poison control center or doctor for treatment advice.

If on Skin: Take off contaminated clothing. Rinse skin immediately with plenty of water for 15- 20 minutes. Call a poison control center or doctor for treatment advice.

Tilt label at 2, available at

https://www3.epa.gov/pesticides/chem_search/ppls/000100-00617-20180614.pdf;

Warrior label at 2 (with slight variation in wording), available at

https://www3.epa.gov/pesticides/chem_search/ppls/000100-01295-20141113.pdf;

Avaris label at 2, available at

https://www3.epa.gov/pesticides/chem_search/ppls/000100-01178-20180614.pdf

(same).

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

241.    Talyx's label similarly requires, if the product gets into eyes, flushing with water

for 15 minutes and seeking medical attention if irritation occurs, and if on skin, removing

contaminating clothing, washing skin contact area with plenty of soap and water, and seeking

medical attention if irritation occurs. *See* Talyx label at 1, available at

http://fs1.agrian.com/pdfs/FS_Talyx_Label.pdf.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

242.   Sultrus's label similarly requires avoiding contact with eyes or clothing, and requires rinsing eyes for 15-20 minutes and calling a poison control center if the product gets into eyes. Sultrus label at 1, available at https://www3.epa.gov/pesticides/chem_search/ppls/005905-00599-20170621.pdf.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

243.   Coron's label also requires rinsing for several minutes if the product gets into eyes, and "remov[ing] contaminated clothing and wash[ing] skin with soap and water," if on skin, and seeking medical attention if skin irritation occurs. Coron label at 1, available at https://s3-us-west-1.amazonaws.com/agrian-cg-fs1-production/pdfs/Coron_Metra_25_Label.pdf.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

244.   Priaxor, Tilt, Warrior, Avaris and Sultrus's labels all forbid application "in a way that will contact workers or other persons, either directly or through drift. Only protected handlers may be in the area during application." Priaxor label at 2, available at https://www3.epa.gov/pesticides/chem_search/ppls/007969-00311-20161118.pdf; Tilt label at 4; Warrior label at 4;; Avaris label at 6; Sultrus label at 4.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

46

245.     The Priaxor, Tilt, Avaris and Sultrus labels also indicate that workers should not be allowed to enter treated areas during a 12-hour restricted entry period.[7] *See* Priaxor label at 3; Tilt label at 7; Avaris label at 6; Sultrus label at 4.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

246.     The Warrior label indicates workers should not be allowed to enter treated areas during a 24-hour restricted entry interval. *See* Warrior label at 6.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

247.     On information and belief, the chemicals sprayed in both the July and August Events were mixed with adjuvants and other chemicals intended, among other things, to make the pesticides easier to apply or more persistent, or to improve distribution on the intended crops.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

248.     On information and belief, the chemicals sprayed, either singly or in combination, caused each of the Workers and Children illness and injury.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

### Facts Relating To Specific Workers

Hada Garcia, Lidianelly Carreon Garcia, and David Carreon Vazquez

249.     Around May of 2019, Hada learned of a job opportunity in Illinois for that summer.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

---

[7] Tilt's most recent label, not yet in effect during the July Event, provides a restricted entry interval of 24 hours. *See* Tilt label at 5 (accepted Sept. 6, 2019), available at ttps://www3.epa.gov/pesticides/chem_search/ppls/000100-00617-20190906.pdf.

250.     On or around May 9, 2019, Hada and her then 20-year-old daughter, Lidianelly,

met with the Salinases at their home in Alto Bonito, Texas, and signed employment-related

documents, which were in English.

**ANSWER**:     Corteva and Pioneer admit that there is a signed Worker Disclosure and Information
Statement for Hada Garcia in English dated May 9, 2019. Corteva and Pioneer lack
knowledge or information sufficient to form a belief about the truth of the
remaining allegations contained in this Paragraph.

251.     Hada also signed employment-related documents on behalf of her son, David, who

was 17 years old at the time.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

252.     Hada does not speak or read English.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

253.     FLC Fidencio told Hada that PHI would cover the cost of housing.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

254.     On or around July 5, 2019, Hada left Texas with seven family members, including

Lidianelly and David. The family traveled in Hada and Lidianelly's two cars.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

255.     FLC Arminda arranged for the family's housing: a motel room at the Candlewood

containing two queen-sized beds. Because two beds did not suffice for eight people, some of the

children slept on the floor.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

256.     Hada found that her family's housing stipend did not cover the cost of the room as

she had been told, and they had to pay about $130 in addition to the stipend each week.

48

**ANSWER**:  Corteva and Pioneer deny any agreement to cover the cost of housing. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

*The July Event*

257.  In the late afternoon of July 23, 2019, Hada, Lidianelly and David were working in a field.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

258.  David saw a helicopter spraying something and alerted Hada.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

259.  Hada initially could not believe anyone would spray pesticides near them, particularly since she and the other Workers were visible because they wore large, neon orange hats.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

260.  Hada, Lidianelly, and David all saw the helicopter flying nearby.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

261.  Hada felt a slight mist from the spray.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

262.  Hada, Lindianelly, and David heard the horns of the buses summoning them off the field, and ran off the field as fast as they could.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

263.  Once they got out of the field, Hada heard others saying that the spray had been a pesticide.

49

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

264.   No one from Defendant PHI gave Hada, Lidianelly or David any information about the pesticide or pesticides, or advised them to decontaminate in any way.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

265.   Nor did Defendant PHI provide Hada, Lidianelly or David with adequate facilities to decontaminate before they got on the bus.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

266.   PHI's agents instead instructed the Workers to board the bus immediately, which they did.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

267.   Soon thereafter, Hada, Lidianelly and David all started to experience symptoms, including bad headache.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

268.   Lidianelly also felt nauseated.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

269.   They each showered when they returned to the motel, but their symptoms persisted.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

270.   Nevertheless, they all returned to work the next day.

**ANSWER**:   Corteva and Pioneer admit that Hada Garcia, Lidianelly Carreon Garcia, and David Carreon Vasquez worked on July 24, 2019. Any remaining allegations are denied.

271.   After and as the result of the July Event, Hada, Lidianelly and David continued to experience headaches and other related effects.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

*The August Event*

272.   On August 5, 2019, in the afternoon, Hada, Lidianelly and David were working near each other.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

273.   David saw a plane overhead and alerted his mother and sister to get out of the field.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

274.   They all ran off the field quickly, running to the side opposite to where the buses were located.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

275.   They could smell a strong, bad chemical odor as they gathered and waited for instruction or direction from PHI.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

276.   PHI Fidencio and his son George Salinas were nearby, and had two-way radios.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

277.   Hada, Lidianelly and David saw and heard FLC Fidencio receive communication on his two-way radio.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

278.   FLC Fidencio then told them to go back to work in the field.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

279.    Hada asked George Salinas if it was really safe for them to return.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

280.    George Salinas then communicated by two-way radio with, on information and belief, a PHI manager, who confirmed the Workers were to go back into the field.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

281.    Hada, Lidianelly and David went back into the field and had worked part of the way into their row when they started hearing people yelling for them to get off the field again.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

282.    They were scared and ran off the field as fast as they could.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

283.    David felt a mist hitting him, enough to make his clothes damp.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

284.    Lidianelly could smell an odd smell and felt irritation in her eyes as she ran out of the field.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

285.    As she was running, Lidianelly fell and twisted her ankle before she was able to get off the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

286.    PHI managers told Hada, David, and Lidianelly to get on the bus, and the Workers returned to the motel.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

52

287.    Defendant PHI did not provide them with adequate facilities to decontaminate before they got on the bus, and none of them did so.

**ANSWER**:    Corteva and Pioneer deny that adequate facilities to decontaminate were not provided. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

288.    No one told them to wash off, either then or when they got back to the motel.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

289.    On the bus, each of them experienced symptoms, including headache and nausea.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

290.    Hada, Lidianelly and David each took a shower after they returned to the motel.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

291.    The three of them continued to experience symptoms, including bad headaches and nausea.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

292.    At the motel, someone they did not know was telling workers to go to the hospital if they were feeling ill.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

293.    Hada, Lidianelly and David were all feeling ill, so they went to OSF.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

294.    When they got there, the hospital staff seemed to be familiar with what had happened, as they had already seen other Workers.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

295.    Defendant PHI managers, including, on information and belief, Dylan Haun, asked medical staff to give them "return-to-work" letters.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

296.    Hada, Lidianelly and David received x-rays and over-the-counter medication, and letters stating they could return to work the next day.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit the allegations contained in this Paragraph.

297.    However, they felt too ill to return to work the next day, and also felt it would not be safe to do so.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit that Hada Garcia, Lidianelly Carreon Garcia, and David Carreon Vazquez did not return to work on August 6, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

298.    Hada therefore decided to return to Texas with her family.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

299.    Hada, Lidianelly and David received no pay for any day after August 5, 2019.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit the allegations contained in this Paragraph.

300.    After and as the result of the August Event, Hada, David, and Lidianelly continued to experience related physical and emotional effects.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

Mario H. Gonzalez

301.    In June 2019, Mario learned about a job opportunity in Illinois for that summer.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

302.   Around that time, he met with FLC Arminda, at the Salinases' home in Alto Bonito,

Texas, where he signed employment-related documents.

**ANSWER**:   Corteva and Pioneer admit that there is a signed Worker Disclosure and Information Statement for Mario Gonzalez. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

303.   The first week of July 2019, Mario made the two-day trip from Texas to Illinois in

FLC Fidencio's SUV, with six other workers.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

304.   In the summer of 2019, while working for Defendant PHI, Mario stayed in a single

motel room with his cousin, Plaintiff Ramon Hernandez Jr., and two other people.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

305.   Mario noticed that his checks were generally short four or five hours a week.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

*The August Event*

306.   On August 5, 2019, Mario was working on one of Defendant PHI's fields when a

plane passed overhead, spraying pesticides.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

307.   Mario immediately left the field, and could smell a very strong smell.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

308.   There was no water for him to wash up with, so he just got on his bus.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

309.     He waited about fifteen minutes, but then FLC Fidencio got on the bus to tell the Workers to return to work.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

310.     He went back into the field, and a few minutes later the plane came back and sprayed again.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

311.     Again, Mario ran off the field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

312.     There was no water to wash up.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

313.     He boarded the bus and they returned to the motel, where he showered.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

314.     After and as a result of the August Event, Mario experienced symptoms including headache, fatigue and weakness, but he still went to work.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

315.     He did not go to the hospital because he had no car or other way to get there, and he understood that only the sickest people should go.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

316.     On August 7, 2020, a representative of PHI, Dylan Haun, confirmed to a group of Workers that PHI would not cover medical bills for symptoms the Workers were experiencing.

**ANSWER**:   Corteva and Pioneer  admit that on or about August 7, 2020 Haun stated Pioneer would not cover additional medical bills for alleged symptoms regarding the alleged August event. Any remaining allegations are denied.

317.   In the weeks that followed, Mario continued to feel related symptoms, but did not seek medical treatment because he did not have transportation or money to pay for such treatment.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

318.   Mario returned to Texas about ten days after the August Event.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

319.   After and as the result of the August Event, Mario continued to experience related physical and emotional effects.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

Ramon Hernandez Jr.

320.   Ramon had worked summers for FLC Fidencio and Defendant PHI since about 1998.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

321.   In 2019, Ramon took a public bus from McAllen, Texas to Champaign, Illinois.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

322.   Ramon signed his work-related documents after arriving in Illinois.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

323.   Ramon's Worker Disclosure and Information Sheet provided that he would earn $10 per hour.

**ANSWER**:   Corteva and Pioneer admit the allegations contained in this Paragraph.

324.    Ramon's first paycheck was short seven hours.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

325.    Another paycheck during the course of Ramon's employment with Defendant PHI was short about five hours, and otherwise each check was short either three or four hours.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

326.    Ramon understood that many other workers had missing hours of pay, and he believed he had no recourse at that time.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

327.    Ramon stayed in one room with Mario and two other men, where he generally slept on the floor.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The July Event*

328.    On July 23, 2019, Ramon entered the field when a helicopter passing overhead sprayed him.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

329.    He immediately ran off the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

330.    Ramon could see and smell the spray.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

331.    He could also feel it hitting his face.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

332.   He experienced symptoms including eye irritation and stinging lips, as well as nausea.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

333.   Off the field, PHI managers urged Ramon and the other Workers to get on the bus and leave right away.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

334.   They did not tell them to decontaminate first or provide them with adequate facilities with which to do so.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

335.   No one called for medical assistance after this incident.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

336.   Back at the motel, Ramon was able to shower, but had to wait his turn.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The August Event*

337.   On August 5, 2019, Ramon again was working in a field when he was sprayed, this time by a plane passing overhead.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

338.   Ramon felt a great deal of spray hitting him, but he was deep within a row and it took time to get off the field.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

339.    Once off the field, others were boarding the buses, but Ramon stayed outside to try to get air.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

340.    About ten minutes later, Ramon became aware of an order to return to the field, so Ramon returned.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

341.    The airplane came back and sprayed them again, and Ramon fled the field again. In his rush to get off the field, he injured his knee.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

342.    Ramon had been doused with spray, so that his clothes were wet.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

343.    He began to experience symptoms, including his eyes and head hurting badly, his eyes watering, and a burning sensation on his face.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

344.    Once off the field, PHI managers said that it was time to leave.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

345.    Defendant PHI provided no way to shower at the field.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

346.    Ramon did not go to the hospital that day, although other Workers did.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

347.    That night, Ramon started to feel very ill.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

348.    Among other things, his heart was racing, his head and eyes hurt, his face was burning, he felt weak, and he felt like he could not get enough air.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

349.    By the next day, Ramon had developed a rash on his forearms, and still felt too ill to go to work.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

350.    He sought treatment at Carle Hospital.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

351.    Ramon received an x-ray and was prescribed an inhaler of albuterol for his respiratory symptoms and triamcinolone for the rash on his forearms.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

352.    Ramon did not receive a letter stating when he could return to work.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

353.    The doctor told Ramon he did not know when Ramon would be ready to return, and that Ramon would need a follow-up appointment for the doctor to make that determination.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

354.    Ramon remained unable to work for several days, and missed at least four days of pay.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

355.     Ramon (along with some others) worked for an additional week after the contract was scheduled to end.

**ANSWER**:     Corteva and Pioneer admit that Ramon Hernandez Jr. and others continued working after August 5, 2019. Any remaining allegations are denied.

356.     On the last day of work, the Workers returned to the motel at night, and FLC Fidencio said they could not spend the final night in the motel, or even take a final shower there before heading back to Texas.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

357.     In all the years Ramon had worked for Defendant PHI, they had always allowed him to sleep in the motel after the last day of work and begin the drive back in the morning.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

358.     That same night, after having worked all day, Alberto Sr. gave Ramon a ride back to Texas with the rest of the Montalvo family.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

359.     After and as the result of the August Event, Ramon continued to experience related physical and emotional effects.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

Alberto Montalvo Sr.

360.     In the spring of 2019, Alberto Sr. contacted FLC Fidencio about working in Illinois for the summer, as he had done the previous year, driving other workers from their lodging to the fields, between fields, and from the fields back to their lodgings.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

361.     On or around May 4, 2019, Alberto Sr. met with the Salinases in Texas, along with his son Alberto Jr., who was 17 years old at the time, to sign employment-related documents.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph..

362.     These documents included a Worker Disclosure and Information Statement that was essentially the same as that which the other Workers had signed, except that the provision for pay at $9.25 per hour was crossed out, and $15.00 per hour was written in.

**ANSWER**:     Corteva and Pioneer admit that Alberto Montalvo Sr.'s Worker Disclosure and Information Statement was revised to indicate he would be paid $15.00 per hour instead of $9.25 per hour. Any remaining allegations are denied.

363.     While Alberto Sr. understood that he would be driving the bus, his Worker Disclosure and Information Statement indicated that he would be detasseling and performing related tasks.

**ANSWER**:     Corteva and Pioneer admit the allegations contained in this Paragraph.

364.     Alberto Sr. drove himself, his wife, Alberto Jr., and two other minor children (not parties) to Illinois, departing from Texas on July 3, 2019 and arriving on July 5, 2019, two days before they were to start work.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

365.     During their time in Illinois, all five members of Alberto Sr.'s family stayed in a single motel room in the Candlewood, which had only two beds.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

366.     The buses got very dirty from the fields, and Alberto Sr. considered it his responsibility to keep the bus clean, but never received cleaning equipment from Defendant PHI.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

367.    He used his personal funds to buy trash bags to clean up the trash people left from their lunches. He also bought his own broom to sweep the bus.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

368.    For the first few weeks of work, Defendant PHI failed to pay him for time spent driving the workers back to their lodging—his "clock" stopped when the other Workers got off the field each day.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

369.    Only after Alberto Sr. and others complained did Defendant PHI start to pay him for this time.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

370.    Alberto Sr. started work before the other Workers, arriving at the bus each day about half an hour earlier to conduct a safety check.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

371.    However, his paychecks did not reflect this work.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

372.    In addition to these omissions, Alberto Sr. was missing two to three hours of pay on about six other occasions in the middle and end of the season.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

373.    On several of these occasions, Alberto Sr. brought the shortfall to FLC Fidencio's attention, who then added some, but not all, of the missing hours to his next checks (*e.g.*, two of three missing hours).

