UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HADA GARCIA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 20-cv-3322 |
| | ) | |
| PIONEER HI-BRED INT'L, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter comes before the Court on the Combined Motion to Dismiss for Lack of Subject-Matter Jurisdiction, Motion to Dismiss for Failure to State a Cause of Action, and Motion to Sever or Dismiss filed by Defendant RAS Aviation, LLC (RAS). See d/e 49. For the reasons that follow, RAS's motion is DENIED.

**I.   BACKGROUND**

The Court construes Plaintiffs' Amended Complaint in the light most favorable to Plaintiffs, accepting all well-pleaded allegations as true and taking all reasonable inferences in their

favor.  Alicea-Hernandez v. Catholic Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003).

Plaintiffs are migrant farmworkers (Workers) and their family members (Children).[1]  All reside in the Texas Rio Grande Valley.  In the summer of 2019, Defendant Pioneer Hi-Bred International (PHI) hired the Workers to detassel corn near Champaign, Illinois.  Among other things, the Workers and the Children allege that in two separate incidents—first in July 2019, and then in August 2019—they were sprayed with or otherwise exposed to hazardous pesticides by aerial applicators.  They claim that PHI lied to them about what happened, neglected to provide them adequate decontamination measures, and then ordered the Workers back into the still-contaminated fields.

RAS is an Illinois corporation.  It owns and operates aircraft used to apply pesticides to Illinois farms, and it owned the helicopter involved in the July exposure event and employed the helicopter's pilot.  Plaintiffs claim that RAS "intentionally, with callous indifference, negligently, and otherwise tortiously sprayed

---

[1] For clarity's sake, the Court will use Plaintiffs' nomenclature.

the Workers, who were plainly visible in bright neon protective clothing." See Am. Compl., d/e 38, at ¶ 3.

Plaintiffs later brought this suit against PHI, RAS, and several other parties. Plaintiffs' Amended Complaint alleges 32 counts and runs 150 pages. Several are at issue here. Counts 1 through 15 allege violations by PHI of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. §§ 1801–1872, and the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219. Count 16 alleges that RAS is liable in negligence for spraying the Workers with pesticides and fungicides. Count 18 alleges that RAS is strictly liable for engaging in an ultrahazardous activity. Count 21 alleges that RAS is liable for battery. And Count 22 alleges that RAS is similarly liable for assault.

RAS now moves to dismiss, strike, or sever portions of Plaintiffs' amended complaint. See Def.'s Mot. to Dismiss, d/e 49. Among other things, RAS argues (1) that the Court lacks subject-matter jurisdiction over Plaintiffs' claims against RAS; (2) that Plaintiffs fail to state claims for strict liability, battery, or assault; and (3) that, in the alternative, the Court should sever Plaintiffs' claims against RAS.

## II. LEGAL STANDARD

A motion under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction. When considering a Rule 12(b)(1) motion, this Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. Alicea-Hernandez, 320 F.3d at 701. The plaintiff bears the burden of proving the jurisdictional requirements have been met. Ctr. for Dermatology & Skin Cancer Ltd. v. Burwell, 770 F.3d 586, 588 (7th Cir. 2014). "The court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject-matter jurisdiction exists." Alicea-Hernandez, 320 F.3d at 701.

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007). In considering a motion to dismiss under Rule 12(b)(6), this Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008). To state a claim for relief, a plaintiff need only provide a short and

plain statement of the claim showing he is entitled to relief and giving the defendant fair notice of the claims. Id. But the complaint still must set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Reciting the elements of a cause of action or supporting claims with conclusory statements are insufficient to state a cause of action. Id.

    A motion under Rule 21 challenges the permissive joinder of parties under Rule 20 or claims under Rule 18. Rule 20 provides that multiple defendants "may be joined if 'any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences' and 'any question of law or fact common to all defendants will arise in the action.'" UWM Student Ass'n v. Lovell, 888 F.3d 854, 863 (7th Cir. 2018) (quoting Fed. R. Civ. P. 20(a)(2)). This Court "necessarily has considerable discretion in applying Rules 18 and 20." Id.