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

374.    However, toward the end of the season, Alberto Sr. did not discuss the missing hours on approximately two of the checks and was never compensated for those hours of work.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

*The July Event*

375.     In the afternoon of July 23, 2019, Alberto Sr. had just taken a group of workers to the last field they were supposed to work that day.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

376.    Alberto Sr. saw a helicopter spraying a field right next to where Workers were working.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

377.    Alberto Sr. started honking the horn of his bus to call the workers off the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

378.    Alberto Sr. used his bus to pick up Workers who had left the field on the opposite side.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

379.    Workers boarded the bus directly, without washing themselves off first.

65

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

380.     Defendant PHI did not provide the Workers with adequate facilities to decontaminate before they got on the bus.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

*The August Event*

381.     In the late afternoon of August 5, 2019, Alberto Sr. saw and heard an airplane that appeared to be passing over the field the Workers were in.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

382.     Alberto Sr. could see that it was spraying a liquid.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

383.     Alberto Sr. went to look for a PHI safety supervisor, but could not find one.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

384.     After a few minutes, multiple PHI safety supervisors appeared and told the drivers to get the workers out, so Alberto Sr. started honking his horn.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

385.     From where he was, off the field, Alberto Sr. could smell pesticides very strongly.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

386.     After and as the result of the August Event, Alberto Sr. experienced reactions including eye irritation, nose irritation, and coughing.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

66

387.  FLC Fidencio told the Workers to shower and wash their clothes once they got back to the motel.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

388.  That evening, Alberto Sr. and Alberto Jr. went to OSF Hospital. They were frightened after seeing people who were extremely ill, and Alberto Jr. was experiencing symptoms, including seeming disoriented.

**ANSWER**:  Upon information and belief, Corteva and Pioneer admit that Alberto Montalvo Sr. and Alberto Montalvo Jr. went to OSF Hospital on August 5, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

389.  At OSF, Alberto Sr. received a diagnosis of errythemidis sclera, redness and inflammation of his eyes. He also received an x-ray.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

390.  The doctor gave him a letter stating he could return to work the next day.

**ANSWER**:  Upon information and belief, Corteva and Pioneer admit the allegations contained in this Paragraph.

391.  Alberto Sr. and his family returned to Texas about one week after the contract was supposed to end.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

392.  After and as the result of the August Event, Alberto Sr. continued to experience related symptoms.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

Alberto Montalvo Jr.

67

393.     In the spring of 2019, Alberto Jr.'s father, Alberto Sr., contacted FLC Fidencio about working in Illinois for the summer, as he had done the previous year.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

394.     Alberto Jr. went along with Alberto Sr. to sign their work-related documents in Texas.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

395.     Alberto Jr. traveled to Illinois with Alberto Sr., as well as his mother and two siblings (not parties), departing from Texas on July 3, 2019 and arriving on July 5, 2019, two days before they were to start work.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

396.     During their time in Illinois, all five members of Alberto Jr.'s family stayed in a single motel room in the Candlewood.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

397.     During the middle of the summer, about five of Alberto Jr.'s checks were short about five hours each.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

398.     On several occasions, he pointed out the shortfall to FLC Fidencio, who would add some, but not all, of the shortfall to his next check.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

399.     However, toward the end of the season, Alberto Jr. did not discuss the missing hours on approximately two of the checks and was never compensated for those hours of work.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

*The July Event*

400.    In the afternoon of July 23, 2019, Alberto Jr. was working in a field when he saw a helicopter pass over him.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

401.    Alberto Jr. heard people start yelling.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

402.    Moments later, he heard buses honking their horns, which he knew meant the workers should get off the field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

403.    He did so, but left on the side opposite to where the buses were.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

404.    In that area, PHI provided no facilities for washing up, and he had to wait there until the buses came to pick him up, along with other Workers who had left the same way.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

405.    The bus ride back to the motel took about 45 minutes, and he was not able to shower until he got back to his room.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The August Event*

406.    On August 5, 2019, Alberto Jr. was working in a row by himself when he saw a plane passing overhead.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

407.    Alberto Jr. smelled a strong chemical odor, and he ran off the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

408.    After other Workers came off the field, PHI managers were trying to determine who had been hit by spray, and Alberto Jr. let them know he may have been hit by spray.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

409.    PHI provided no shower, just a small hose that the Workers would use to wash their hands.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

410.    He could not take all of his clothes off because there was no privacy, so he took off only his shirt, leaving his pants, socks and shoes on.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

411.    He washed his upper body with cold water and dish soap.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

412.    Alberto Jr. then saw that Workers were returning to the field and understood that a PHI Safety Manager had ordered the Workers to return.

**ANSWER**:    Corteva and Pioneer deny that a PHI Safety Manager ordered the workers to return to the field. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

413.    However, Alberto Jr. did not go back into the field after he finished washing up.

70

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

414.    Alberto Sr. told Alberto Jr. to sit on the bus, and he did.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

415.    Alberto Jr. started experiencing symptoms, including a bad headache.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

416.    Defendant PHI provided no blanket or towel after he has washed down with a hose, so he remained cold and wet during the entire trip back to the motel.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

417.    Once they arrived back at the motel, Alberto Jr. and his father felt scared about what had happened, and decided to go to OSF Hospital.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit that Alberto Montalvo Sr. and Alberto Montalvo Jr. went to OSF Hospital on August 5, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

418.    Alberto Jr. was experiencing a range of symptoms, including headache and nausea, and he felt dizzy, light-headed and confused.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

419.    Alberto Jr. received chest x-rays and Meclizine, a medication for the nausea and dizziness.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

420.    A doctor gave him a letter stating he could return to work the next day.

**ANSWER**:  Upon information and belief, Corteva and Pioneer admit the allegations contained in this Paragraph.

421.  However, the next day, Alberto Jr. felt too sick to work, so he stayed at the motel.

He was not paid for that day.

**ANSWER**:  Upon information and belief, Corteva and Pioneer admit that Alberto Montalvo Jr. did not work on August 6, 2019 and therefore was not paid for that day. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

422.  After and as the result of the August Event, Alberto Jr. continued to experience

related symptoms.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

423.  He and his family returned to Texas about a week after the contract ended.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

Consuelo Diana Perez, Adrian Perez, and A.P.

424.  Around June of 2019, as she had done in the past, Consuelo contacted FLC

Arminda, saying she and her family needed work for the upcoming summer.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

425.  Consuelo had to miss an appointment to register, and when she called to reschedule,

she learned that no more openings remained.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

426.  Consuelo managed to secure another job in Indiana, where she traveled with her

children, Adrian (then 17 years old) and A.P. (then 15 years old) and three non-party family

members.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

427.    On July 7, 2019, when they arrived in Indiana, Consuelo learned that Adrian and A.P. would not be permitted to work, so she called FLC Arminda again to see if any jobs had opened.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

428.    FLC Arminda told her that there was work for Consuelo, Adrian, and A.P., so Consuelo drove with her family to Illinois the next day.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

429.    On or around July 7, 2019, in Illinois, Consuelo signed employment related documents on behalf of herself as well as Adrian and A.P., including Worker Disclosure and Information Statements.

**ANSWER**:    Corteva and Pioneer admit that there is a signed Worker Disclosure and Information Statement for Consuelo Diana Perez dated July 9, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

430.    Consuelo, A.P., and another family member stayed in one room of the Woodspring, and Adrian stayed in another room with other family members.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

431.    During the course of the summer, Consuelo, Adrian and A.P. each occasionally noticed that their checks were short some hours of pay.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

432.    Each of them had this occur on approximately two separate occasions.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

433.   Each time this occurred, they pointed out the shortfalls to FLC Arminda, who added the missing hours to the next week's check.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The August Event*

434.   On August 5, 2019, Consuelo, Adrian and A.P. were all working in a field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

435.   A.P. had just finished her row and was waiting for Consuelo to come out when a PHI manager warned her that there was a plane overhead.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

436.   She called Consuelo to get out of the field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

437.   Consuelo ran out of the field and caught up to A.P.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

438.   Adrian saw the plane but did not realize what was happening, and he finished working through his row.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

439.   When he came off the field, one of the workers known as "pushers," whose job it was to manage workers in the rows, let him know that some workers were going back to the buses, but he should wait to see if he should go back in or not, so he waited there.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

440.   Consuelo and A.P., meanwhile, were on their way back to the bus.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

441.   As they walked toward the bus, A.P. heard a PHI manager tell FLC Arminda to put the workers back into the field.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

442.   Consuelo, who has asthma, was experiencing symptoms, including having trouble breathing. She was afraid, because her asthma is usually controlled.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

443.   Consuelo and A.P. boarded the bus.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

444.   A PHI manager came onto the bus and asked people if they felt ill.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

445.   Consuelo said she did, and the manager told her to rinse off with water.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

445.   Consuelo got off the bus to wash up, and A.P. went with her.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

447.   A.P. did not want to go back into the field without Consuelo, so she walked with her to where the water was.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

448.    On the way, A.P. and Consuelo saw Adrian near a row.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

449.    The pusher had told him to go back in, and he was getting ready to do so.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

450.    Consuelo told A.P. to go with her brother.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

451.    Adrian and A.P. returned to the field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

452.    Consuelo did not feel well enough to go with them, but after washing up, she also returned to the field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

453.    After a time, Consuelo heard a girl screaming, and everyone was called off the field again.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

454.    Adrian and A.P. both exited the field on the side opposite to where the buses were.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

455.    After they emerged on that side, however, they heard a worker speaking by two-way radio to FLC Fidencio.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

456.    Adrian and A.P. could hear FLC Fidencio on the worker's two-way radio indicating that PHI management told him to have the Workers go back through the field.

**ANSWER**:     Corteva and Pioneer deny that PHI management told FLC Fidencio to have workers go back through the field. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

457.    The worker asked whether FLC Fidencio was sure, and he again indicated PHI management said they were to go through the field.

**ANSWER**:     Corteva and Pioneer deny that PHI management told FLC Fidencio to have workers go back through the field. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

458.    Adrian and A.P. started returning back through the field, a walk that takes about 15 or 20 minutes.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

459.    A.P. began to feel symptoms including nose, eye, and skin irritation.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

460.    Adrian started to feel symptoms including dizziness and nausea; he started to cough and gag, and he fell.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

461.    Adrian struggled to get out of the field until two other Workers, Luis and Miguel, came to help him get up, and they brought him to a water station.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

462.   When he came out of the field, Adrian continued to experience exposure effects, including red and watering eyes.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

463.   A PHI manager told him to wash his face, giving him some dish soap.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

464.   The first water station he tried did not work, so he went to the other to drink.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

465.   Adrian washed his face with soap and water before getting back on the bus.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

466.   Consuelo, meanwhile, was also experiencing symptoms, including irritation of her nose, throat, skin and eyes, and continued to have difficulty breathing.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

467.   A.P. was also experiencing effects of the event.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

468.   Once on the bus, Adrian felt very ill. His eyes were still red and watering, and he was experiencing additional symptoms, including gagging and feeling faint.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

469.     Consuelo told another worker she was afraid, and that worker, seeing how ill Adrian was, called FLC Fidencio to ask whether they could go to a hospital instead of returning to the motel.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

470.     FLC Fidencio responded that they should just go straight to the motel, and that the healthcare staff of Defendant PHI would come and treat Adrian there.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

471.     FLC Fidencio told them not to call an ambulance.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

472.     When they arrived at the motel, they found that Defendant PHI had no healthcare workers there.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

473.     By this time, Adrian's symptoms included extreme pallor as well as dizziness, gagging, retching and vomiting.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

474.     He also had an open cut on his arm that did not exist before the event.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

475.     Consuelo and A.P. feared Adrian was dying.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

476.    Consuelo called FLC Fidencio and told him they needed to call an ambulance, and he told her to do what was needed.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

477.    A family member called for an ambulance.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

478.    An ambulance arrived, and healthcare workers gave Adrian oxygen.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit that Adrian Perez was taken by ambulance to OSF on August 5, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

479.    Consuelo went with Adrian in the ambulance to OSF.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

480.    After the ambulance took Consuelo and Adrian to OSF, A.P.'s older sister drove A.P. there in Consuelo's car.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

481.    Consuelo, Adrian, and A.P. saw Dylan Haun and FLC Fidencio's son George at OSF.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

482.    Haun berated Consuelo for calling the ambulance.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

483.    Haun told medical staff that the Workers were not injured.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

484.    Health care providers at OSF gave Consuelo, Adrian and A.P. chest x-rays and discharged them.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

485.    After Consuelo, Adrian and A.P. were discharged, they had just arrived back at the motel when FLC Fidencio called Consuelo, and said Haun needed the family to return to the hospital to so that he could examine their discharge papers.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

486.    When Consuelo arrived back at the hospital, Haun was talking to the hospital staff member who had registered her family.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

487.    Consuelo, Adrian and A.P.'s discharge papers did not say when they could return to work.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

488.    Haun stated he wanted to speak to Adrian's doctor, and wanted to know why they had been placed "in workers' comp."

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

489.    Adrian's doctor, Dr. Kole, had gone home, and Haun asked to see a supervisor.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

490.    A nurse then gave Consuelo, Adrian and A.P. return-to-work letters that indicated that Dr. Kole had cleared them all to return to work the next day.

**ANSWER**:    Corteva and Pioneer admit that Consuelo Diana Perez, Adrian Perez, and A.P. received letters dated August 5, 2019 signed by a nurse indicating Dr. Kole cleared them to return to work without restrictions. Any remaining allegations are denied.

491.    However, Adrian continued to be very ill that night, and the next day, his nausea was worsening, among other symptoms, so Consuelo brought him back to OSF.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

492.    Adrian's doctor asked Consuelo why she had allowed Adrian to return to work, saying he should not have been permitted to return.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

493.    Consuelo showed him Adrian's return-to-work letter, which indicated that Adrian should be well enough to work to work that day. (She had not, in fact, allowed him to return to work, as he was far too ill.)

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

494.    Adrian was the only family member to receive treatment on August 6, 2019.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

495.    On August 6, 2020, Dr. Kole ordered bloodwork and an x-ray.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit that Dr. Kole ordered certain lab tests. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

496.    Adrian also received prescription anti-nausea medication that day.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

497.    On August 6, 2019, the doctor gave Adrian a letter indicating he should be off work from August 6, 2019 through August 8, 2019, and that he could return to work on August 9, 2019.

**ANSWER**:  Upon information and belief, Corteva and Pioneer admit the allegations contained in this Paragraph.

498.  After about a week Adrian tried to return to work, but found he was too ill to work due to symptoms related to the August Event, particularly from gagging and nausea he continued to experience.

**ANSWER**:  Corteva and Pioneer admit that Adrian Perez returned to work on or about August 11, 2019 and deny the remaining allegations contained in this Paragraph.

499.  Consuelo missed about four days of work, both because she herself did not feel well enough to return, and because she needed to take care of Adrian.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

500.  Consuelo worked a total of about one more week after the August Event, to the end of the season, before the family returned to Texas.

**ANSWER**:  Corteva and Pioneer admit that Consuelo Diana Perez returned to work on or about August 8, 2019 through the end of the season. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

501.  After and as the result of the August Event, Consuelo, Adrian, and A.P. continued to experience related physical and emotional effects.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

Liliana Rodriguez, E.R., Patricia Rodriguez, V.A., and Vanessa Guzman

502.  In spring of 2019, Liliana learned of an employment opportunity in Illinois that summer.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

503.     Liliana drove to Illinois with her two daughters, E.R. (then 15 years old) and Patricia (then 16 years old); her nephew, V.A. (then 15 years old); and her niece, Vanessa (then 17 years old), in Liliana's car.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

504.     Liliana spoke to FLC Fidencio in Texas and received documents there, but on or around July 11, 2019, after the family had arrived in Illinois, Liliana signed new employment-related documents on behalf of herself and her minor family members, and received Written Disclosure and Information Sheets.

**ANSWER**:     Corteva and Pioneer admit that there is a signed Worker Disclosure and Information Statements for Liliana Rodriguez dated July 13, 2019, and disclosures for E.R., V.A., and  Patricia Rodriguez dated July 11, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

505.     Liliana's Written Disclosure and Information Sheet was in English.

**ANSWER**:     Corteva and Pioneer admit that the signed Worker Disclosure and Information Statement for Liliana Rodriguez dated July 13, 2019 is in English. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

506.     The Written Disclosure and Information Sheets Liliana received on behalf of her minor family members were also in English only.