## III. ANALYSIS

**A.     The Court Has Supplemental Jurisdiction Over Plaintiffs' Claims Against RAS.**

RAS first contends that the Court lacks subject-matter jurisdiction over Plaintiffs' tort claims.  This poses a threshold question.  "Jurisdiction is the power to declare law, and without it the federal courts cannot proceed."  Hay v. Ind. State Bd. of Tax Comm'rs, 312 F.3d 876, 879 (7th Cir. 2002) (cleaned up).  "Accordingly, not only may the federal courts police subject matter jurisdiction . . . they must."  Id.

RAS offers two reasons why Plaintiffs' state-law claims should not remain in federal court.  The first is that Plaintiffs cannot satisfy the amount-in-controversy requirement for diversity jurisdiction.  The second is that the Court should not exercise its grant of supplemental jurisdiction.  Both are unavailing.

The Court first considers RAS's challenge to the Court's original jurisdiction.  According to RAS, "Plaintiffs claim federal jurisdiction based on diversity jurisdiction and supplemental jurisdiction." Def.'s Mem., d/e 50, at 11.  Not so.  Plaintiffs' Amended Complaint raises a well-pleaded federal question.  See

Am. Compl., d/e 38, at ¶ 6 (bringing claims under the AWPA and FLSA). And Article III "confers federal jurisdiction over cases or controversies rather than over claims." Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1181–82 (7th Cir. 1993). So whether this Court may hear Plaintiffs' state-law claims against RAS is a question of supplemental—not original—jurisdiction.

When a civil action arises under federal law, a district court possesses "supplemental jurisdiction over all claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III[.]" See 28 U.S.C. § 1367(a). In other words, this Court has supplemental jurisdiction over any state-law claims that "derive from a common nucleus of operative fact with the original federal claims." Wisconsin v. Ho-Chunk Nation, 512 F.3d 921, 936 (7th Cir. 2008) (cleaned up). Supplemental jurisdiction extends to "claims that involve the joinder . . . of additional parties." See 28 U.S.C. § 1367(a).

RAS argues that the facts common to Plaintiffs' federal and state-law claims "cannot even be categorized as 'tangential,' and certainly do not come close to being 'operative.'" Def.'s Mem., d/e 50, at 15. To the contrary, RAS says, "every single plaintiff could

prevail against PHI on every federal count without the July 23, 2019 [sic] flight having ever taken place." Id.  In response, Plaintiffs reason that their state-law tort claims against RAS share the same factual basis as "the federal claim for PHI's response to those tortious actions."  See Pls.' Resp., d/e 54, at 9.

RAS's standard demands too much.  As the Seventh Circuit held in Ammerman, a "loose factual connection between the claims is generally sufficient" to establish the requisite factual commonality.  Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995).  And Ammerman, as Plaintiffs point out, provides an apt analogy.  That case concerned a female college instructor's sexual assault by a colleague.  The plaintiff sued her assailant for state-law assault and battery and her employer under Title VII for its failure to take appropriate remedial action.  Although the federal claims eventually were dismissed, the district court nevertheless allowed the state-law claims to proceed to trial.

On appeal, the assailant-defendant argued that the federal and state-law claims were too factually distinct for supplemental jurisdiction.  But the Seventh Circuit disagreed.  Instead, the Seventh Circuit found that the "factual allegations regarding the

extent of" the assailant's tortious conduct were "highly relevant to the determination" of the plaintiff's Title VII claim, such that the district court properly had retained its supplemental jurisdiction.

Here, as in Ammerman, Plaintiffs' federal and state claims share more than a "loose factual connection." Plaintiffs simply cannot prevail on their AWPA claim if they cannot establish that RAS acted tortiously. See, e.g., Am. Compl., d/e 38, at ¶¶ 857, 860, 863 (alleging that PHI violated the AWPA by failing to take remedial or preventive action regarding alleged pesticide exposure). That more than suffices for this Court's supplemental jurisdiction.