**ANSWER**:     Corteva and Pioneer admit that the signed Worker Disclosure and Information Statements for E.R., V.A., and Patricia Rodriguez dated July 11, 2019 are in English. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

507.     Liliana does not read or speak English.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

508.     While in Illinois, Liliana, E.R., Patricia, V.A., and Vanessa stayed together in a single motel room, which had two beds. Usually Liliana and the girls slept in the beds and V.A. slept on the floor.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

509.     On two occasions Patricia's checks did not reflect all the hours she worked. The first time, around the middle or end of July, she was missing four hours, and the second time, around the middle of August, she was missing about three hours.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

510.     Liliana spoke to FLC Fidencio about the missing hours, but he refused to pay her for those hours.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The July Event*

511.      In the afternoon of July 23, 2019, Liliana, E.R., Patricia, V.A. and Vanessa were all working in a field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

512.     Liliana and Patricia were working not far from each other.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

513.     Liliana went to take a bathroom break in a portable toilet just outside the field, not far from where she was working.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

514.    She noticed a helicopter nearby, but did not think there was any danger, because they were so visible in their orange hats.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

515.    After Liliana left, Patricia saw the helicopter fly overhead again and smelled a strong, bad odor.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

516.    Patricia ran off the field to the portable toilets where Liliana was and started knocking on the door, to tell her to come out so they could get on the bus.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

517.    When Liliana came out of the portable toilet, they both could see the helicopter spraying.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

518.    Liliana and Patricia felt the spray hitting their faces.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

519.    Liliana could feel her mouth and lips becoming numb.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

520.    Liliana, Patricia, and the other Workers who had already gotten out of the field took their neon orange hats and were waiving them at the helicopter to signal that people were still in the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

521.    E.R. and Vanessa had entered the field slightly later than their family members, and

had just started working on their row when they heard the buses' horns honking, which they knew

meant to get out of the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

522.    Vanessa felt a mist hit her.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

523.    She and E.R. ran. She looked for other family members but could not find them.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

524.    Vanessa could feel her face began to sting.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

525.    V.A. also saw the helicopter pass overhead, and felt a spray mist hitting his arms,

where he had rolled up his sleeves.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

526.    V.A. immediately ran off the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

527.    They could smell an extremely strong, bad smell, which caused symptoms

including bad headache and nausea.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

528.    After Liliana, Patricia, E.R. and Vanessa left the field, they all got directly on the

bus.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

87

529.     Defendant PHI did not provide adequate facilities to decontaminate before they got on the bus.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

530.     People were saying the spray had been pesticides, and Vanessa ran off the bus again to find a way to wash her face and hands. She only rinsed with water because there was no soap.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

531.     Her skin felt irritated, so she took off her outer shirt, but she could not take off the rest of her clothes because there was no privacy.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

532.     There was nothing else she could do for relief.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

533.     V.A. was able to wash his face and hands, and he took off the outer layer of his clothing before boarding the bus.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

534.      Someone told Liliana to take a bottle of water that was on the bus and use it to rinse her mouth and lips, which she did. She also took off her outer shirt.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

535.     Otherwise, she was not able to rinse off at that time.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

536.     Patricia also used some drinking water from a water bottle to rinse her face and hands on the bus.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

537.    During the bus ride bus ride back to the motel, E.R.'s nose started bleeding.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

538.    After the July Event, Liliana experienced related symptoms including numbness of her face, bad headache, eye irritation, and nausea.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

539.    Patricia also experienced related symptoms, including numbness of her mouth and tongue, bad headache, dizziness, and nausea.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

540.    Vanessa also experienced related symptoms, including skin irritation.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

541.    V.A. also experienced related symptoms, including eye irritation and chest tightness.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

542.    Vanessa, V.A. and other family members took turns showering after they returned to the motel.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

543.    They washed everything they had worn that day.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

544. Patricia tried to eat but vomited.

**ANSWER**: Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

545. The next morning, E.R. also vomited and could not eat.

**ANSWER**: Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

546. No one in the family felt well enough to work.

**ANSWER**: Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

547. E.R. nonetheless did go to work that day, but the rest of the family did not.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

548. Liliana told FLC Fidencio they could not work, which angered him.

**ANSWER**: Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

549. After and as a result of the July Event, Liliana, E.R., Patricia, V.A. and Vanessa all felt continuing physical and emotional effects.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

550. In the days following the July Event, Liliana's symptoms included skin irritation and blisters filled with clear fluid.

**ANSWER**: Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

551. Liliana's arms looked like they had suffered burns.

**ANSWER**: Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

552. Over the following two weeks the condition worsened and became more painful.

**ANSWER**: Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

553.    Very soon after the July Event, Vanessa started to experience very bad migraines and nausea.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

554.    Over the weeks following the July Event, V.A.'s eye irritation and chest tightness continued with such severity that he could not work or sleep.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

555.    The family's illness caused them to miss a lot of work in the weeks following the July Event.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

556.    Liliana sought treatment for the family during this time, calling local clinics, but they either did not have available appointments, did not treat eye conditions, or did not speak Spanish.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

557.    On or around August 8, 2019, Liliana contacted Dylan Haun, PHI's Safety Supervisor, by calling him from the motel.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

558.    Vanessa interpreted Spanish to English for Liliana.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

559.    Liliana told Haun that V.A. and other family members were ill, and he responded by telling her that he did not care what happened to them, and then hung up.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

560.     Shortly after that, Liliana and V.A. saw another PHI manager in the lobby, and asked him for help.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

561.     That PHI manager did not help them either.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

562.     On August 8, 2019, Liliana took V.A. to the emergency room at Carle Hospital so that his eyes could be treated.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

563.     V.A. received a diagnosis of bacterial conjunctivitis and a prescription for erythromycin.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

564.     The doctors gave V.A. a letter stating he could return to work August 11, 2019.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

565.     On August 10, 2019, FLC Fidencio was angry and abusive toward Liliana, saying her family members were not working enough, and he told them to leave immediately.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

566.     Liliana then left Illinois with her family to return to Texas.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

567.    On August 16, 2019, V.A. saw a doctor at Edinburg Vision Center in Edinburg, Texas, who examined V.A. and diagnosed him with acute atopic conjunctivitis in both eyes, for which he prescribed neomycin; and anterior uveitis in both eyes, for which he prescribed cyclopentolate.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

568.    V.A. did not have a history of these conditions.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

569.    After and as the result of the July Event, Liliana, E.P., Patricia, V.A., and Vanessa continued to experience related physical and emotional effects.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

Gilbert Sanchez Jr.

570.    In the spring or early summer of 2019, Gilbert learned about a job opportunity in Illinois that summer.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

571.    He spoke to FLC Fidencio on the phone and Fidencio sent him his Worker Disclosure and Information Statement.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

572.    The Worker Disclosure and Information Statement provided that he was to receive a stipend of $120 upon arrival.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

573.    Gilbert took a public bus from Texas to Illinois.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

574.    Gilbert did not receive his $120 stipend upon arrival (or at any time).

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

575.    In Illinois, Gilbert shared a room with his friends, Miguel and Luis, and one other man they did not know.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

576.    The Salinases required that they stay four to a room, and were therefore forced to stay with a stranger.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

577.    Gilbert paid FLC Fidencio in cash for the motel.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

578.    Gilbert noticed that about two of his checks were missing hours, which he never recovered.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

*The July Event*

579.    In the afternoon of July 23, 2019, Gilbert had been working in a field when he saw a helicopter and could see spray falling from it.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

580.    He was not able to shower until he returned to the motel.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The August Event*

581.    In the afternoon of August 5, 2019, Gilbert was working in one of PHI's fields when suddenly a plane passed overhead, spraying pesticides.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

582.    The pesticide spray hit his body.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

583.    Gilbert ran off the field and reported what happened to several managers.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

584.    Gilbert told them that he had been hit by a lot of pesticides, and they told him to wash up with soap and water.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

585.    Gilbert was able to wash his face, arms, and torso, but he did not shower completely. He had to keep his pants on because there was no privacy.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

586.    After washing off, he boarded the bus.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

587.    FLC Arminda boarded the bus and told the workers to return to the field. Gilbert did not return to the field, and instead remained on the bus.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

588.    After and as the result of the August Event, Gilbert experienced a range of symptoms.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

589.     Among other things, he felt dizzy and exhausted, and was spitting up blood. He vomited several times, and his face was swollen and itchy.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

590.     The next day, Gilbert could not work and still felt ill and very nauseated, and he decided to go to Carle Hospital.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

591.      His roommate, Luis Sifuentes, was also very ill, so Gilbert took him along.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

592.     At the hospital, medical staff took an x-ray, finding "small nodular densities," and administered a blood test.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

593.     Gilbert's blood test indicated an abnormality, low creatinine, and the doctor told him to drink a lot of water to address this problem, which can be caused by water loss.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

594.     The   doctor   treating   Gilbert   prescribed   azithromycin,   Benadryl,   and diphenhydramine.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

595.     After and as the result of the August Event, Gilbert continued to experience related symptoms.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

Luis Alonzo Sifuentes and Miguel Sifuentes

596.   In spring of 2019, Luis and Miguel learned of an opportunity to work in Illinois that summer.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

597.   They called FLC Fidencio, who told Luis and Miguel to come to the Salinas home in Texas, where they discussed the position with FLC Arminda and signed employment-related documents.

**ANSWER**:   Corteva and Pioneer admit that there are signed Worker Disclosure and Information Statements for Luis Sifuentes and Miguel Sifuentes dated May 15, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

598.   Luis and Miguel left for Illinois around the first week of July, carpooling with another worker in that worker's pickup truck.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

599.   When they arrived in Illinois, they met FLC Fidencio, who showed them to their lodging at WoodSpring.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

600.   They shared a single room with their friend, Gilbert, and one other worker they did not know. Since there were only two beds in the room, two workers slept on the floor each night.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

601.   Luis's checks were nearly always short one or two hours per day he worked, which added up to about eight to ten hours per week.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

602.    Miguel's checks were nearly always short one or two hours per day he worked, which added up to about eight to ten hours per week.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

*The July Event*

603.    On July 23, 2019, in the afternoon, Luis and Miguel were both at work in a field when a helicopter came by, lowered, and sprayed.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

604.    Luis and Miguel could see a substance falling from the helicopter, and they could feel a mist hitting them.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

605.    They ran off the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

606.    Defendant PHI did not provide Luis and Miguel with adequate facilities to decontaminate before they got on the bus, and neither of them did so.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

607.    Neither Luis nor Miguel were able to shower until they returned to the motel.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

608.    After and as the result of this event, both Luis and Miguel experienced related physical and emotional effects.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

*The August Event*

98

609.    On August 5, 2019, also in the afternoon, Luis and Miguel were both working in

one of Defendant PHI's fields.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

610.    Luis and Miguel both saw an airplane spraying overhead.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

611.    They were both sprayed so thoroughly that their clothes felt wet. The substance had

a strong smell.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

612.    When they realized what was happening, they ran off the field as quickly as they

could.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

613.    After some time, FLC Fidencio told them to go back to work, so Luis and Miguel

went back into the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

614.    Luis's clothes were still wet, and the smell was extremely strong.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

615.    Miguel started feeling sick after returning to the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

616.    Luis and Miguel saw the plane return and fly over the buses.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

617.   When they heard the buses' horns honking, they again ran off the field.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

618.   Luis and Miguel both exited the field on the side opposite to where the busses were.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

619.   When they emerged on that side, the pushers directed them to walk back through the field to get to the side where the buses were.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

620.   Luis and Miguel saw Adrian Perez coughing and gagging, and then fall, so they helped him get up and out of the field.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

621.   While they were off the field, they were preoccupied with trying to help Adrian.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

622.   Defendant PHI did not provide Luis and Miguel with adequate facilities to decontaminate, or even direct or instruct them to rinse off in any way, and they did not do so.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

623.   PHI did not provide them with any medical attention at the field or offer to transport them to a health facility.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

624.   After trying to help Adrian, they left him with his family and the FLCs.

100

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

625.     Miguel started to experience symptoms including dizziness and fatigue, and needed to sit down.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

626.     Luis and Miguel both boarded the bus to go back to the motel.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

627.     After arriving back at the motel, Luis and Miguel continued to try to help Adrian and his family until an ambulance came.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

628.     Luis and Miguel gave Adrian water and milk to drink so that he would throw up the poison he had ingested.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

629.     Adrian did throw up.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

630.     After the ambulance came to bring Adrian to the hospital, Luis and Miguel showered and changed their clothes.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

631.     By that time, about three hours had passed since they had been sprayed.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

101

3:20-cv-03322-SEM-TSH  # 45   Page 102 of 190

632.    Luis was experiencing a range of symptoms, including a bad sore throat, and he also started vomiting and suffering from diarrhea about every 20 minutes.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

633.    Miguel was also feeling extremely ill, with a range of symptoms including exhaustion, chest pain, stomach pain, headache, and diarrhea. He felt weak and faint.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

634.    Miguel did not go to the hospital, because he understood that Defendant PHI was only bringing the most severely ill people to the hospital, and he worried that he could not afford to pay the bill.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

635.    The next day, Luis was still experiencing symptoms including a sore throat and headache, and he had developed a rash on his wrists. He was also still suffering from diarrhea every hour.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

636.    Luis could not work that day.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit that Luis Sifuentes did not work on August 6, 2019 and deny the remaining allegations contained in this Paragraph.

637.    Gilbert had a car, so Luis went with Gilbert to Carle Hospital.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

638.    Luis told the doctor about the exposure that had occurred the day before.

**ANSWER**:       Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

639.    Because staff at Carle had been there the day before when other Workers had reported being sprayed, the doctor treating Luis was able to tell him the pesticides that had been used.

**ANSWER**:       Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

640.    The doctor stated that Luis's symptoms were very likely due to exposure to those pesticides.

**ANSWER**:       Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

641.    The doctor prescribed Luis Ioperamide for diarrhea and Triancinolene for his rash.

**ANSWER**:       Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

642    The doctor told Luis to go home and rest, and he received a letter stating he should not work for one week, so he did not.

**ANSWER**:       Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

643.    He received no pay for the days of work that he missed.

**ANSWER**:       Corteva and Pioneer admit the allegations contained in this Paragraph.

644.     After and as the result of the August Event, Luis continued to feel ill.

**ANSWER**:       Corteva and Pioneer deny the allegations contained in this Paragraph.

645.    Luis continued to take his prescribed medications after the August Event, as his symptoms continued.

**ANSWER**:       Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

103

646.    Some symptoms continued even after Luis completed his course of medications.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

647.    After and as the result of the August Event, Miguel also continued to feel ill.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

648.    Miguel did not miss any days of work after the August event, but on one day was so ill that he spoke to a PHI safety manager on site, who told him he could rest for a while on the bus.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

649.    After and as the result of the August Event, Miguel continued to experience related physical and emotional effects.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

Ediel Tanguma Trevino

650.    In May 2019, FLC Fidencio recruited Ediel to do detasseling work for Defendant PHI.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

651.    Ediel met FLC Fidencio at the Salinases' home in Alto Bonito, Texas, and signed employment-related documents there.

**ANSWER**:    Corteva and Pioneer admit that there is a signed Worker Disclosure and Information Statement for Ediel Tanguma dated May 11, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

652.    Ediel's Worker Disclosure and Information Statement indicated that he would be detasseling and performing related tasks.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

653.    On July 3, 2019, Ediel drove one of FLC Fidencio's SUVs to Illinois, taking three other workers with him.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

654.    While in Illinois, Ediel and two other men stayed in a room with two beds. He and the two other workers took turns sleeping on the beds and sleeping on an air mattress they had purchased.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

655.    For the first few weeks of his employment, FLC Fidencio had Ediel haul the portable toilets in the same SUV he had driven from Texas from field to field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

656.    On one occasion Ediel noticed that pay for several hours were missing from his paycheck; he notified FLC Fidencio, who added pay for those hours to his next check.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The August Event*

657.    In the afternoon of August 5, 2019, Ediel was working in a field detasseling corn.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

658.    As he was working, Ediel saw an airplane pass over him, spraying, and heard other workers start screaming.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

659.    Ediel's clothes were wet from the spray.

**ANSWER**:      Corteva and Pioneer deny the allegations contained in this Paragraph.

660.    Ediel ran out of the field.

**ANSWER**:      Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

661.    FLC Fidencio was nearby to where Ediel came off the field.

**ANSWER**:      Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

662.    FLC Fidencio told Ediel that the spray was nothing bad.

**ANSWER**:      Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

663.    After about 15 minutes, Ediel heard FLC Arminda tell FLC Fidencio by two-way radio that a "safety" had told her to tell the Workers to go back into the field.

**ANSWER**:      Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

664.    FLC Fidencio told Ediel and the other Workers to go back into the field to work.

**ANSWER**:      Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

665.    Ediel returned to the field to work.

**ANSWER**:      Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

666.    While in the middle of a row working, Ediel heard screaming again. He was confused, so he again left the field.

**ANSWER**:      Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

667.    The plane came back, and was flying low.

**ANSWER**:      Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

668.   Ediel smelled an odd smell, and as he was running out, Ediel's eyes hurt very badly, and he could barely see.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

669.   Once he got out, Ediel waited with other Workers to receive soap to wash with.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

670.   A safety gave him soap and told him to wash his arms.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

671.   Ediel washed his face, arms, and hands.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

672.   Ediel's eyes were red. He felt blinded, and his mouth felt so numb that he could not talk.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

673.   Ediel also experienced a range of other symptoms after and as the result of the August Event, including irritation of his skin, which hurt and stung.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

674.   After the bus ride back to their motel, Ediel washed up.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

675.   While other Workers went to the hospital that evening, Ediel did not go, because he had no transportation, and he feared he would lose his job if he went.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

107

676.    Among other symptoms, Ediel could still barely talk. His skin felt cold and his eyes still appeared very red.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

677.    Ediel felt too ill to work the next day, but did not miss any days of work after that. He was not paid for his one sick day.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit that Ediel Tanguma Trevino did not work on August 6, 2019 and therefore was not paid for that date, but worked from August 7, 2019 through the end of the season. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

678.    After and as the result of the August Event, Ediel continued to experience related physical and emotional effects.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

Judith Valdez and S.V.

679.    In the spring of 2019, Judith learned about an opportunity to work in Illinois that summer, and contacted FLC Fidencio.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

680.    On or around May 9, 2019, she and her then 15-year-old daughter, S.V., met with FLC Fidencio in Texas to sign employment-related documents.

**ANSWER**:    Corteva and Pioneer admit that there is a signed Worker Disclosure and Information Statement for Judith Valdez and S.V. dated May 9, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

681.    Judith also signed on behalf of her daughter, S.V.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit the allegations contained in this Paragraph.