**B.    Plaintiffs State Facially Plausible Claims for Relief.**

Next, RAS moves to dismiss several of Plaintiffs' state-law tort claims under Federal Rule of Civil Procedure 12(b)(6). To survive, Plaintiffs must state plausible claims for relief. Bissessur v. Indiana Univ. Bd. of Trs., 581 F.3d 599, 602–603 (7th Cir. 2009).

Plaintiffs bring four state-law tort claims against RAS: negligence (Count 16), strict liability (Count 18), battery (Count 21) and assault (Count 22). RAS moves to dismiss the latter three counts. The Court, however, finds dismissal unwarranted.

### 1. Plaintiffs' strict liability claim does not fail as a matter of law.

The first claim at issue, Count 18, alleges strict liability. Specifically, Plaintiffs charge that the aerial application of toxic pesticides onto an occupied cornfield constitutes an "ultrahazardous activity." RAS denies that its business is ultrahazardous or that the law supports Plaintiffs' claim, and so it moves to dismiss Count 18 for failure to state a claim. In any case, Plaintiffs' invocation of strict liability presents a question of first impression in Illinois. The Court must answer it as a matter of law. In re Chicago Flood Litigation, 680 N.E.2d 265, 279 (Ill. 1997) (hereafter "Flood Litigation").

Under Illinois law, an activity is "ultrahazardous" or "abnormally dangerous" if that activity—even when performed with the utmost care—poses an unmitigable risk to others. Id. at 279–280. This rule "is based on a policy of the law that imposes upon anyone, who for her own purposes creates an abnormal risk of harm to her neighbors, the responsibility of relieving against that harm when it does in fact occur." Id. at 279. Anyone who

performs an ultrahazardous activity is subject to strict liability for resulting damages to person or property. Id.

The Illinois Supreme Court has yet to consider whether the aerial application of pesticides is ultrahazardous. Absent that court's guidance, this Court ordinarily would "consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." Wilson v. City of Chicago, 758 F.3d 875, 880 (7th Cir. 2014) (cleaned up). But the Illinois appellate courts have not addressed the question, either. And the few jurisdictions to do so have reached differing results. See Neil Bassetti Farms v. Tierra AG Spraying, Inc., 2003 WL 22079510, at *7 (Cal. App. Ct. Sept. 9, 2003) (collecting cases). This Court must consider it anew.

Illinois courts determine whether an activity is "ultrahazardous" or "abnormally dangerous" by applying Section 520 of the Restatement (Second) of Torts. Id. (citing Restatement (Second) of Torts § 520 (1977) (hereafter "Restatement")); see also Indiana Harbor Belt R. Co. v. Am. Cyanamid Co., 916 F.2d 1174, 1181 (7th Cir. 1990). Section 520 sets forth six factors that must be considered in evaluating an activity's ultrahazardous character:

> (a) the existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) the likelihood that the harm that results from it will be great;
> (c) the inability to eliminate the risk by the exercise of reasonable care;
> (d) the extent to which the activity is not a matter of common usage;
> (e) the inappropriateness of the activity to the place where it is carried on; and
> (f) the extent to which its value to the community is outweighed by its dangerous attributes.

See Restatement § 520. Although each factor must be considered, it is "not necessary that each factor be present, especially if other factors weigh heavily." See Chicago Flood, 680 N.E.2d at 280.

The Court finds that four of these factors weigh in favor of imposing strict liability.

**Degree of risk of harm:** The FDA-mandated warnings on several of the pesticides allegedly used by RAS expressly prohibit their application "in a way that will contact workers or other persons, either directly or through drift." Moreover, EPA regulations require that every covered pesticide bear such a warning. See 40 C.F.R. § 156.206(a) (2009). This indicates "the existence of a high degree of risk of some harm" to human beings.