682.    Around the first week of July 2019, Judith and S.V. made the trip to Illinois together by car.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

683.    During their time in Illinois, Judith and S.V. lived in a single motel room.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

684.    On several occasions, Judith noticed that their checks were short some hours of pay.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

685.    When she pointed out the shortfalls to FLC Fidencio, he added the missing hours to their checks for the following week.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The July Event*

686.    In the afternoon of July 23, 2019, Judith and S.V. were about to enter a field to work when they saw a helicopter that was spraying pesticides on another field nearby.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

687.    S.V. saw the helicopter fly over the field they were about to enter, and heard the bus drivers honking their horns to notify workers to leave the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

688.    S.V. and her mother tried to tell the other workers to get out of the field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

689.     S.V. saw spray coming out of the helicopter.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

690.     After this incident, no one told them to wash off or seek medical attention.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

691.     They simply boarded the buses and returned to the motel.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The August Event*

692.     In the afternoon of August 5, 2019, Judith and S.V. were working in a field when S.V. saw a plane and called out to her mother.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

693.     They both saw the plane flying low and watched as it passed overhead.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

694.     Judith and S.V. both saw spray coming from the plane.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

695.     As they ran out, Judith felt liquid make contact with her face and neck, and smelled a strong smell.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

696.     S.V. also felt a mist hitting her, mostly on her face and neck.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

110

697.   They both fled the field as quickly as possible.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

698.   Judith started to feel odd and sick.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

699.   After and as the result of the August Event, Judith felt a range of symptoms, including red and burning eyes, numbness of her lips, and dry mouth.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

700.   She also felt her throat closing, making it hard to breathe, and she could not stop blinking, as her eyes felt very dry and they hurt.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

701.   After and as the result of the August Event, S.V. also felt a range of symptoms, including a burning sensation on her lips and face and a rash on her neck.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

702.   They saw FLC Fidencio after they exited the field.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

703.   FLC Fidencio told Judith and S.V. that there was soap and water on the side of the field opposite to the side where they had run off.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

704.   They therefore went back through the field to get to that side, so they could wash off.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

705.    FLC Fidencio crossed through the field that way as well.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

706.    When they reached the other side, PHI managers asked them if they were OK.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

707.    Judith and S.V. waited for FLC Arminda, who had left to retrieve soap, and then rinsed and washed their hair, faces and necks, taking off their outer clothes.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

708.    Around the time Judith and S.V. were washing up, they began to experience additional symptoms, including dizziness.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

709.    When they were finished washing up, FLC Arminda told them to get on the bus.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

710.    As they walked to the bus, Judith saw and heard FLC Fidencio receive a call and say something to the effect of, "You want me to send them back in?"

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

711.    FLC Fidencio then walked ahead of them and told a group of workers to go back in.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

112

712.   Judith and S.V. did not return to the field, instead boarding the bus.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

713.   Defendant PHI provided them with no medical assistance of any kind at the site.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

714.   When they got back to the motel, Judith and S.V. took turns showering.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

715.   Both were experiencing a range of symptoms, including nausea.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

716.   Both of them vomited.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

717.   Judith was afraid for herself and S.V., so Judith decided they should both go to the hospital.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

718.   Judith did not feel well enough to drive, so another worker drove them to OSF.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

719.   Medical staff examined Judith and performed an x-ray.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

720.   By this time, S.V.'s eyes were red and inflamed, and she was still experiencing other symptoms, including nausea and dizziness.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

721.     Staff at OSF gave Judith and S.V. an x-ray and eye wash.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

722.     While at OSF, Judith saw a manager of PHI (on information and belief, Dylan Haun), arguing with a nurse, saying that the hospital had failed to provide return-to-work letters to the Workers.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

723.     This PHI manager stated there was nothing wrong with Judith and S.V.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

724.     Hospital staff then gave them letters stating they could go back to work the next day.

**ANSWER**:     Upon information and belief, Corteva and Pioneer admit that a hospital nurse signed letters dated August 5, 2019 indicating that Judith Valdez and S.V. could return to work without restrictions the following day. Any remaining allegations are denied.

725.     Judith and S.V. both felt ill the next day, but they went back to work anyway.

**ANSWER**:     Upon information and belief, Corteva and Pioneer admit that Judith and S.V. worked on August 6, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

726.     After and as the result of the August Event, Judith and S.V. continued to experience related physical and emotional effects.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

Jesus Javier Zuniga Silva; Yadira Zuniga; Ja.Z.; Jesus Javier Zuniga, Jr.; Jose E. Zuniga; Jennifer Zuniga; the Hernandez Children; Maria Abigail Zuniga; and the Casarez Children

727.  For over a decade before 2019, Jesus Javier Sr. and various members of his family had worked for Defendant PHI.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

728.  In about June of 2019, Jesus Javier Sr. contacted FLC Fidencio, who promised work for Jesus Javier Sr. and his family that summer.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

729.  On or around June 13, 2019, Jesus Javier Sr. signed a Worker Disclosure and Information Statement, which was in English.

**ANSWER**:  Corteva and Pioneer admit that there is a signed Worker Disclosure and Information Statement in English for Jesus Javier Zuniga dated June 13, 2019. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

730.  Jesus Javier Sr. speaks and reads very little English.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

731.  The Worker Disclosure and Information Statement stated he would be earning $9.25 per hour.

**ANSWER**:  Corteva and Pioneer admit that the June 13, 2019 Worker Disclosure and Information Statement indicates a rate of $9.25 per hour. Any remaining allegations are denied.

732.  Jesus Javier Sr. drove to Illinois in his truck, along with his wife Yadira; his son, Jesus Jr.; his daughters, Jennifer and Maria Abigail; his nephew, Jose E.; two other minor children (not parties); Jennifer's partner (not a party), Jennifer's three children, the Hernandez Children; and Maria Abigail's two children, the Casarez Children.

**ANSWER**:  Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

733.    When Jesus Javier Sr. arrived in Illinois, he signed a second Worker Disclosure and

Information Statement, which provided a rate of pay of $13 per hour.

**ANSWER**:    Corteva and Pioneer admit that there is a signed Worker Disclosure and Information
Statement in English for Jesus Javier Zuniga Silva dated July 15, 2019, which
indicates a rate of $13.00 per hour. Corteva and Pioneer lack knowledge or
information sufficient to form a belief about the truth of the remaining allegations
contained in this Paragraph.

734.    While in Illinois that summer, Jesus Javier Sr. lived in a WoodSpring motel room

with Yadira; Jesus Jr.; Jose E.; and his two other minor children.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

735.    While in Illinois that summer, Jennifer stayed in a WoodSpring motel room with

her partner (not a party); her children, the Hernandez Children; her sister, Maria Abigail; and Maria

Abigail's children, the Casarez Children.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

736.    During the day, while their families were at work, the Children generally went to a

daycare center that Defendant PHI provided for the Workers.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

737.    Before work each morning, a family member would bring the Children to the

Candlewood to leave them with their babysitter. Sometimes they remained there, and sometimes

they transferred to a daycare facility.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

738.    On several occasions, Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria

Abigail noticed that their checks were short some hours of pay.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

739.   When they pointed out the shortfalls to FLC Fidencio, he generally paid them the

missing wages in the next week's check or with an additional check.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

740.   At the end of the summer, however, Maria Abigail's final check was missing two

full days of work, for which she was never paid.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

741.   Jose E.'s last two checks were also missing about four and three hours, respectively,

for which he was never paid.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

*The July Event*

742.   In the late afternoon of July 23, 2019, Jesus Javier Sr., Yadira, Jesus Jr., Jose E.,

Jennifer, and Maria Abigail were working in a field for Defendant PHI.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

743.   Yadira was about four weeks pregnant with Ja.Z. at that time.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

744.   The Workers saw a helicopter pass overhead, spraying pesticides.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

745.   They ran out of the field and waited at the side of the field.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

117

746.     Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer and Maria Abigail had fled to the side of the field opposite to where the buses were waiting.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

747.     Jesus Javier Sr. went around the field on foot to get his truck from the other side.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

748.     As the others waited for Jesus Javier Sr. to return in the truck, the children's babysitters contacted Maria and Jennifer to ask that the Casarez Children and the Hernandez Children be picked up as soon as possible.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

749.     Therefore, after picking the rest of the family up, Jesus Javier Sr. went directly to the Candlewood and picked up the Children.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

750.     The Hernandez Children were crowded with the family in the back seat of Jesus Javier Sr.'s truck, with Jennifer and Maria Abigail.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

751.     Jennifer had taken off her long-sleeved shirt, but otherwise had the same clothes on as when she was sprayed.

**ANSWER**:     Corteva and Pioneer deny that Jennifer Zuniga was sprayed. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

752.     No manager of Defendant PHI had warned the Workers not to touch other family members before showering and changing all clothing.

118

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

753.    For that reason, the Hernandez Children (the youngest of whom was only three months old) were exposed to the pesticide residue that remained on Jennifer's and other family members' skin, clothing, and protective gear.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

754.    As the family got out of the truck to go inside the motel, Jennifer's son Ad.H. left one of his shoes behind.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

755.    When Jennifer returned to retrieve it, she noticed that the shoe smelled like pesticides.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

756.    After and as the result of the July Event, Jesus Javier Sr., Yadira, Jennifer, and Jesus Jr. all experienced physical and emotional symptoms.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

757.    After and as the result of the July Event, the Hernandez Children also experienced symptoms.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

758.    Three-month-old Al.H. had always had mild eczema, but the day after the July Event, it seemed to have worsened, and she was very irritable.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

759.    Also within a day or two of the July Event, all of the Hernandez Children started experiencing diarrhea.

119

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

760.    Because the Hernandez Children's diarrhea continued, a few days later, Jennifer took them to a local clinic.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

761.    The diarrhea lasted about a week.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

762.    Jennifer had always been able to treat Al.H.'s eczema with over-the-counter cream, which had been effective at clearing up symptoms.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

763.    However, after the July Event, the worsened eczema no longer responded to the over-the-counter cream.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

764.    Jennifer stopped working after the July Event, due the Hernandez Children's illness.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

765.    On July 31, 2019, Yadira sought treatment at Carle Hospital because she continued to experience a range of symptoms, and had also started experiencing vaginal bleeding and abdominal cramping, which made her fear she was miscarrying Ja.Z.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

*The August Event*

120

766.    In the afternoon of August 5, 2019, Jesus Javier Sr. was working in a field, with Jesus Jr. and Jose E. also working nearby.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

767.    Maria Abigail had entered the field with Jesus Javier Sr., Jesus Jr., and Jose E., but left the field to retrieve a forgotten item.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

768.    Yadira also left the field to use one of the portable toilets.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

769.    On her way back, while still a few feet outside the field, Maria Abigail could see that a plane was circling above the field and that it was spraying.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

770.    Maria Abigail called Jesus Javier Sr. to tell him to get the family out of the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

771.    Jesus Javier Sr. told Jose E. to get out quickly because a plane was spraying.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

772.    Jesus Jr. saw the plane and felt liquid spray hitting him.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

773.    They all ran off the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

774.    Jesus Javier Sr., Jesus Jr., and Jose E. left the field and saw other workers washing themselves off.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

775.    Jesus Javier Sr. saw a PHI manager on the phone, and heard him say the Workers could go back into the field.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

776.    Jesus Javier Sr. saw FLC Arminda challenge the PHI manager, asking him if he was sure the Workers could go back in.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

777.    FLC Arminda then told the Workers to return to the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

778.    Jesus Javier Sr., Jesus Jr., and Jose E. returned to the field, and a few minutes later the plane returned again.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

779.    Maria Abigail did not return to the field.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

780.    From where she stood near the field, she saw the plane return and she called Jesus Javier Sr. again to tell him to get the family out.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

781.    Again, they ran out.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

782.    They did not wash themselves off, and no one told them to do so.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

783.    Immediately after and as the result of the August Event, Jesus Javier felt symptoms of illness, including feeling his face going numb and that his throat was closing.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

784.    After and as the result of the August Event, Jesus Jr. also felt immediate symptoms, including dizziness and numbness of his lips.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

785.    When Yadira stepped out of the portable toilet she could smell the ambient pesticides, and as a result, she experienced symptoms, including feeling ill and weak.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

786.    After and as the result of the August Event, Maria Abigail also experienced symptoms, including sore throat, shortness of breath, and headache.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

787.    Jesus Javier Sr., Jesus Jr., Yadira, Maria Abigail, and Jose E. all got into Jesus Javier Sr.'s truck to head back to the motel.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

788.    On the way, Jesus Javier Sr. picked up the Casarez Children from their daycare provider at the Candlewood.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

123

789.    He dropped Yadira off at WoodSpring, because she did not feel well and needed to relieve Jennifer, who had been caring for their small children (her own and Yadira's) all day.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

790.    Around this time, Jose E. had started to experience worsening symptoms, including feeling ill and faint, with an extremely dry mouth and throat.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

791.    Jesus Javier Sr. decided everyone should go to the hospital.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

792.    No manager of Defendant PHI had warned the Children's family members not to touch them before changing all clothing and showering, or allow them near clothing that had been exposed to pesticides.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

793.    For that reason, the Casarez Children were exposed to the chemicals that remained on Maria Abigail and other family members' skin, clothing, and protective gear.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

794.    By the time the family arrived at Carle Hospital, Jose E. was feeling too weak to stand.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

795.    Someone approached with a wheelchair and Jose E. collapsed into it.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

796.    He had trouble remaining conscious while staff tried to register him.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

797.    Hospital staff had all of the family members who were present wait outside in wheelchairs, as the hospital staff did not want them to come in before being decontaminated.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

798.    After about half an hour, hospital staff showed them to a facility where they could shower.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

799.    After the family took showers, the hospital staff provided them with scrubs to wear.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

800.    A healthcare provider screened Jesus Javier, J.J.Z., Jose E., Maria Abigail, and the Casarez Children, and then released them.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

801.    A hospital staff member returned the family's clothing.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

802.    The family received discharge papers stating their clothing was "contaminated" and instructing them to "wash it carefully."

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

803.    That same evening, at around 10:00 p.m., Jose E. tried to eat a bite of food and immediately started vomiting so severely that his aunt, Yadira, called for an ambulance.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

804.    An ambulance took Jose E. to OSF.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

805.    Maria Abigail was also experiencing symptoms, including a severe headache, and her throat was still sore and tight, so she also went to OSF.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

806.    Hospital staff at OSF examined Jose E. and Maria Abigail, and took blood samples and x-rays.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

807.     OSF staff gave Jose E. Zofran, a medication for nausea, and an IV patch, and then discharged him.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

808.    OSF staff gave Maria Abigail acetaminophen and Phenergan, a medication for nausea.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

809.    OSF staff told Jose E. and Maria Abigail to take a day off to rest before returning to work, which they did.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

810.    However, Defendant PHI required them both to attend a meeting about the August

Event the next day.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

811.    Neither was paid for attending this meeting.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

812.    On August 7, 2019, Jesus Javier Sr. drove Jose E. to a pharmacy to fill his

prescription. While in the truck, Jose E. felt like he could not catch his breath.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

813.    In the pharmacy, Jose E. continued to be unable to catch his breath, so Jesus Javier

Sr. called an ambulance.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

814.    Jose E. returned to OSF where he was examined again and released.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

815.    Jose E. did not work again after the August Event, because he continued to be too

ill to do so.

**ANSWER**:    Upon information and belief, Corteva and Pioneer admit that Jose E. Zuniga did
not work for PHI after August 5, 2019 through the remainder of the season but deny
that it was due to pesticide exposure. Corteva and Pioneer lack knowledge or
information sufficient to form a belief about the truth of the remaining allegations
contained in this Paragraph.

816.    Jose E.'s mother came to Illinois to pick him up and bring him back to Texas before

the season ended.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

817.     After and as the result of the August Event, the rest of the family, Jesus Javier Sr.,
Yadira, Jesus Jr., Jennifer, and Maria Abigail continued to experience a range of physical and
emotional effects of the exposure, but did not leave Illinois until the season ended.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

818.      Jesus Javier continued to experience symptoms of illness resulting from the August
Event in the days that followed, and at times felt too exhausted to complete his work.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

819.     A few days after the August Event, Jesus Javier Sr. felt very ill after smelling
something in his truck that smelled like the pesticides.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

820.     Jesus Javier Sr. decided to return to Carle.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

821.     When he told receiving staff that he had no insurance, they asked him to identify
his employer, which he did.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

822.     Shortly thereafter, Dylan Haun arrived at Carle with a translator. He told Jesus
Javier Sr. that no pesticides had been sprayed, and that Defendant PHI would not cover the cost of
the hospital visit.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about
the truth of the allegations contained in this Paragraph.

823.     Fearing an unaffordable bill from the hospital, Jesus Javier Sr. decided to leave
without being examined.

**ANSWER**:   Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

824.   After and as the result of the August Event, Jesus Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail continued to experience related physical and emotional effects.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

## CLAIMS FOR RELIEF

### Count 1: Violations of the AWPA—Violations of the working arrangement through violations of the WPS, claims by all the Workers and the Children against Defendant PHI

825.   The Workers and the Children re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:   Corteva and Pioneer incorporate their previous Answers as though fully set forth herein.

826.   Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:   Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

827.   No agricultural employer "shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any migrant agricultural worker." 29 U.S.C. § 1822(c).

**ANSWER**:   Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

828.   The working arrangement necessarily incorporates requirements imposed by federal, state, or local law upon the parties.

**ANSWER**:   Corteva and PHI deny the allegations contained in this Paragraph.

829.     The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), administered

by the USEPA, governs the use of pesticides in the United States. 7 U.S.C. §§ 136-136y.