**Inability to eliminate the risk of harm:** These federal restrictions also indicate that the risks posed by aerial application cannot be eliminated. No pesticide on the American market may be sprayed onto human beings. See id. And pesticide drift—the "unintentional airborne movement of pesticides . . . beyond the target area where the pesticide was applied"—seemingly is unavoidable. See Theodore A. Feitshans, An Analysis of State Pesticide Drift Laws, 9 San Joaquin Agric. L. Rev. 37, 38 (1999).

**Common usage:** "An activity is a matter of common usage if it is customarily carried on by the great mass of mankind or by many people in the community." Restatement § 520 cmt. i. Those within this District certainly would not find aerial application unusual. Nevertheless, the practice is "carried on by only a comparatively small number of persons" and so is "not a matter of common usage." See Langan v. Valicopters, Inc., 567 P.2d 218, 223 (Wash. 1977) (imposing strict scrutiny on aerial crop-dusting).

**Inappropriateness to the place:** Generally, the only place where an activity can be carried out "must necessarily be regarded as an appropriate one." Restatement § 520 cmt. j. Aerial application of pesticides usually takes place only over crop fields,

which means that this setting is presumptively appropriate. Yet a "storage tank full of gasoline or . . . blasting operations all become abnormally dangerous if they are carried on in the midst of a city." Id. So too here. Aerial application becomes ultrahazardous when crop fields are occupied by unwitting farmworkers.

The Court also finds that one factor may weigh against imposing strict liability.

**Value to the community:** Under the Restatement, certain hazardous activities are less susceptible to strict liability because the community regards them as "a natural and common use of the land." See Restatement § 520 cmt. k. Farmers within this District—along with millions of acres of Illinois farmland and billions of dollars in exported agricultural commodities—undoubtedly rely on the use of pesticides and fungicides. Still, the Court cannot conclude that the value of aerial application outweighs the harm it may cause to human beings.

On that note, the Court turns to the last remaining factor: the "likelihood that the harm that results from [the activity] will be great." See Restatement § 520(b). This factor is "critical to a decision on whether" the aerial application of pesticides "should be

subjected to a regime of strict liability." Cf. Indiana Harbor Belt R. Co., 916 F.2d at 1182. But the record contains scant evidence either way. So, while the "determination of whether Defendant['s] activities are ultrahazardous is a question of law, a more complete record is necessary to properly analyze and apply the factual considerations set out above." Muniz v. Rexnord Corp., 2006 WL 1430553, at *2 (N.D. Ill. May 17, 2006).

In sum, the Court cannot find that Plaintiffs' strict liability theory fails as a matter of law. The question of the scope and degree of harm posed by aerial application must wait for trial.

**2. Plaintiffs state viable claims for battery and assault.**

Plaintiffs also allege that RAS committed civil battery (Count 21) and assault (Count 22) when it sprayed or otherwise exposed dozens of Workers and Children to toxic pesticides. RAS argues that Plaintiffs "have alleged no facts whatsoever in support of the conclusion that RAS intended to commit a battery or create fear of a battery." See Def.'s Mem., d/e 50, at 18. The Court disagrees.

Illinois defines battery as the unauthorized touching of another's person. Boyd v. City of Chicago, 880 N.E.2d 1033, 1043–44 (Ill. App. Ct. 2007). "An action for battery does not

depend on the hostile intent of the defendant, but on the absence of the plaintiff's consent to the contact." Pechan v. DynaPro, Inc., 622 N.E.2d 108, 117 (Ill. App. Ct. 1993) (citing Cowan v. Ins. Co. of N. Am., 318 N.E.2d 315, 323 (Ill. App. Ct. 1974)).

The Court concludes that Plaintiffs state a viable battery claim. They identify the pesticides and adjuvants allegedly used by RAS. Am. Compl., d/e 38, at ¶ 237. They point to the EPA-mandated labeling borne by Priaxor, a fungicide allegedly used by RAS, which forbids its application "in a way that will contact workers or other persons, either directly or through drift." Id. ¶ 244. Plaintiffs allege that the Workers—working on a clear day while wearing neon orange hats—clearly were visible from above. And they allege that RAS sprayed the Workers with pesticides anyway. All this states a claim for common-law battery.