**ANSWER**:     Corteva and Pioneer admit the existence of FIFRA but deny plaintiffs are entitled
                to any relief thereunder and deny any violation thereof. Any remaining allegations
                are also denied.

830.     Under the FIFRA, the USEPA created protections for agricultural workers through

pesticide-specific restrictions and label requirements, called the Worker Protection Standards

("WPS"). 40 C.F.R. Part 170.

**ANSWER**:     Corteva and Pioneer admit the existence of the Worker Protection Standards but
                deny plaintiffs are entitled to any relief thereunder and deny any violation thereof.
                Any remaining allegations are also denied.

831.     Defendant PHI constitutes an "agricultural employer" within the meaning of the

WPS.

**ANSWER**:     Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the
                meaning of the WPS. Any remaining allegations are denied.

832.     The Workers' "working arrangement" incorporates the WPS.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

833.     Under the WPS, the agricultural employer must assure that workers receive

required protections. *Id*. §§ 170.7(a); 170.309(a), (b).

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny plaintiffs are entitled
                to any relief thereunder and deny any violation thereof. Any remaining allegations
                are also denied.

834.     The WPS requires agricultural employers to provide sufficient water for washing

and emergency eye flushing, sufficient soap, and single-use towels. *Id*. §§170.150(b),(c); 170.411.

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny plaintiffs are entitled
                to any relief thereunder and deny any violation thereof. Any remaining allegations
                are also denied.

835.    On July 23, 2019, Defendant PHI failed to provide sufficient water for washing and emergency eye flushing, sufficient soap, and single-use towels, to Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Jr., Liliana, E.R., Patricia, V.A., Vanessa, Gilbert, Luis, Miguel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria Abigail, after they were exposed to pesticides.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

836.    The AWPA creates a private right of action for any person aggrieved by a violation. *Id.* § 1854(a).

**ANSWER**:    Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

837.    The above Workers are all persons aggrieved by Defendant PHI's violation of the AWPA.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

838.     The Children were also aggrieved by this failure because it caused them to be exposed to pesticides through contact with their family members.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

839.    On August 5, 2019, Defendant PHI failed to provide sufficient water for washing and emergency eye flushing, sufficient soap, and single-use towels, to Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

840. Alberto Sr., Yadira, Ja.Z., Maria Abigail and the Casarez Children were also aggrieved by this failure because it caused them to be exposed to pesticides through contact with their family members.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

841. The WPS forbids any agricultural employer from allowing or directing any person other than a trained and equipped handler to enter or remain in areas treated with pesticide. *Id.* § 170.110; *see also id.* § 170.407(a).

**ANSWER**: Corteva and Pioneer admit the existence of the WPS but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

842. On August 5, 2019, Defendant PHI directed Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail to return to the just-sprayed field.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

843. The Children were also aggrieved by this failure because it caused them to be exposed to pesticides through contact with their family members.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

844. The WPS also forbids any agricultural employer, after the application of any pesticide on an agricultural establishment, from allowing or directing any worker to enter or remain in the treated area before the restricted-entry interval specified on the pesticide labeling has expired. *Id.* § 170.112(a); *see also id.* § 170.407(a).

**ANSWER**: Corteva and Pioneer admit the existence of the WPS but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

845.    Each of the chemicals involved in the August Event specified restricted entry intervals of 12 hours.

**ANSWER**:    Corteva and Pioneer deny that Pioneer's field or workers were sprayed with chemicals as alleged by Plaintiffs. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

846.    On August 5, 2019, Defendant PHI directed Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail to return to the just-sprayed field before 12 hours, the entry interval specified on the pesticide labeling, had expired.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

847.    The Children were also aggrieved by this action because it caused them to be exposed to pesticides through contact with their family members.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

848.    Where an agricultural employer directs a worker to perform activities in a treated area before expiration of the restricted-entry interval, the employer must ensure the worker is at least 18 years old, provide the worker certain information, ensure the worker's knowledge of the labels and use of proper protective equipment, ensure that that equipment is not taken home, and provide additional decontamination equipment and supplies. *See* 40 C.F.R. § 605.

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

849.    On August 5, 2019, Defendant PHI directed Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail to return to the just-sprayed field before 12 hours, the entry interval specified on the pesticide labeling, had expired, without

complying with any of the duties listed in § 605, including failing to ensure that Adrian, A.P., S.V., Jesus Jr., and Jose E. were at least 18 (they were not), failing to provide proper decontamination equipment and supplies, and failing to ensure protective equipment was not brought home.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

850.    The Children were also aggrieved by this failure because it caused them to be exposed to pesticides through contact with their family members.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

851.    The WPS requires agricultural employers who have "reason to believe" that any worker has been injured by exposure to pesticides, regardless of whether the exposure occurred as the result of "application, splash, spill, drift, or pesticide residues," to provide prompt transportation to an appropriate emergency medical facility. *Id.* § 170.160.

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

852.    On July 23, 2019, Defendant PHI had reason to believe that Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Jr., Liliana, E.R., Patricia, V.A., Vanessa, Gilbert, Luis, Miguel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria Abigail had all been injured by exposure to pesticides, and failed to provide them prompt transportation to an appropriate emergency medical facility.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

853.    The Children were also aggrieved by this failure because it caused them to be exposed to pesticides through contact with their family members.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

854.    On August 5, 2019, Defendant PHI had reason to believe that Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer and Maria Abigail had all been injured by exposure to pesticides, and failed to provide them prompt transportation to an appropriate emergency medical facility.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

855.    Alberto Sr., Ja.Z., and the Casarez Children were also aggrieved by this failure because it caused them to be exposed to pesticides through contact with their family members.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

856.    The WPS requires agricultural employers who have "reason to believe" that any worker has been injured by exposure to pesticides, regardless of whether the exposure occurred as the result of "application, splash, spill, drift, or pesticide residues," to provide the exposed person or medical personnel "any obtainable information" on the product name, registration number, and active ingredients of the products to which the person was exposed, antidote and first aid information, and circumstances of the application and exposure. *Id.*

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

857.    On July 23, 2019, Defendant PHI had reason to believe that Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Jr., Liliana, E.R., Patricia, V.A., Vanessa, Gilbert, Luis, Miguel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer and Maria Abigail had all been injured by exposure to pesticides, but failed to provide them obtainable information, including the name, registration number, and active ingredients of the products to which they were exposed, antidote and first aid information, and circumstances of the application and exposure.

135

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

858.    On August 5, 2019, Defendant PHI had reason to believe that Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Sr., Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail had all been injured by exposure to pesticides, but failed to provide them obtainable information, including the name, registration number, and active ingredients of the products to which they were exposed, antidote and first aid information, and circumstances of the application and exposure.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

859.    The WPS requires agricultural employers to display information about any pesticide that has been applied within the last 30 days, including the product name, active ingredient, time and date of application, and how long entry is restricted. *Id.* § 170.122.

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

860.    On July 23, 2019, Defendant PHI failed to display any information about the pesticides that had been applied.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

861.    On August 5, 2019, Defendant PHI failed to display any information about the pesticides that had been applied.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

862.    The WPS requires agricultural employers to display safety information about any pesticide that has been applied within the last 30 days. *Id.* §§ 170.135; 170.309(h); 170.311.

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

863.    On July 23, 2019, Defendant PHI failed to display any safety information about the pesticides that had been applied.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

864.    On August 5, 2019, Defendant PHI failed to display any safety information about the pesticides that had been applied.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

865.    Each of the above failures constituted a separate violation of the parties' working arrangements and warrants a separate award of damages.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

866.    Defendant PHI violated these terms of the working arrangements without justification.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

867.    Defendant PHI therefore violated the AWPA with respect to each of the Workers and Children. 29 U.S.C. § 1802(2).

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

868.    The Workers and Children have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

### Count 2: Violations of the AWPA—violations of the working arrangement through violations of the FSS, claims by all the Workers against Defendant PHI

869.    The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:    Defendants incorporate their previous Answers as though fully set forth herein.

870.     Defendant PHI constitutes an "agricultural employer" within the meaning of the

AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:     Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the
meaning of the AWPA and deny the remaining allegations contained in this
Paragraph.

871.     No agricultural employer "shall, without justification, violate the terms of any

working arrangement made by that contractor, employer, or association with any migrant

agricultural worker." 29 U.S.C. § 1822(c).

**ANSWER**:     Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are
entitled to any relief thereunder and deny any violation thereof. Any remaining
allegations are also denied.

872.     The working arrangement necessarily incorporates requirements imposed by

federal, state, or local law upon the parties.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

873.     Under the Occupational Safety and Health Act ("OSHA"), the USDOL created

Field Sanitation Standards ("FSS") applicable to any agricultural establishment where 11 or more

employees work in hand-labor field operations. *See* 29 C.F.R. § 1928.110(a).

**ANSWER**:     Corteva and Pioneer admit the existence of the FSS but deny plaintiffs are entitled
to any relief thereunder and deny any violation thereof. Any remaining allegations
are also denied.

874.     Defendant PHI constitutes an "agricultural establishment" within the meaning of

the FSS.

**ANSWER**:     Corteva and Pioneer admit that Pioneer operates an agricultural establishment and
deny the remaining allegations contained in this Paragraph.

875.     The Workers' "working arrangement" incorporates the FSS.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

876.     *Inter alia*, the FSS require that

a. Toilet facilities be maintained in clean and sanitary condition;

b. Handwashing facilities be refilled with potable water as necessary to ensure an adequate supply; and

c. The employer inform employees of the importance of drinking water frequently.

29 C.F.R. § 1928.10(3),(4).

**ANSWER**: Corteva and Pioneer admit the existence of the FSS but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

877. Defendant PHI repeatedly violated these provisions in the following ways:

a. It failed to keep the toilets reasonably clean;

b. It failed to provide sufficient toilet paper and sufficient water for handwashing;

c. It failed to provide adequate drinking water, and instead of informing the employees about the importance of drinking frequently, discouraged them from drinking "too much" water.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

878. Defendant therefore violated the working arrangement, and therefore violated the AWPA, with respect to each of the Workers. 29 U.S.C. § 1802(2).

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

879. The Workers have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 3: Violation of the AWPA—providing false information about terms
and conditions of employment, claims
by all the Workers
against Defendant PHI**

880. The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:    Defendants incorporate their previous Answers as though fully set forth herein.

881.    Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:    Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

882.    No agricultural employer shall "knowingly provide false or misleading information to any migrant agricultural worker concerning . . . conditions . . . of agricultural employment required to be disclosed by subsection (a), (b), (c), or (d)." *Id.* § 1821(f).

**ANSWER**:    Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

883.    Two days after the August Event, on August 7, 2019, Defendant PHI called the Workers together to discuss the August Event.

**ANSWER**:    Corteva and Pioneer admit that Pioneer met with certain workers on or about August 7, 2019 to discuss August 5, 2019 and deny any remaining allegations contained in this Paragraph.

884.    At that time, Defendant PHI, through its agent Dylan Haun, made a number of false claims about the August Event.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

885.    Defendant PHI falsely claimed there was no chemical released over the field where the Workers had been working.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

886.    Defendant PHI falsely denied that the symptoms the Workers had experienced or continued to experience were related to chemical exposure during the August Event.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

887.    Defendant PHI falsely claimed that after a thorough investigation, it had found that no one was sprayed with pesticides.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

888.    Defendant PHI falsely claimed that all of those who had sought medical care were completely released to work with no restrictions and no symptoms.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

889.    Defendant PHI falsely claimed that if anyone sought medical attention, their symptoms were not related to the August Event, and that these non-work-related injuries would not be covered by workers' compensation.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

890.    Each of these claims constituted distinct knowingly false and misleading information about the Workers' conditions of employment, in that three toxic chemicals were known to have been released; the Workers' symptoms were plainly related to that chemical exposure, as medical personnel expressly acknowledged; several Workers' return-to-work letters required one or more days off from work; and the symptoms were work-related.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

891.    Defendant made these false communications to each of the Workers and intended that each of the Workers receive them, whether or not the Worker was present at the August Event or directly heard its August 7, 2019 statements.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

892.    Defendant therefore violated the AWPA with respect to each of the Workers. 29 U.S.C. § 1802(2).

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

141

893.   The Workers have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

### Count 4: Violations of the AWPA—failures to make, keep, and preserve records, claims by all the Workers against Defendant PHI

894.   The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:   Defendants incorporate their previous Answers as though fully set forth herein.

895.   Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:   Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

896.   Under the AWPA, every agricultural employer which employs any migrant agricultural worker shall, with respect to each such worker, make, keep, and preserve records for three years of the following information:

> (A)    the basis on which wages are paid;
>
> (B)    the number of piecework units earned, if paid on a piecework basis;
>
> (C)    the number of hours worked;
>
> (D)    the total pay period earnings;
>
> (E)    the specific sums withheld and the purpose of each sum withheld; and
>
> (F)    the net pay.

29 U.S.C. § 1821(d).

**ANSWER**:   Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

897.    In the months preceding this litigation, each of the Workers requested in writing that Defendant PHI provide the above records, pursuant to a requirement of state law.

**ANSWER**:    Corteva and Pioneer admit that Pioneer received certain letters from Legal Aid Chicago requesting certain records. Corteva and Pioneer deny the allegations contained in this Paragraph to the extent inconsistent with the letters and further deny any remaining allegations contained in this Paragraph.

898.    Defendant PHI failed to produce any records stating the number of hours the Workers worked, their total pay period earnings, the specific sums withheld or their net pay, and represented that it produced the records it had in its possession.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

899.    On information and belief, Defendant PHI has not made, kept, or preserved such records.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

900.    Defendant PHI therefore violated § 1821(d) with respect to each of the Workers.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

901.    The Workers have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

### Count 5: Violations of the AWPA—failures to disclose workers' compensation information required under 29 U.S.C. § 1821(a)(8), claims by all the Workers against Defendant PHI

902.    The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:    Defendants incorporate their previous Answers as though fully set forth herein.

903.    Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

143

**ANSWER**:     Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

904.    Every agricultural employer that employs any migrant agricultural worker shall ascertain and disclose certain information "at the time of the worker's recruitment," including "whether State workers' compensation insurance is provided, and, if so, the name of the State workers' compensation insurance carrier, the name of the policyholder of such insurance, the name and the telephone number of each person who must be notified of an injury or death, and the time period within which such notice must be given." 29 U.S.C. § 1821(a)(8); *see also* 29 C.F.R. § 500.76(b).

**ANSWER**:     Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

905.    Defendant PHI failed to disclose in writing at the time of the Workers' recruitment (1) whether workers' compensation insurance was provided; (2) the name of the carrier; (3) the name of the policyholder; (4) the name and telephone number of each person who must be notified of an injury or death; and (5) the time within which that notice was required to be given.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

906.    Defendant PHI therefore violated each of these five provisions of § 1821(a)(8) with respect to each of the Workers.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

907.    The Workers have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 6: Violations of the AWPA—failures to provide information at the time of recruitment as required under 29 U.S.C. § 1821(a)(1)-(7),**

144

**claims by Plaintiffs Ramon, Consuelo, Adrian, and A.P.,**
**against Defendant PHI**

908.    The above-named Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:    Defendants incorporate their previous Answers as though fully set forth herein.

909.    Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:    Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

910.    Under the AWPA, every agricultural employer that recruits any migrant agricultural worker is required to "ascertain and disclose in writing to each such worker . . . the following information at the time of the worker's recruitment," including (1) the place of employment; (2) the wage rates to be paid; (3) the crops and kinds of activities on which the worker may be employed; (4) the period of employment; (5) the transportation, housing, and any other employee benefit to be provided, if any, and any costs to be charged for each of them; (6) the existence of any strike or other concerted work stoppage, slowdown, or interruption of operations by employees at the place of employment; and (7) the existence of any arrangements with any owner or agent of any establishment in the area of employment under which the farm labor contractor, the agricultural employer, or the agricultural association is to receive a commission or any other benefit resulting from any sales by such establishment to the workers." *See* 29 U.S.C. § 1821(a) (emphasis added); *see also* 29 C.F.R. § 500.76(b).

**ANSWER**:    Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

145

911.     Defendant PHI recruited Ramon, Consuelo, Adrian, and A.P. in Texas or Indiana in the spring of 2019.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

912.     Defendant PHI did not provide any of the written disclosures required under § 1821(a)(1)-(7) at the time of recruitment to Ramon, Consuelo, Adrian, and A.P.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

913. Defendant PHI therefore violated these seven provisions of § 1821(a) with respect to Ramon, Consuelo, Adrian and A.P.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

914.     Ramon, Consuelo, Adrian and A.P. have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 7: Violations of the AWPA—failures to pay wages when due, claims by all Workers against Defendant PHI**

915.     The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:     Defendants incorporate their previous Answers as though fully set forth herein.

916.     Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:     Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

917.     Every agricultural employer that employs any migrant agricultural worker shall pay the wages owed to such worker when due. *Id*. § 1822(a).

**ANSWER**:     Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

918.    Defendant PHI did not pay the Workers during their 30-minute lunch, which was supposed to be an unpaid lunch break.

**ANSWER**:     Corteva and Pioneer admit that Pioneer did not pay for breaks of 30 minutes or more and deny any remaining allegations contained in this Paragraph.