The same goes for Count 22, in which Plaintiffs allege common-law assault. Illinois defines assault as "an intentional, unlawful offer of corporeal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the present ability to effectuate the attempt if not prevented." Perez v. Globe Ground N.

Am., LLC, 482 F.Supp.2d 1023, 1031 (N.D. Ill. 2007) (quoting Parrish v. Donahue, 443 N.E.2d 786, 788 (Ill. Appt. Ct. 1982). As previously noted, Plaintiffs state a claim for actual battery. Since assault is the "reasonable apprehension of an imminent battery," see McNeil v. Carter, 742 N.E.2d 1277, 1281 (Ill. App. Ct. 2001), Plaintiffs also state a claim for assault. RAS's motion to dismiss Counts 21 and 22 for failure to state a claim must be denied.

### 3. The Court will not strike Plaintiffs' prayer for punitive damages.

RAS also moves to strike Plaintiffs' prayer for punitive damages. Punitive damages, as RAS rightly notes, "are not awarded as compensation, but serve instead to punish the offender and to deter the party and others from committing similar acts of wrongdoing in the future." Loitz v. Remington Arms Co., 563 N.E.2d 397 (Ill. 1990). But Plaintiffs' request for punitive damages is far from "unsupported." One hardly can think of a more deterrable—or condemnable—act than deliberately or wantonly exposing human beings to hazardous pesticides. If Plaintiffs can prove that RAS sprayed the Workers as alleged, then punitive damages might well be in order. RAS's motion to strike is denied.

## C. The Court Denies RAS's Motion to Sever.

Lastly, the Court turns to RAS's motion to sever Counts 16, 18, 21, and 22 pursuant to Federal Rule of Civil Procedure 21. Citing the specter of "endless discovery" and factfinder "confusion," RAS contends that the claims here should be severed from those against Curless, the alleged perpetrator of Plaintiffs' August 2019 pesticide exposure. This motion, too, is denied.

Federal Rule of Civil Procedure 20(a)(2) allows plaintiffs to join additional defendants in a civil action "if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Both requirements must be satisfied. Otherwise, the Court may, "on just terms, add or drop a party" or else "sever any claim against a party." Fed. R. Civ. P. 21. Rule 21 further provides the Court "discretion to sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants." Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 743 (7th Cir. 1985).

The Court concludes that Plaintiffs' joinder of RAS readily satisfies Rule 20.  Plaintiffs allege that RAS is jointly and severally liable for harms suffered while the Workers were employed by PHI.  And as the Court has observed, see supra Section III.A, Plaintiffs' claims against RAS share substantial questions of law and fact with their claims against PHI.  The same must be said of Plaintiffs' claims against Curless, which allegedly engaged in precisely the same tortious conduct—the aerial application of highly toxic pesticides onto an occupied cornfield—as RAS allegedly did.

The Court also finds that severance would be imprudent.  RAS offers no specific reason why its aversion to "endless discovery on unrelated matters" should outweigh the general interest in efficient complex litigation.  Nor does RAS flesh out its contention that a factfinder would be confused by the commonalities between Plaintiffs' claims against RAS and their claims against Curless.  At this juncture, it is far too early to tell whether the evidence and testimony underlying those claims will inject needless confusion.  RAS will be free to renew that argument at the close of discovery.

The Court finds that RAS's joinder is well warranted.  See generally Cent. Laborers' Pension, Welfare, & Annuity Funds v.

<u>Midwest Underground, Inc.</u>, 2013 WL 5877810, at *5 (C.D. Ill. Nov. 1, 2013).  RAS's motion to sever is, therefore, denied.

## V. CONCLUSION

For these reasons, the omnibus motion to dismiss, strike, or sever filed by Defendant RAS Aviation, LLC (d/e 49) is DENIED.

**ENTERED:  SEPTEMBER 29, 2022**

**FOR THE COURT:**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**