919.    During an unpaid lunch break, Workers must be relieved from employment-related duties and not required to perform any such duties, including work-related travel.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

920.    On at least a weekly basis, the Workers were required to travel from field to field during their meal period, which did not constitute relief from duty and for which the employer therefore owed them wages.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

921.    Defendant PHI therefore violated this provision of § 1822(a) with respect to all the Workers.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

922.    The Workers have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

### Count 8: Violations of the AWPA—failures to pay wages when due, claims by Plaintiffs Mario, Ramon, Alberto Sr., Alberto Jr., Consuelo, Adrian, A.P., Patricia, Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria Abigail against Defendant PHI

923.    The above-named Workers re-allege the above paragraphs as if fully set forth herein.

3:20-cv-03322-SEM-TSH  # 45  Page 148 of 190

**ANSWER**:   Defendants incorporate their previous Answers as though fully set forth herein.

924.   Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:   Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

925.   Every agricultural employer that employs any migrant agricultural worker shall pay the wages owed to such worker when due. *Id*. § 1822(a).

**ANSWER**:   Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

926.   The Workers' wages were due the Friday following the week in which the work was performed.

**ANSWER**:   Corteva and Pioneer admit that the work pay period started on Monday and ended on Sunday, and payday was the following Friday. Any remaining allegations are denied.

927.   As set out in detail above, Defendant PHI failed to pay Mario, Ramon, Alberto Sr., Alberto Jr., Patricia, Gilbert, Luis, Miguel, Jose E., and Maria Abigail wages for work performed.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

928.   Defendant PHI also failed to pay Alberto Sr., Alberto Jr., Consuelo, Adrian, A.P., Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria Abigail all of the wages they were owed when due, paying them only later, after they had pointed out that hours were missing.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

929.    In addition, for the first several weeks of work, Defendant PHI failed to pay Alberto Sr. for driving the workers back to their lodgings—his "clock" stopped when the other Workers got off the field each day.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

930.    Only after Alberto Sr. and others complained did Defendant PHI start to pay him for this time.

**ANSWER**:     Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

931.    Defendant PHI therefore violated this provision of § 1822(a) with respect to Mario, Ramon, Alberto Sr., Alberto Jr., Consuelo, Adrian, A.P., Patricia, Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria Abigail.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

932.    Mario, Ramon, Alberto Sr., Alberto Jr., Consuelo, Adrian, A.P., Patricia, Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria Abigail  have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

### Count 9: Violations of the AWPA—violations of language requirements, claims by Plaintiffs Hada, David, Liliana, E.R., Patricia, V.A., Vanessa, and Jesus Javier Sr. against Defendant PHI

933.    The above-named Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:     Defendants incorporate their previous Answers as though fully set forth herein.

934.    Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:    Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

935.    The disclosures required by § 1821(a) through (c) "shall be provided in written form. Such information shall be provided in English or, as necessary and reasonable, in Spanish or other language common to migrant agricultural workers who are not fluent or literate in English." *Id*. § 1821(g).

**ANSWER**:    Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

936.    Hada, Liliana, and Jesus Javier Sr. speak and read Spanish and do not speak or read sufficient English to conduct business in English.

**ANSWER**:    Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

937.    Hada's Worker Disclosure and Information Statement was in English.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

938.    Hada signed employment-related documents on behalf of her son David, who was a minor at the time, and his Worker Disclosure and Information Statement was in English.

**ANSWER**:    Corteva and Pioneer admit that the Worker Disclosure and Information Statement for David Carreon was in English. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

939.    Liliana's Worker Disclosure and Information Statement was in English.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

940.    Liliana signed employment-related documents on behalf of then-minors E.R., Patricia, V.A., and Vanessa, and their Worker Disclosure and Information Statements were in English.

**ANSWER**:    Corteva and Pioneer admit that the Worker Disclosure and Information Statements for the workers referenced in this Paragraph were in English. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

941.    Jesus Javier Sr.'s Worker Disclosure and Information Statement was in English.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

942.    Defendant PHI provided Hada, Liliana, and Jesus Javier Sr. with a Worker Disclosure and Information Statement for themselves and the minors in their care, but failed to provide that information in Spanish.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

943.    Given that Hada, Liliana, and Jesus Javier Sr. do not read English and do read Spanish, it was necessary and reasonable to provide the information in Spanish.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

944.    Defendant PHI therefore violated § 1821(g) with respect to Hada, Liliana, and Jesus Javier Sr., and for the minors on whose behalf they received the Worker Disclosure and Information Statements, David, E.R., Patricia, V.A., and Vanessa.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

945.    Hada, David, Liliana, E.R., Patricia, V.A., Vanessa, and Jesus Javier have attempted to resolve these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 10: Violations of the AWPA—providing false information about terms
and conditions of employment, claims
by Plaintiffs Hada and David**

**against Defendant PHI**

946.    Plaintiffs Hada and David re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:    Defendants incorporate their previous Answers as though fully set forth herein.

947.    Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:    Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

948.    No agricultural employer shall "knowingly provide false or misleading information to any migrant agricultural worker concerning the terms, conditions, or existence of agricultural employment required to be disclosed by subsection (a), (b), (c), or (d)." *Id*. § 1821(f).

**ANSWER**:    Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

949.    At the time of recruitment, the Salinases, as agents of Defendant PHI, falsely told Hada that housing would be provided free of charge.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

950.    Hada also received this false information on behalf of her son David, who was a minor at the time.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

951.    Both Hada and David were aggrieved by this violation.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

952.    When Hada and her family arrived in Illinois they learned that their housing stipend, $22 per day, per Worker, would not cover the cost of their lodging, and they were required to cover the balance.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

953.  Defendant PHI therefore violated § 1821(f) with respect to Hada and David.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

954.  Hada and David have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 11: Violations of the AWPA—providing false information about terms
and conditions of employment, claims
by Plaintiffs Alberto Sr. and Ediel
against Defendant PHI**

955.  Plaintiffs Alberto Sr. and Ediel re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:  Defendants incorporate their previous Answers as though fully set forth herein.

956.  Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:  Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

957.  No agricultural employer shall "knowingly provide false or misleading information to any migrant agricultural worker concerning the terms, conditions, or existence of agricultural employment required to be disclosed by subsection (a), (b), (c), or (d)." Id. § 1821(f).

**ANSWER**:  Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

958.  Alberto Sr.'s Worker Disclosure and Information Statement falsely stated that he would be engaged in roguing and detasseling, when in fact he was engaged in driving a bus.

**ANSWER**:    Corteva and Pioneer admit that Alberto Montalvo Sr.'s Worker Disclosure and Information Statement included that he would perform roguing and detasseling. Corteva and Pioneer admit that Alberto Montalvo Sr. knew he would be driving a bus. Corteva and Pioneer deny the remaining allegations contained in this Paragraph.

959.    It also falsely stated that he would be paid only for one-way travel to work sites, when in fact he was entitled to be paid for two-way travel as a bus driver.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

960.    Ediel's Worker Disclosure and Information Statement falsely stated that he would be engaged in roguing and detasseling, when, for the first several weeks, he was also transporting portable toilets.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

961.     It also falsely stated that he would be paid only for one-way travel to work sites, when in fact he was entitled to be paid for two-way travel when returning the portable toilets.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

962.    Defendant PHI therefore violated § 1821(f) with respect to Alberto Sr. and Ediel.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

963.    Alberto Sr. and Ediel have attempted to resolve all of these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

### Count 12: Violations of the AWPA— failures to provide information at the time of recruitment as required under 29 U.S.C. § 1821(a)(3), claims by Plaintiffs Alberto Sr. and Ediel against Defendant PHI

964.    Plaintiffs Alberto Sr. and Ediel re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:    Defendants incorporate their previous Answers as though fully set forth herein.

154

965.    Defendant PHI constitutes an "agricultural employer" within the meaning of the AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:    Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the meaning of the AWPA and deny the remaining allegations contained in this Paragraph.

966.    Under the AWPA, every agricultural employer that recruits any migrant agricultural worker is required to "ascertain and *disclose in writing* to each such worker . . . the following information at the time of the worker's recruitment," including (3) the crops and kinds of activities on which the worker may be employed. 29 U.S.C. § 1821(a)(3).

**ANSWER**:    Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

967.    Alberto Sr.'s Worker Disclosure and Information Statement, failed to disclose that he would be engaged in driving a bus.

**ANSWER**:    Corteva and Pioneer admit that Alberto Montalvo Sr.'s Worker Disclosure and Information Statement does not state he would drive a bus. Any remaining allegations are denied.

968.    Ediel's Worker Disclosure and Information Statement, failed to disclose that he would be engaged in transporting portable toilets.

**ANSWER**:    Corteva and Pioneer admit that Ediel Tanguma Trevino's Worker Disclosure and Information Statement does not state he would transport portable toilets. Any remaining allegations are denied.

969.    Defendant PHI therefore violated § 1821(a)(3) with respect to Alberto Sr. and Ediel.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

970.    Alberto Sr. and Ediel have attempted to resolve these issues before resorting to litigation, but were unable to reach an accord.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

### Count 13: Violations of the AWPA—violations of the working arrangement
### claims by Plaintiff Gilbert
### against Defendant PHI

971.     The above-named Worker re-alleges the above paragraphs as if fully set forth

herein.

**ANSWER**:     Defendants incorporate their previous Answers as though fully set forth herein.

972.     Defendant PHI constitutes an "agricultural employer" within the meaning of the

AWPA. *See* 29 U.S.C. § 1802(2).

**ANSWER**:     Corteva and Pioneer admit that Pioneer is an "agricultural employer" within the
meaning of the AWPA and deny the remaining allegations contained in this
Paragraph.

973.     No agricultural employer "shall, without justification, violate the terms of any

working arrangement made by that contractor, employer, or association with any migrant

agricultural worker." 29 U.S.C. § 1822(c).

**ANSWER**:     Corteva and Pioneer admit the existence of the AWPA but deny plaintiffs are
entitled to any relief thereunder and deny any violation thereof. Any remaining
allegations are also denied.

974.     Defendant PHI promised Gilbert, as part of the working arrangement, a stipend of

$120 upon arrival.

**ANSWER**:     Corteva and Pioneer admit that Gilbert Sanchez Jr.'s Worker Disclosure and
Information Statement provided that recruited workers would receive a stipend of
$120.00 gross, less applicable taxes, upon arrival. Any remaining allegations are
denied.

975.     Defendant PHI failed to provide Gilbert with that stipend.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

976.     Defendant PHI therefore violated § 1822(c) with respect to Gilbert.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

977.    Gilbert has attempted to resolve this issue before resorting to litigation, but was unable to reach an accord.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

### Count 14: Violations of the FLSA—failures to pay wages owed
### for all hours worked, claims
### by all the Workers
### against Defendant PHI

978.    The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:    Defendants incorporate their previous Answers as though fully set forth herein.

979.    Defendant PHI promised each of the Workers a 30-minute lunch, which was not paid.

**ANSWER**:    Corteva and Pioneer admit that the Worker Disclosure and Information Statements provided that lunch breaks of 30 minutes or more would not be paid. Any remaining allegations are denied.

980.    The FLSA requires employers to pay a wage for all of the work they do. *See* 29 U.S.C. § 2206.

**ANSWER**:    Corteva and Pioneer admit the existence of the FLSA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

981.    Pursuant to the FLSA, the DOL has enacted governing regulations. *See* 29 C.F.R. Part 785.

**ANSWER**:    Corteva and Pioneer admit the existence of 29 C.F.R. Part 785 but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

982.    Under governing regulations, a bona fide meal period must be a rest period, during which the employee "must be completely relieved from duty for the purposes of eating regular

157

meals . . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19(a).

**ANSWER**: Corteva and Pioneer admit the existence of 29 C.F.R. § 785.19(a) but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

983. On at least a weekly basis, the Workers were required to travel from field to field during their meal period, which did not constitute relief from duty.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

984. This constituted a failure to pay a wage for work performed and violated the FLSA.

**ANSWER**: Corteva and Pioneer deny the allegations contained in this Paragraph.

### Count 15: Violations of the FLSA—failures to pay wages owed for all hours worked, claims by Plaintiffs Mario, Ramon, Alberto Sr., Alberto Jr., Patricia, Gilbert, Luis, Miguel, Jose E., and Maria Abigail against Defendant PHI

985. The above-named Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**: Defendants incorporate their previous Answers as though fully set forth herein. set forth herein.

986. Defendant PHI constitutes an "employer" within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

**ANSWER**: Corteva and Pioneer admit that Pioneer is an "employer" within the meaning of the FLSA. Any remaining allegations are denied.

987. The FLSA requires every employer to pay the wages owed to such worker when due.

**ANSWER**: Corteva and Pioneer admit the existence of the FLSA but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

988.     As set out in detail above, Defendant PHI paid Mario, Ramon, Alberto Sr., Alberto Jr., Patricia, Gilbert, Luis, Miguel, Jose E., and Maria Abigail for fewer hours than they had worked.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

989.     Defendant PHI also failed to pay Alberto Sr. for approximately one-half hour of work performed each morning conducting a safety check of his bus.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

990.     Defendant PHI also failed to pay Jose E. and Maria Abigail for a mandatory meeting on August 6, 2019, the day after the August Event, which lasted about half an hour.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

991.     Defendant PHI therefore violated this provision of the FLSA with respect to Mario, Ramon, Alberto Sr., Alberto Jr., Patricia, Gilbert, Luis, Miguel, Jose E. and Maria Abigail.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 16: Pendent state law claims—**
**Negligence (and willful and wanton conduct) during July Event, claims**
**by Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Sr., Alberto Jr., Liliana,**
**E.R., Patricia, V.A., Vanessa, Luis, Miguel, Judith, S.V., Jesus Javier Sr.,**
**Yadira, Jesus Jr., Jose E., Jennifer, the Hernandez Children, and Maria**
**Abigail**
**against Defendant RAS**

Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., make no answer to any of the allegations contained in Count 16 of Plaintiffs' Amended Complaint insofar as it does not appear that any of the said allegations are directed against these Defendants. However, to the extent that any or all of the allegations contained in Count 16 may be construed as directed against these Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., hereby deny each and every allegation contained therein.

**Count 17: Pendent state law claims—**
**Negligence (and willful and wanton conduct),**
**during August Event, claims**
**by Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Sr., Alberto Jr.,**
**Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus**
**Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail**
**against the Curless Defendants**

Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., make no answer to any of the allegations contained in Count 17 of Plaintiffs' Amended Complaint insofar as it does not appear that any of the said allegations are directed against these Defendants. However, to the extent that any or all of the allegations contained in Count 17 may be construed as directed against these Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., hereby deny each and every allegation contained therein.

**Count 18: Pendent state law claims—Strict liability**
**(abnormally dangerous activity) for July Event, claims**
**by Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Sr., Alberto Jr.,**
**Liliana, E.R., Patricia, V.A., Vanessa, Luis, Miguel, Judith, S.V., Jesus**
**Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, the Hernandez Children,**
**and Maria Abigail**
**against Defendant RAS**

Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., make no answer to any of the allegations contained in Count 18 of Plaintiffs' Amended Complaint insofar as it does not appear that any of the said allegations are directed against these Defendants. However, to the extent that any or all of the allegations contained in Count  18 may be construed as directed against these Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., hereby deny each and every allegation contained therein.

**Count 19: Pendent state law claims—**
**Strict liability (abnormally dangerous activity)**
**for August Event, claims**
**by Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Sr., Alberto Jr.,**
**Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus**
**Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail**

160

**against the Curless Defendants**

Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., make no answer to any of the allegations contained in Count 19 of Plaintiffs' Amended Complaint insofar as it does not appear that any of the said allegations are directed against these Defendants. However, to the extent that any or all of the allegations contained in Count 19 may be construed as directed against these Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., hereby deny each and every allegation contained therein.

**Count 20: Pendent state law claims—**
**Negligence (and willful and wanton conduct),**
**during July Event, claims**
**by the Hernandez Children**
**against Defendant PHI**

1048.  The Hernandez Children re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:  Defendants incorporate their previous Answers as though fully set forth herein.

1049.  On July 23, 2019, Defendant PHI permitted the Workers to work in a field over which dangerous pesticides were sprayed while they were working.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

1050.  Defendant PHI knew or reasonably should have known that many of the Workers had small children who would be exposed to the pesticides when the Workers returned to their lodgings after work that day.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

1051.  Defendant PHI had a duty to ensure that the Workers were able to perform their work without causing exposures to their children, including but not limited to by taking reasonable steps to determine whether and when fields would be sprayed.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

161

1052.   Defendant PHI failed to ensure that the Workers were able to perform their work without experiencing such exposures, breaching its duty.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1053.   Defendant PHI's breach of duty caused Jennifer, Maria Abigail, and other family members of the Hernandez Children to be directly exposed to the pesticides, and caused the Hernandez Children to be exposed by transfer from their family members to them.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1054.   Defendant PHI failed to take reasonable precautions to avoid the danger posed to these Children, even after it knew or reasonably should have known of that danger.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1055.   Defendant PHI's activity, farming in an areas in which crop dusting is known to occur, is generally associated with the risk of serious injury.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1056.   Defendant PHI acted with reckless disregard for the safety of these Children throughout its response to the July Event.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1057.   The exposure caused the Hernandez Children to experience illness and injury, including skin inflammation, nausea, diarrhea, loss of appetite, and rashes.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1058.   The exposure and the resulting symptoms required medical treatment, which caused the Hernandez Children aggravation and inconvenience, as well as out-of-pocket costs in the form of co-insurance payments, travel costs to medical providers, and missed family income.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1059. This exposure and the resulting symptoms caused the Hernandez Children emotional distress.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 21: Pendent state law claims—**
**Battery during July Event, claims**
**by Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Jr., Liliana, E.R., Patricia, V.A.,**
**Vanessa, Luis, Miguel, Jesus Javier Sr., Yadira, Ja.Z., Jesus Jr., Jose E., Jennifer, and**
**Maria Abigail**
**against Defendant RAS**

Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., make no answer to any of the allegations contained in Count 21 of Plaintiffs' Amended Complaint insofar as it does not appear that any of the said allegations are directed against these Defendants. However, to the extent that any or all of the allegations contained in Count 21 may be construed as directed against these Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., hereby deny each and every allegation contained therein.

**Count 22: Pendent state law claims—**
**Assault during July Event, claims**
**by Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Jr., Liliana, E.R.,**
**Patricia, V.A., Vanessa, Luis, Miguel, Judith, S.V., Jesus Javier Sr., Yadira,**
**Jesus Jr., Jennifer, and**
**Maria Abigail**
**against Defendant RAS**

Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., make no answer to any of the allegations contained in Count 22 of Plaintiffs' Amended Complaint insofar as it does not appear that any of the said allegations are directed against these Defendants. However, to the extent that any or all of the allegations contained in Count 22 may be construed as directed against these Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., hereby deny each and every allegation contained therein.

**Count 23: Pendent state law claims—**

**Battery during August Event, claims
by Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Sr., Alberto
Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus
Javier Sr., Yadira, Ja.Z., Jesus Jr., Jose E., and Maria Abigail
against the Curless Defendants**

Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., make no answer to any of the allegations contained in Count 23 of Plaintiffs' Amended Complaint insofar as it does not appear that any of the said allegations are directed against these Defendants. However, to the extent that any or all of the allegations contained in Count 23 may be construed as directed against these Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., hereby deny each and every allegation contained therein.

**Count 24: Pendent state law claims –
Assault during August Event, claims
by Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Sr., Alberto
Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus
Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail
against the Curless Defendants**

Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., make no answer to any of the allegations contained in Count 24 of Plaintiffs' Amended Complaint insofar as it does not appear that any of the said allegations are directed against these Defendants. However, to the extent that any or all of the allegations contained in Count 24 may be construed as directed against these Defendants, PIONEER HI-BRED INTERNATIONAL, INC. & CORTEVA, INC., hereby deny each and every allegation contained therein.

**Count 25: Pendent state law claim
Battery during August Event, claims
by Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Consuelo, Adrian,
A.P., Luis, Miguel, Ediel, Jesus Javier Sr., Jose E., and
Jesus Jr.
against Defendant PHI**

1130.  The above-named Workers re-allege the above paragraphs as if fully set forth

herein.

**ANSWER**:     Defendants incorporate their previous Answers as though fully set forth herein.

1131.   On August 5, 2019, Defendant PHI directed and caused Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Consuelo, Adrian, A.P., Luis, Miguel, Ediel, Jesus Javier Sr., Jose E., and Jesus Jr. to enter a field that had just been sprayed with pesticides.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1132.   The field contained highly toxic, harmful compounds that remained ambient in the field at the time these Defendants ordered the Workers to enter it.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1133.   The Workers went back into the field and were exposed to these toxic and harmful compounds as the result of Defendant PHI's order.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1134.   Defendant PHI knew for certain that the field had just been sprayed with pesticides and knew for certain that those pesticides would remain ambient on it.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1135.   Defendant PHI knew that the Workers would obey their orders to enter the just-sprayed field because they would feel it was their duty and because they would fear losing their jobs or their pay if they disobeyed.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1136.   Defendant PHI nevertheless ordered the Workers to go into the field, knowing in each case that the Worker would be exposed to hazardous pesticides by doing so.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1137.   Defendant PHI therefore specifically intended to batter the above-named Workers

165

by ordering them to return to work in the field.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1138.   As set out above with respect to each individual, the exposure caused these Workers to experience illness and injury, including skin and eye inflammation, headaches, shortness of breath, nausea, diarrhea, dizziness, loss of appetite, excessive fatigue, confusion, and rashes, as well as increased risk of other medical conditions.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1139.   The exposure and the resulting symptoms caused Workers to be unable to work for some periods of time and limited their capacity to earn money.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1140.   This exposure and the resulting symptoms required medical treatment and consultation, which caused Workers aggravation and inconvenience, as well as out-of-pocket costs in the form of co-insurance payments, travel costs to medical providers, and missed pay.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1141.   This exposure and the resulting symptoms caused these Workers to feel emotional distress, including fear, anxiety, anger, sadness and humiliation.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1142.   Defendant PHI knew that several of these Workers were minors, including David (17 years old), Adrian (17 years old), A.P. (15 years old), Jose E. (17 years old), and Jesus Jr. (16 years old)) or persons over 60 (Luis and Miguel).

**ANSWER**:     Corteva and Pioneer admit that Pioneer knew the ages of the referenced workers. Any remaining allegations are denied.

1143.   The egregiousness of Defendant PHI's intentional battery warrants punitive damages.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 26: Pendent state law claim**
**Battery during August Event, claims**
**by Plaintiffs Adrian, A.P., Luis, Miguel, Judith, and S.V.**
**against Defendant PHI**

1144.   The above-named Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:     Defendants incorporate their previous Answers as though fully set forth herein.

1145.   On August 5, 2019, Defendant PHI directed and caused Plaintiffs Adrian, A.P., Luis, Miguel, Judith, and S.V. to re-enter a field that had just been sprayed with pesticides.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1146.   The field contained highly toxic, harmful compounds that remained ambient in the field at the time these Defendants ordered the Workers to enter it.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1147.   These Workers, having exited the field on the side opposite to where the buses were located, went back through the field and were exposed to these toxic and harmful compounds as the result of Defendant PHI's order to do so.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1148.   Defendant PHI knew for certain that the field had just been sprayed with pesticides and knew for certain that those pesticides would remain ambient on it.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1149.   Defendant PHI knew that these Workers would obey their orders to enter the just-sprayed field because they would feel it was their duty and because they would fear losing their jobs or their pay if they disobeyed.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

167

1150.   Defendant PHI nevertheless ordered these Workers to go into the field, knowing in each case that the Worker would be exposed to hazardous pesticides by doing so.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1151.   Defendant PHI therefore specifically intended to batter the above-named Workers by ordering them to return to the buses by crossing through the field.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1152.   As set out above with respect to each individual, the exposure caused these Workers to experience illness and injury, including skin and eye inflammation, headaches, shortness of breath, nausea, diarrhea, dizziness, loss of appetite, excessive fatigue, confusion, and rashes, as well as increased risk of other medical conditions.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1153.   The exposure and the resulting symptoms caused Workers to be unable to work for some periods of time and limited their capacity to earn money.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1154.   This exposure and the resulting symptoms required medical treatment and consultation, which caused Workers aggravation and inconvenience, as well as out-of-pocket costs in the form of co-insurance payments, travel costs to medical providers, and missed pay.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1155.   This exposure and the resulting symptoms caused these Workers to feel emotional distress, including fear, anxiety, anger, sadness and humiliation.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1156.   Defendant PHI knew that several of these Workers were minors, including Adrian (17 years old), A.P. (15 years old), and S.V. (15 years old), or persons over 60 (Luis and Miguel).

**ANSWER**:     Corteva and Pioneer admit that Pioneer knew the ages of the referenced workers. Any remaining allegations are denied.

1157.   The egregiousness of Defendant PHI's intentional battery warrants punitive damages.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 27: Pendent state law claims—**
**Illinois Wage Payment and Collection Act ("IWPCA"), claims**
**by all the Workers**
**against Defendant PHI**

1158.   The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:     Defendants incorporate their previous Answers as though fully set forth herein.

1159.   Defendant PHI promised that each of the Workers would have a daily, unpaid, 30-minute lunch break.

**ANSWER**:     Corteva and Pioneer admit that the Worker Disclosure and Information Statements provided that lunch breaks of 30 minutes or more would not be paid. Any remaining allegations are denied.

1160.   Defendant PHI promised each of the Workers that they would be compensated for one-way travel to their work sites.

**ANSWER**:     Corteva and Pioneer admit that the Worker Disclosure and Information Statements provided that one-way travel time in Pioneer vehicles would be paid. Any remaining allegations are denied.

1161.   The IWPCA requires employers to pay employees all wages earned for all of the work they do. 820 Ill. Comp. Stat. Ann. § 115/4.

**ANSWER**:     Corteva and Pioneer admit the existence of 820 ILCS 115/4 but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof.

1162.   On at least a weekly basis, the Workers were required to travel from field to field during their meal period, time during which they should have been paid because it constituted

work for purposes of the IWPCA, in that it was part of their job duties, and because they were promised pay for that work.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1163.   Defendant PHI repeatedly failed to pay the Workers for these 30-minute periods, even though they were working.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1164.   The IWPCA provides that Workers may file suit to claim unpaid wages, and that such workers are also entitled to a penalty of 2% of the underpayment for each month during which the underpayment remained unpaid, and attorneys' fees. *Id.* § 115/14.

**ANSWER**:    Corteva and Pioneer admit the existence of 820 ILCS 115/14 but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof.

### Count 28: Pendant state law claims— Violation of the IWPCA—failures to pay wages owed for all hours worked, claims by Plaintiffs Mario, Ramon, Alberto Sr., Alberto Jr., Patricia, Gilbert, Luis, Miguel, Jose E. and Maria Abigail against Defendant PHI

1165.   The above-named Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:    Defendants incorporate their previous Answers as though fully set forth herein.

1166.   Defendant PHI promised Alberto Jr., Gilbert, Luis, Miguel, Jose E. and Maria Abigail that they would be compensated at the rate of $9.25 for each hour of work they did.

**ANSWER**:    Corteva and Pioneer admit that the Worker Disclosure and Information Statements for Alberto Montalvo Jr., Gilbert Sanchez, Luis Sifuentes, Miguel Sifuentes, Jose E. Zuniga, and Maria Abigail Zuniga identify a rate of pay of $9.25 per hour. Any remaining allegations are denied.

1167.   Defendant PHI promised Mario and Ramon that they would be compensated at the rate of $10 for each hour of work they did.

170

**ANSWER**:    Corteva and Pioneer admit that the Worker Disclosure and Information Statements for Mario Gonzalez and Ramon Hernandez Jr. identify a rate of pay of $10 per hour. Any remaining allegations are denied.

1168.    Defendant PHI promised Alberto Sr. that he would be compensated at the rate of $15 for each hour of work he did.

**ANSWER**:    Corteva and Pioneer admit that the Worker Disclosure and Information Statement for Alberto Montalvo Sr. identified a rate of pay of $15 per hour. Any remaining allegations are denied.

1169.    The IWPCA requires employers to pay employees all wages earned for all of the work they do. 820 Ill. Comp. Stat. Ann. § 115/4.

**ANSWER**:    Corteva and Pioneer admit the existence of 820 ILCS 115/4 but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof.

1170.    As set out in detail above, Defendant PHI failed to pay Mario, Ramon, Alberto Sr., Alberto Jr., Patricia, Gilbert, Luis, Miguel, Maria Abigail, and Jose E. for all of the hours that they had worked.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1171.    Defendant PHI also failed to pay Alberto Sr. for approximately one-half hour of work performed each morning conducting a safety check of his bus.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1172.    Defendant PHI failed to pay Jose E. and Maria Abigail for a mandatory meeting on August 6, 2019, the day after the August Event, which lasted about half an hour.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1173.    Defendant PHI therefore violated the IWPCA with respect to Mario, Ramon, Alberto Sr., Alberto Jr., Patricia, Gilbert, Luis, Miguel, Jose E., and Maria Abigail.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1174.   The IWPCA provides that Workers may file suit to claim unpaid wages, and that such workers are also entitled to a penalty of 2% of the underpayment for each month during which the underpayment remained unpaid, and attorney's fees. *Id*. § 115/14.

**ANSWER**:   Corteva and Pioneer admit the existence of 820 ILCS 115/14 but deny plaintiffs are entitled to any relief thereunder and deny any violation thereof.

**Count 29: Pendent state law claims—**
**Breaches of contract,**
**Violations of the WPS, claims**
**by the Workers**
**against Defendant PHI**

1175.   The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:   Defendants incorporate their previous Answers as though fully set forth herein.

1176.   The Workers' agreements to perform detasseling work for Defendant PHI under the terms and conditions expressed in their Worker Disclosure and Information Statements constituted valid and enforceable contracts.

**ANSWER**:   Corteva and Pioneer admit the allegations contained in this Paragraph.

1177.   The Workers performed their obligations under those contracts.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1178.   The Workers' contracts contained implicit terms requiring Defendant PHI to comply with federal, state, and local law.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1179.   The FIFRA, administered by the USEPA, governs the use of pesticides in the United States. 7 U.S.C. §§ 136-136y.

**ANSWER**:   Corteva and Pioneer admit the existence of FIFRA but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1180.   Under the FIFRA, the USEPA created protections for agricultural workers through pesticide-specific restrictions and label requirements, called the Worker Protection Standards ("WPS"). 40 C.F.R. Part 170.

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1181.   Defendant PHI constitutes an "agricultural employer" within the meaning of the WPS.

**ANSWER**:    Corteva and Pioneer admit that Pioneer is an agricultural employer within the meaning of the WPS. Any remaining allegations are denied.

1182.   The Workers' contracts incorporated the WPS.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1183.   Under the WPS, the agricultural employer must assure that workers receive required protections. *Id*. §§ 170.7(a)(1), 170.309(a),(b).

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1184.   The WPS requires agricultural employers to provide sufficient water for washing and emergency eye flushing, sufficient soap, and single-use towels. *Id*. §§ 170.150(b),(c); 170.411.

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1185.   On July 23, 2019, Defendant PHI failed to provide sufficient water for washing and emergency eye flushing, sufficient soap, and single-use towels, to Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Jr., Liliana, E.R., Patricia, V.A., Vanessa, Luis, Miguel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria Abigail, after they were exposed to pesticides.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1186.    On August 5, 2019, Defendant PHI failed to provide sufficient water for washing and emergency eye flushing, sufficient soap, and single-use towels, to Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Jesus Jr., and Jose E.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1187.    The WPS forbids any agricultural employer from allowing or directing any person other than a trained and equipped handler to enter or remain in areas treated with pesticide. *Id*. § 170.110; *see also id*. § 170.407(a).

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1188.    On August 5, 2019, Defendant PHI directed Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Jesus Jr., Jose E., and Maria Abigail to return to a field just sprayed with pesticides.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1189.    The WPS also forbids any agricultural employer, after the application of any pesticide on an agricultural establishment, from allowing or directing any worker to enter or remain in the treated area before the restricted-entry interval specified on the pesticide labeling has expired. *Id*. § 170.112(a); *see also id*. § 170.407(a).

**ANSWER**:    Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1190.    Each of the chemicals involved in the August Event specified restricted entry intervals of 12 hours.

**ANSWER**:     Corteva and Pioneer deny that Pioneer's field or workers were sprayed with chemicals as alleged by Plaintiffs. Corteva and Pioneer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this Paragraph.

1191.   On August 5, 2019, Defendant PHI directed Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail to return to the just-sprayed field before 12 hours, the entry interval specified on the pesticide labeling, had expired.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1192.   Where an agricultural employer directs a worker to perform activities in a treated area before expiration of the restricted-entry interval, the employer must ensure the worker is at least 18 years old, provide the worker certain information, ensure the worker's knowledge of the labels and use of proper protective equipment, ensure that that equipment is not taken home, and provide additional decontamination equipment and supplies. *See* 40 C.F.R. § 605.

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1193.   On August 5, 2019, Defendant PHI directed Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail to return to the just-sprayed field before 12 hours, the entry interval specified on the pesticide labeling, had expired, without complying with any of the duties listed in § 605, including failing to ensure that Adrian, A.P., S.V., Jesus Jr., and Jose E. were at least 18 (they were not), failing to provide proper decontamination equipment and supplies, and failing to ensure protective equipment was not brought home.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1194.  The WPS requires agricultural employers who have "reason to believe" that any worker has been injured by exposure to pesticides, regardless of whether the exposure occurred as the result of "application, splash, spill, drift, or pesticide residues," to provide prompt transportation to an appropriate emergency medical facility. *Id*. § 170.160.

**ANSWER**:     Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1195.  On July 23, 2019, Defendant PHI had reason to believe that Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Jr., Liliana, E.R., Patricia, V.A., Vanessa, Luis, Miguel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria Abigail had all been injured by exposure to pesticides, and failed to provide them prompt transportation to an appropriate emergency medical facility.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1196.  On August 5, 2019, Defendant PHI had reason to believe Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E, and Maria Abigail had all been injured by exposure to pesticides, and failed to provide them prompt transportation to an appropriate emergency medical facility.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1197.   The WPS requires agricultural employers who have "reason to believe" that any worker has been injured by exposure to pesticides, regardless of whether the exposure occurred as the result of "application, splash, spill, drift, or pesticide residues," to provide the exposed person or medical personnel "any obtainable information" on the product name, registration number, and

active ingredients of the products to which the person was exposed, antidote and first aid information, and circumstances of the application and exposure. *Id*.

**ANSWER**:   Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1198.   On July 23, 2019, Defendant PHI had reason to believe that Plaintiffs Hada, Lidianelly, David, Ramon, Alberto Jr., Liliana, E.R., Patricia, V.A., Vanessa, Luis, Miguel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., Jennifer, and Maria Abigail had all been injured by exposure to pesticides, but failed to provide them obtainable information, including the name, registration number, and active ingredients of the products to which they were exposed, antidote and first aid information, and circumstances of the application and exposure.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1199.   On August 5, 2019, Defendant PHI had reason to believe that Plaintiffs Hada, Lidianelly, David, Mario, Ramon, Alberto Jr., Consuelo, Adrian, A.P., Gilbert, Luis, Miguel, Ediel, Judith, S.V., Jesus Javier Sr., Yadira, Jesus Jr., Jose E., and Maria Abigail had all been injured by exposure to pesticides, but failed to provide them obtainable information, including the name, registration number, and active ingredients of the products to which they were exposed, antidote and first aid information, and circumstances of the application and exposure.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1200.   The WPS requires agricultural employers to display information about any pesticide that has been applied within the last 30 days, including the product name, active ingredient, time and date of application, and how long entry is restricted. *Id*. § 170.122.

**ANSWER**:   Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

177

1201.  On July 23, 2019, Defendant PHI failed to display any information about the pesticides that had been applied.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

1202.  On August 5, 2019, Defendant PHI failed to display any information about the pesticides that had been applied.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

1203.  The WPS requires agricultural employers to display safety information about any pesticide that has been applied within the last 30 days. *Id*. § 170.135.

**ANSWER**:  Corteva and Pioneer admit the existence of the WPS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1204.  On July 23, 2019, Defendant PHI failed to display any safety information about the pesticides that had been applied.

**ANSWER:**  Corteva and Pioneer deny the allegations contained in this Paragraph.

1205.  On August 5, 2019, Defendant PHI failed to display any safety information about the pesticides that had been applied.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

1206.  Each of the above failures constitutes a separate breach of the Workers' contracts.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

1207.  These failures resulted in damages to each of the above Workers.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

1208.  Because the contracts were formed in Texas, Texas law governs them.

**ANSWER**:  Corteva and Pioneer deny the allegations contained in this Paragraph.

1209.   Texas Civil Practice and Remedies Code § 38.001(8) provides for recovery of attorneys' fees for a claim of breach of contract.

**ANSWER**:   Corteva and Pioneer admit the existence of Texas Civil Practice and Remedies Code § 38.001(8) but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

1210.   The Workers seek recovery of reasonable attorney's fees pursuant to Texas Civil Practice and Remedies Code § 38.001(8).

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

**Count 30: Pendent state law claims --
Breaches of contract,
Violations of the FSS, claims
by the Workers
against Defendant PHI**

1211.   The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:   Defendants incorporate their previous Answers as though fully set forth herein.

1212.   The Workers' agreements to perform detasseling work for Defendant PHI under the terms and conditions expressed in their Worker Disclosure and Information Statements constituted valid and enforceable contracts.

**ANSWER**:   Corteva and Pioneer admit the allegations contained in this Paragraph.

1213.   The Workers performed their obligations under those contracts.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1214.   The Workers' contracts contained implicit terms requiring Defendant PHI to comply with federal, state, and local law.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

179

1215.   Under OSHA, the USDOL created the FSS, applicable to any agricultural establishment where 11 or more employees work in hand-labor field operations. *See* 29 C.F.R. § 1928.110(a).

**ANSWER**:   Corteva and Pioneer admit the existence of the FSS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are denied.

1216.   Defendant PHI constitutes an "agricultural establishment" within the meaning of the FSS. *Id*., § 1928.110(b)(iii).

**ANSWER**:   Corteva and Pioneer admit that Pioneer operates an agricultural establishment and deny the remaining allegations contained in this Paragraph.

1217.   The Workers' contracts incorporated the FSS.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1218.   *Inter alia*, the FSS requires that

a.      Toilet facilities be maintained in clean and sanitary condition;

b.      Handwashing facilities be refilled with potable water as necessary to ensure an adequate supply; and

c.      The employer inform employees of the importance of drinking water frequently.

29 C.F.R. § 1928.10(3),(4).

**ANSWER**:   Corteva and Pioneer admit the existence of the FSS but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are denied.

1219.   Defendant PHI repeatedly violated these provisions in the following ways:

a.      It failed to keep the toilets reasonably clean;

b.      It failed to provide sufficient toilet paper and sufficient water for handwashing;

    c.    It failed to provide adequate drinking water, and instead of informing the employees about the importance of drinking frequently, discouraged them from drinking "too much" water.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1220.    Each of the above failures constitutes a separate breach of the Workers' contracts.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1221.    These failures resulted in damages to each of the above Workers.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1222.    Because the contracts were formed in Texas, Texas law governs them.

**ANSWER**:    Corteva and Pioneer deny the allegations contained in this Paragraph.

1223.    Texas Civil Practice and Remedies Code § 38.001(8) provides for recovery of attorneys' fees for a claim of breach of contract.

**ANSWER**:    Corteva and Pioneer admit the existence of Texas Civil Practice and Remedies Code § 38.001(8) but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

**Count 31: Pendent state law claims --**
**Breaches of contract,**
**Failures to provide a paid lunch as agreed, claims**
**by all of the Workers**
**against Defendant PHI**

1224.    The Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:    Defendants incorporate their previous Answers as though fully set forth herein.

1225.    The Workers' agreements to perform work for Defendant PHI under the terms and conditions expressed in their Worker Disclosure and Information Statements constituted valid and enforceable contracts.

**ANSWER**:    Corteva and Pioneer admit the allegations contained in this Paragraph.

1226.    The Workers performed their obligations under those contracts.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1227.   Defendant PHI promised that each of the Workers would have a daily, unpaid, 30-minute lunch break.

**ANSWER**:     Corteva and Pioneer admit that the Worker Disclosure and Information Statements provided that lunch breaks of 30 minutes or more would not be paid. Any remaining allegations are denied.

1228.   Defendant PHI promised each of the Workers that they would be compensated for travel to their work sites.

**ANSWER**:     Corteva and Pioneer admit that the Worker Disclosure and Information Statements provided that one-way travel time in Pioneer vehicles would be paid. Any remaining allegations are denied.

1229.   On at least a weekly basis, the Workers were required to travel from field to field during their meal period, time during which they should have been paid because it constituted work, in that it was part of their job duties, and because they were promised pay for that work.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1230.   Defendant PHI repeatedly failed to pay the Workers for these 30-minute periods.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1231.   Defendant PHI repeatedly failed to provide a lunch break as required by their contracts, instead requiring the Workers to perform unpaid work during that time.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1232.   Each of these failures constituted a breach of the Workers' contracts.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1233.   Each of these failures resulted in damages to the Workers.

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1234.   Because the contracts were formed in Texas, Texas law governs them.

182

**ANSWER**:     Corteva and Pioneer deny the allegations contained in this Paragraph.

1235.  Texas Civil Practice and Remedies Code § 38.001(8) provides for recovery of attorneys' fees for a claim of breach of contract.

**ANSWER**:     Corteva and Pioneer admit the existence of Texas Civil Practice and Remedies Code § 38.001(8) but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

**Count 32: Pendent state law claim --**
**Breaches of contract**
**Failures to pay agreed-upon wage for all hours worked, claims**
**by Plaintiffs Mario, Ramon, Alberto Sr., Alberto Jr., Patricia, Gilbert, Luis,**
**Miguel, Jose E. and Maria Abigail**
**against Defendant PHI**

1236.  The above-named Workers re-allege the above paragraphs as if fully set forth herein.

**ANSWER**:     Defendants incorporate their previous Answers as though fully set forth herein.

1237.  Alberto Jr., Patricia, Gilbert, Luis, Miguel, Jose E. and Maria Abigail's agreements to perform detasseling work for Defendant PHI under the terms and conditions expressed in their Worker Disclosure and Information Statements, including pay at $9.25 for each hour of work, constituted valid and enforceable contracts.

**ANSWER**:     Corteva and Pioneer admit that the allegations contained in this Paragraph.

1238.  Mario and Ramon also had valid and enforceable contracts to perform detasseling work for Defendant PHI at the rate of $10 per hour.

**ANSWER**:     Corteva and Pioneer admit that the allegations contained in this Paragraph.

1239.  Alberto Sr. also had a valid and enforceable contract to drive a bus for Defendant PHI at the rate of $15 per hour.

**ANSWER**:     Corteva and Pioneer admit that the allegations contained in this Paragraph.

1240.   Defendant PHI failed to pay Mario, Ramon, Alberto Sr., Alberto Jr., Patricia, Gilbert, Luis, Miguel, Jose E. and Maria Abigail the promised pay for all of the hours that they had worked.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1241.   Each of these failures constituted a breach of these Workers' contracts.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1242.   Each of these failures resulted in damages to these Workers.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1243.   Because the contracts were formed in Texas, Texas law governs them.

**ANSWER**:   Corteva and Pioneer deny the allegations contained in this Paragraph.

1244.   Texas Civil Practice and Remedies Code § 38.001(8) provides for recovery of attorneys' fees for a claim of breach of contract.

**ANSWER**:   Corteva and Pioneer admit the existence of Texas Civil Practice and Remedies Code § 38.001(8) but deny that plaintiffs are entitled to any relief thereunder and deny any violation thereof. Any remaining allegations are also denied.

WHEREFORE, the Defendants, PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC., deny that Plaintiffs are entitled to any relief requested and further pray that the Honorable Court dismiss the Amended Complaint with prejudice.

DEFENDANTS DEMAND TRIAL BY JURY OF TWELVE.

## AFFIRMATIVE DEFENSES

The affirmative defenses herein are pled in the alternative and without prejudice to Defendants' denials in their Answer above:

184

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part pursuant to 29 U.S.C. § 1854(d) and/or 820 ILCS 305/5, as workers compensation benefits provide the exclusive remedy.

### SECOND AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which relief may be granted.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs may not recover liquidated damages because neither PIONEER HI-BRED INTERNATIONAL, INC. nor CORTEVA, INC., or any officers, directors, managers, or agents of either, committed any willful violation of the FLSA or IWPCA, nor did they ratify any such violation.

### FIFTH AFFIRMATIVE DEFENSE

At all times, Defendants, PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC, acted in good faith and had reasonable grounds for believing their actions were in compliance with the FLSA or IWPCA. Therefore, Plaintiffs are not entitled to liquidated damages because, under Section 11 of the Portal-to-Portal Act, PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC. acted in good faith and have reasonable grounds for believing that the alleged act or omission was not a violation of the FLSA or IWPCA.

### SIXTH AFFIRMATIVE DEFENSE

Neither PIONEER HI-BRED INTERNATIONAL, INC. nor CORTEVA, INC., or any of their officers, directors, managers, or agents, knew or intended that alleged acts or omissions, which PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC. continue to deny,

were prohibited by the FLSA or IWPCA. PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC. did not know or show reckless indifference to or disregard for the requirements of the FLSA or IWPCA, nor did they ratify any such acts or omissions.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs seek payment for time that is not compensable time i.e. "hours worked," under the FLSA or IWPCA. Therefore, this action is barred to the extent Plaintiffs seeks recovery for time that is not compensable time under the FLSA or IWPCA.

## EIGHTH AFFIRMATIVE DEFENSE

PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC., are entitled to offset monies or other consideration paid or provided to Plaintiffs by Defendants for periods in which Plaintiffs were not engaged to work.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to punitive/liquidated damages as Defendants did not act or fail to act in a manner sufficient to give rise to punitive/liquidated damages liability.

## TENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs may seek punitive damages, Plaintiffs recovery is prohibited or limited by applicable provisions of the FLSA, the IWPCA, and the Illinois and/or United States Constitutions.  Any award of punitive damages to Plaintiffs in this case would be in violation of the FLSA, IWPCA, and the constitutional safeguards provided to Defendants under the Constitution of the United States and/or the laws of the State of Illinois.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' causes of action are barred because they seek to recover for time that is de minimus work time, and thus not compensable under the FLSA or IWPCA.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred to the full extent of the operation of the equitable doctrine of laches, estoppel, payment, unclean hands, in pani delicto, accord and satisfaction, and/or payment or set off to the extent they have been fully compensated for any owed "wages" and, by accepting the payments made to them, have effectuated an accord and satisfaction of their claims.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs have failed to plead facts with sufficient particularity to support an award of liquidated damages or, alternatively, any award of liquidated damages is barred because Defendants acted in good faith, with reasonable basis and an honest intention to comply with the law at all times.

**FOURTEENTH AFFIRMATIVE DEFENSE**

If any damages have been sustained by Plaintiffs, PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC. are entitled under the equitable doctrine of setoff and recoupment to offset all obligations owed by Plaintiffs, PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC. against any judgment that may be entered against one or more of the Defendants.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' Amended Complaint, and each purported claim and request for recovery contained therein, is barred, in whole or in part, by the Plaintiffs' failure to mitigate, or reasonably attempt to mitigate, their damages.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims, to the extent they state claims that entitle Plaintiffs to relief, are subject to applicable damages caps or limitations.

187

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part to the extent they seek a double recovery.

## EIGTEENTH AFFIRMATIVE DEFENSE

The scope of authority of Fidencio Salinas and Arminda Salinas was limited by the terms of the Worker Disclosure and Information Statements tendered to Plaintiffs, and any representations made by them to the contrary or beyond the terms contained within such documents were outside the scope of their authority as recruiters for these Defendants. Moreover, Plaintiffs had actual notice of the limitations of the Salinases' authority, and therefore the doctrine of apparent authority does not apply.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' negligence is more than 50% of the proximate cause of the alleged injuries and damages for which they now seek recovery, and therefore Plaintiffs' claims are barred pursuant to *735 ILCS 5/2-1116*. Alternatively, in the event that the trier of fact determines that Plaintiff's comparative negligence constitutes 50% or less of the proximate cause of the alleged injuries and damages for which he seeks recovery, then any judgment entered in favor of Plaintiffs should be reduced by the percentage of Plaintiffs' comparative negligence.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the equitable doctrines of waiver and estoppel.

## ADDITIONAL AFFIRMATIVE DEFENSES

PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC., reserve the right to assert additional affirmative defenses which may be appropriate based on their investigation and discovery.

WHEREFORE, the Defendants, PIONEER HI-BRED INTERNATIONAL, INC. and CORTEVA, INC., deny that Plaintiffs are entitled to any relief requested and further pray that the Honorable Court dismiss the Amended Complaint with prejudice.

DEFENDANTS DEMAND TRIAL BY JURY OF TWELVE.

Respectfully submitted,

**SANCHEZ DANIELS & HOFFMAN LLP**

By: /s/ Brian H. Sanchez
            Attorneys for Defendants,
            PIONEER HI-BRED INTERNATIONAL, INC.
            & CORTEVA, INC.

Brian H. Sanchez [ARDC #6296503]
**SANCHEZ DANIELS & HOFFMAN LLP**
333 West Wacker Drive
Suite 500
Chicago, Illinois 60606
(312) 641-1555
bsanchez@sanchezdh.com

## CERTIFICATE OF SERVICE

     I certify that April 30, 2021, the foregoing was electronically filed with the Clerk of the Court using the CMECF System, which will send notification of such filing to all parties of record and that this statement as set forth is true and correct.

| Attorneys for Plaintiffs | |
|---|---|
| Ms. Miriam Hallbauer<br>Ms. Lisa Palumbo<br>Ms. Mariyam Hussain<br>Ms. Lauren Dana<br>Ms. Agnes Kim Baik<br>Legal Aid Chicago<br>120 South LaSalle Street, Suite 900<br>Chicago, Illinois 60603<br>T: (312) 229-6360<br>E: mhallbauer@legalaidchicago.org<br>   lpalumbo@legalaidchicago.org<br>   mhussain@legalaidchicago.org<br>   ldana@legalaidchicago.org<br>   agnes.baik@gmail.com | Ms. Daniela Dwyer [Texas Bar #24040842]<br>Texas Riogrande Legal Aid Inc.<br>Managing Attorney<br>301 South Texas Avenue<br>Mercedes, Texas 78596<br>T: (956) 447-4800<br>E: ddwyer@trla.org<br><br>Ms. Grace Kube [Wisconsin Bar #1104723]<br>Texas Riogrande Legal Aid Inc.<br>1206 East Van Buren Street<br>Brownsville, Texas 78520<br>T: (956) 982-5540<br>E: gkube@trla.org |
| Mr. Eugene Schoon<br>Senior Counsel<br>Reiter Burns LLP<br>311 South Wacker Drive<br>Chicago, Illinois 60606<br>T: (312) 982-0090<br>D: (312) 586-1015<br>E: gschoon@reiterburns.com | Mr. Howard A. Learner<br>Ms. Ann Jaworski<br>Environmental Law & Policy Center<br>36 East Wacker Drive, Suite 1600<br>Chicago, Illinois 60601<br>T: (312) 673-6500<br>F: (312) 795-3730<br>E: HLearner@elpc.org<br>   AJaworski@elpc.org |
| **Attorneys for Defendants Farm Air, Inc.,**<br>**& Curless Flying Service, Inc.**<br>Mr. Mark T. Banovetz<br>Ms. Jennifer M. Theodore<br>Mr. Dan R. Formeller<br>Tressler LLP<br>233 South Wacker Drive, 61st Floor<br>Chicago, Illinois 60606<br>T: 312-627-4099<br>F: 312-627-1717<br>E: MBanovetz@tresslerllp.com<br>   JTheodore@tresslerllp.com<br>   DFormeller@tresslerllp.com | **Attorneys for RAS Aviation, L.L.C.**<br>Mr. Brandt Madsen<br>SmithAmundsen LLC<br>Attorney for RAS Aviation, L.L.C.<br>150 North Michigan Avenue, Suite 3300<br>Chicago, Illinois 60601<br>T: (312) 894-3200<br>E: BMadsen@salawus.com<br>   lgehrs@salawus.com<br><br>Assistant: Tamar Sagil<br>Legal Secretary<br>E: tsagil@salawus.com |

/s/Brian H. Sanchez